THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, CALIFORNIA, BOARD OF POLICE COMMISSIONERS OF THE CITY OF LOS ANGELES, AND THE LOS ANGELES POLICE DEPARTMENT,<br><br>Defendants. | NO. CV 00-11769 GAF (RCx)<br><br>**ORDER DENYING MOTIONS TO INTERVENE** |

## I.
## INTRODUCTION

Following the publicity in what has been commonly referred to as the "Rampart scandal," the United States commenced this civil suit alleging that the City of Los Angeles has engaged in a pattern and practice of depriving individuals of constitutional protections. Rather than litigate, the named parties have agreed to settle their dispute and have submitted to the Court a proposed Consent Decree ("Proposed Decree") which calls for a number of reforms at the Los Angeles Police Department ("LAPD"). When the Los Angeles Police Protective League then moved to intervene in the case, this Court denied the application. Now the Court has before it two more motions to

81

intervene: one brought by a group of section 1983 plaintiffs (jointly referenced as the "interested parties"); a second brought by the ACLU and several individuals and organizations (jointly referenced as "ACLU"). The Court concludes that the moving parties have failed to demonstrate grounds for intervention as of right, or a basis for permissive intervention, under Rule 24, Federal Rules of Civil Procedure.

## II.
## THE INTERESTED PARTIES' MOTION

Ten civil rights plaintiffs, whose Section 1983 actions are pending in this Court, move to intervene in this case under Rule 24(b)(2), Federal Rules of Civil Procedure. That rule allows for intervention, at the discretion of the Court, when an applicant's claim or defense presents a question of fact or law in common with the main action and the applicant can show prejudice if intervention is not permitted. The Court concludes that this standard has not been met.

The present case involves no litigation on the merits because the parties have stipulated to a settlement that contemplates the entry of a consent decree addressing the issues that might have been in dispute. Thus, there is no basis for permitting the proposed intervenors to enter the suit to contest merits issues. Where no merits determination is to be made, there cannot be facts or law in common with merits issues in other cases.

Assuming for purposes of argument that there are some common questions of fact or law between the main case and the cases of the intervenors relating to the remedy, moving parties offer only speculation as to how they might be injured by any action taken in this case. They say only that:

> It is reasonably predictable and virtually certain to the proposed
> intervenors that there will come a time when defendant City will ask the
> court in this action either to take or to forbear taking action in the

> proposed intervenors' actions based on something that will take place or will be going to take place in the instant action.

(Reply at 2.)

The moving parties no doubt engage in such speculation because they cannot show that injury will result if they do not intervene; the Court in this case cannot dispose of any of their claims, nor impose any obligation on them. Local No. 93, Int'l Ass'n of Firefighters, v. City of Cleveland, 478 U.S. 501, 529-30, 106 S. Ct. 3063, 92 L. Ed. 2d 405 (1986). Perhaps they mean to say that they could be "injured" if the Court finds that movants' injunctive claims are moot. But that can hardly be said to injure movants, because a finding of mootness necessarily implies that the City has already corrected the activities movants seek to enjoin.

Finally, the moving parties have no inherent right to participate in the enforcement of the proposed decree. Consent decrees have a dual character: they are part contract and part judicial decree. Local No. 93, Intern'l Ass'n of Firefighters, v. City of Cleveland, 478 U.S. 501, 519, 106 S. Ct. 3063, 92 L. Ed. 2d 405 (1986). For enforcement purposes, a consent decree is treated as a contract. Hook v. Arizona Dept. of Corr., 972 F.2d 1012, 1014 (9th Cir. 1992). Only parties to a contract, or intended third parties, may enforce the agreement. See Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir.), cert. denied __ U.S. __, 121 S. Ct. 44, 148 L. Ed. 2d 14 (2000). Incidental third parties, which normally includes third party beneficiaries, do not have standing to enforce a consent decree. Hook, 972 F.2d at 1015 (citing Blue Chips Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975)). Third party beneficiaries hold enforcement rights only in cases where the decree clearly states that the government intended to grant them the ability to enforce the agreement. Patterson, 204 F.3d at 1211. See also Restatement (Second) of Contracts § 313(2) cmt. a. Here, the parties clearly manifested their intention that there are *no* intended third party

beneficiaries of the Decree. (Consent Decree, ¶ 10)("This Agreement is enforceable only by the parties. No person or entity is intended to be a third party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action . . . .") Thus, under controlling legal authority, movants have no legal right to enforce the proposed decree.

## III.

## THE ACLU'S MOTION

The ACLU claims a right to intervene in these proceedings for the purpose of enforcing the consent decree. The ACLU describes a network of organizations that supply it with information regarding police misconduct, which the ACLU contends makes it uniquely qualified to perform the enforcement role. The ACLU also speculates that the Department of Justice will not vigorously enforce the decree because of statements made by candidate Bush during the 2000 presidential election campaign. However, as the Court noted at oral argument, neither the ACLU, nor any other of the proposed intervenors, need to intervene in the action to make information available to the monitor who will oversee the consent decree. Moreover, the Court gives little weight to campaign statements as a basis for predicting how the candidate or government will act when the election is over. Finally, controlling precedent holds that incidental third party beneficiaries of a consent decree may not intervene to enforce the decree.

Although controlling case law bars the proposed intervention, the ACLU urges the Court to find grounds for its motion in several cases interpreting Rule 24 of the Federal Rules. In making this argument, the ACLU fails to note the distinction between intervention in a merits determination, and intervention to enforce an agreed upon decree. None of the ACLU's cases involve an intervention to enforce a consent decree.

## A. THE TRBOVICH CASE

The ACLU leans heavily on Trbovich v. United Mine Workers of America, 404 U.S. 528 (1972), a reed too thin to bear the weight of their argument. Trbovich was a case in which the Secretary of Labor brought suit to set aside a union election, an election also challenged by Trbovich in a complaint filed with the Secretary of Labor. When the Secretary filed his suit in District Court, Trbovich petitioned to intervene. The District Court denied the petition, the Court of Appeals affirmed and the Supreme Court granted review. The issue before the Court was whether the LMRDA barred intervention by union members in suits initiated by the Secretary of Labor.

The Court held that, although the statute provides that the "exclusive" remedy to challenge an election is an action under 29 U.S.C. § 483 by the Secretary, and although the legislative history reflected a Congressional intent to bar a private right of action in union members, Congress did not intend to preclude union members from intervening in the Secretary's action. According to the Supreme Court, Congress intended only to prevent multiple or duplicative suits of a harassing nature on the one hand, and collusive suits that would interfere with the Secretary's authority, on the other. Thus, the Supreme Court concluded, "it is reasonable to infer that [Congress] regarded the provision for exclusive enforcement by the Secretary as a device for eliminating frivolous complaints and consolidating meritorious ones." Id., at 535.

This discussion demonstrates what is most notable about the case for present purposes: the court was never asked to pass on the right of intervention to enforce a consent decree.

## B. SIERRA CLUB

In Sierra Club v. US Environmental Protection Agency, 995 F.2d 1478 (9th Cir. 1993), the Sierra Club sued the EPA for declaratory injunction and an injunction challenging the agency's failure to promulgate water quality standards for Arizona

waters. When the City of Phoenix moved to intervene in the suit, the District Court held that the City had no protectable interest, even though the Sierra Club's complaint alleged that two of the city's wastewater treatment plants discharged toxic pollutants into the Salt and Gila Rivers. The Ninth Circuit noted that "in practical terms, the Sierra Club wanted the court to order the EPA to change the City's NPDES permits, in order to reduce the amount of pollutants from those wastewater treatment plants." Id., at 1481. The question before the circuit was whether the city had a "protectable interest" at issue in the dispute. The Court found little difficulty in concluding that, because the city owned rights, protected by law, relating to the property that was the subject of the suit, the city had a right to intervene in the case. Again, the court was presented with a question having nothing to do with intervention to enforce a consent decree.

## C. SAGEBRUSH REBELLION

Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525 (9th Cir. 1983) was a case in which Sagebrush Rebellion attacked Secretary of the Interior, Cecil Andrus's reservation of 500,000 acres of western lands as a wildlife preserve. The Sagebrush Rebellion opposed the action and brought suit challenging the reservation. The Audubon Society supported the action, and sought to intervene when Secretary Andrus was replaced by Secretary Watt. This change played a significant role in the Court's decision to permit intervention in the merits determination because Andrus's

> successor, Secretary Watt, was previously head of the Mountain States Legal Foundation, the organization which is representing the plaintiff Sagebrush Rebellion in this action. These facts support intervention and also give rise to appellant's sobriquet for the case as "Watt v. Watt."

Id., at 528. Thus, the existence of an outright conflict of interest on the part of the new secretary convinced the circuit that the intervenors should be allowed into the suit to determine the merits of the claim. Once again, however, the circuit was not

presented with a request to intervene to enforce a consent decree to which the intervenor was not a party.

### D. CONTROLLING AUTHORITY PRECLUDES INTERVENTION

The discussion of the foregoing cases demonstrates that they are neither controlling nor persuasive on the issue before the Court. Simply put, the ACLU has failed to present any authority that undermines <u>Hook v. Arizona Dept. of Corr.</u>, 972 F.2d at 1014 or <u>Klamath Water Users Protective Ass'n v. Patterson</u>, 204 F.3d at 1210 discussed above. Since <u>Hook</u> and <u>Klamath Water Users</u> are controlling on the facts of this case, the ACLU's motion to intervene is meritless.

## IV.
## CONCLUSION

For the foregoing reasons, the motions of the "interested parties" and of the ACLU are DENIED. However, the Court will grant each of them amicus status at the time the Court seeks briefing on the final language of the proposed consent decree.

IT IS SO ORDERED.

DATED: February 7, 2001

_____
Judge Gary Allen Feess
United States District Court