

1  JANET RENO
   Attorney General
2  BILL LANN LEE
   Assistant Attorney General
3  Civil Rights Division
   STEVEN H. ROSENBAUM
4  Chief
   DONNA M. MURPHY
5  Special Counsel
   MARK A. POSNER
6  ROBERT J. MOOSSY
   PATRICIA L. O'BEIRNE
7  Trial Attorneys
   Special Litigation Section
8  Civil Rights Division
   U.S. Department of Justice
9  P.O. Box 66400
   Washington, DC  20035-6400
10 Telephone: (202)307-6264
   Facsimile: (202)514-0212
11
   ALEJANDRO MAYORKAS
12 United States Attorney
   312 North Spring Street
13 Los Angeles, California 90012
   Telephone: (213) 894-4600
14 Facsimile: (213) 894-3535

15 Attorneys for Plaintiff

16

17 JAMES K. HAHN, City Attorney, State Bar No. 66073X
   TIMOTHY B. McOSKER, Chief Deputy, State Bar No. 130513
   FREDERICK MERKIN, Senior Assistant City Attorney, State Bar No. 052628
18 MARK FRANCIS BURTON, Assistant City Attorney, State Bar No. 127073
   1700 City Hall East
19 200 North Main Street
   Los Angeles, California 90012-4130
20 Telephone:  (213) 485-5425
   Facsimile:  (213) 485-8898
21
   Attorneys for Defendants
22

23

24

25

26

27

28

**FILED**
CLERK, U.S. DISTRICT COURT
JUN 15 2001
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**ENTERED**
CLERK, U.S. DISTRICT COURT
JUN 19 2001
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

00-11769
GAF(Rcx)

Docketed ✓
Copies / NTC Sent ✓
___ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

JUN 18 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      )
    Plaintiff,      )
       )
v.      )   C.A. No.   00-11769 GAF (.iCx)
       )
CITY OF LOS ANGELES, CALIFORNIA,   )   **CONSENT DECREE**
BOARD OF POLICE COMMISSIONERS   )
OF THE CITY OF LOS ANGELES, and the   )
LOS ANGELES POLICE DEPARTMENT,   )
       )
    Defendants.      )
       )

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  A.   _General Provisions_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  B.   _Definitions_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   **MANAGEMENT AND SUPERVISORY MEASURES TO PROMOTE CIVIL RIGHTS INTEGRITY** . . . . . . . . . . . . . . . . . . . . . . . . 9
  A.   _TEAMS II_    [Computer Information System] . . . . . . . . . . . . . . . . . . 9
  B.   _Management and Coordination of Risk Assessment Responsibilities_ . . . . . . . . 21
  C.   _Performance Evaluation System_ . . . . . . . . . . . . . . . . . . . . . . 21

III.   **INCIDENTS, PROCEDURES, DOCUMENTATION, INVESTIGATION, AND REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  A.   _Use of Force_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  B.   _Search and Arrest Procedures_ . . . . . . . . . . . . . . . . . . . . . . . 27
  C.   _Initiation of Complaints_ . . . . . . . . . . . . . . . . . . . . . . . . . 29
  D.   _Conduct of Investigations_ . . . . . . . . . . . . . . . . . . . . . . . . 32
  E.   _Adjudicating Investigations_ . . . . . . . . . . . . . . . . . . . . . . . 34
  F.   _Discipline & Non-Disciplinary Action_ . . . . . . . . . . . . . . . . . . . 35
  G.   _Internal Affairs Group_ . . . . . . . . . . . . . . . . . . . . . . . . . . 37
  H.   _Non-Discrimination Policy and Motor Vehicle and Pedestrian Stops_ . . . . . . . 42

IV.   **MANAGEMENT OF GANG UNITS** . . . . . . . . . . . . . . . . . . . . . . . . 47

V.   **CONFIDENTIAL INFORMANTS** . . . . . . . . . . . . . . . . . . . . . . . . 51

VI.   **DEVELOPMENT OF PROGRAM FOR RESPONDING TO PERSONS WITH MENTAL ILLNESS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

VII.   TRAINING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  56
       A.    *FTO Program* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  56
       B.    *Training Content* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  56
       C.    *Supervisory Training* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58

VIII.  INTEGRITY AUDITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  59
       A.    *Audit Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  59
       B.    *Audits by the LAPD* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  61
       C.    *Inspector General Audits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  65

IX.    OPERATIONS OF THE POLICE COMMISSION & INSPECTOR GENERAL .  68
       A.    *Police Commission* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  68
       B.    *Inspector General* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  69
       C.    *General* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  71

X.     COMMUNITY OUTREACH AND PUBLIC INFORMATION . . . . . . . . . . . . . .  72

XI.    INDEPENDENT MONITOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  74

XII.   TERM OF AGREEMENT AND HOUSEKEEPING PROVISIONS . . . . . . . . . . .  84
       A.    *City Reports and Records* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  84
       B.    *Implementation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  85

# I.    INTRODUCTION

A.    _General Provisions_

1.      The United States and the City of Los Angeles, a chartered municipal corporation in the State of California, share a mutual interest in promoting effective and respectful policing. They join together in entering this settlement in order to promote police integrity and prevent conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

2.      In its Complaint, plaintiff United States alleges that the City of Los Angeles, the Los Angeles Board of Police Commissioners, and the Los Angeles Police Department (collectively, "the City defendants") are violating 42 U.S.C. § 14141 by engaging in a pattern or practice of unconstitutional or otherwise unlawful conduct that has been made possible by the failure of the City defendants to adopt and implement proper management practices and procedures.  In making these allegations, the United States recognizes that the majority of Los Angeles police officers perform their difficult jobs in a lawful manner.

3.      The City defendants deny the allegations in the Complaint.  Nothing in this Agreement, the United States' complaint, or the negotiation process shall be construed as an admission or evidence of liability under any federal, state or local law, including 42 U.S.C. § 1983, or 18 U.S.C. 1961 _et. seq._

4.      This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1345.  The United States is authorized to initiate this action pursuant to 42 U.S.C. § 14141.  Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391.

-1-

5.     This Agreement resolves all claims in the United States' Complaint filed in this case. This Agreement also constitutes a full and complete settlement of any and all claims the United States may have against the City defendants, and their officers, employees or agents, regarding any alleged pattern or practice of conduct by Los Angeles police officers in carrying out their law enforcement responsibilities, including racial discrimination, in violation of 42 U.S.C. §§ 14141, 2000d, 3789d(c) or any other law under which such an action could have been brought by the United States that: (i) have occurred up to and including the date the Complaint is filed, or (ii) could have been raised as of the date the Complaint is filed. This paragraph does not apply to any potential employment discrimination claims against the City of Los Angeles.

6.     The parties enter into this Agreement to provide for the expeditious implementation of remedial measures, to promote the use of the best available practices and procedures for police management, and to resolve the United States' claims without resort to adversarial litigation.

7.     Nothing in this Agreement is intended to alter the lawful authority of LAPD police officers to use reasonable and necessary force, effect arrests and file charges, conduct searches or make seizures, or otherwise fulfill their law enforcement obligations to the people of the City of Los Angeles in a manner consistent with the requirements of the Constitutions and laws of the United States and the State of California.

8.     Nothing in this Agreement is intended to: (a) alter the existing collective bargaining agreements between the City (as defined in paragraph 15) and LAPD employee bargaining units; or (b) impair the collective bargaining rights of employees in those units under state and local law. The parties acknowledge that as a matter of state and local law the implementation by the City of certain provisions of this Agreement may require compliance with

-2-

the meet and confer process or consulting process. The City shall comply with any such legal requirements and shall do so with a goal of concluding any such processes in a manner that will permit the City's timely implementation of this Agreement. The City shall give appropriate notice of this Agreement to affected employee bargaining units to allow such processes to begin as to this Agreement as filed with the Court. The City has received one demand to meet and confer in regard to the proposed Agreement and will use its best efforts to have expedited that process and any others that may be demanded. The City agrees to consult with the DOJ in regard to the positions it takes in any meeting and conferring or consulting processes connected with this Agreement.

9.     This Agreement shall constitute the entire integrated agreement of the parties. No prior drafts or prior or contemporaneous communications, oral or written, shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding.

10.     This Agreement is binding upon the parties hereto, by and through their officials, agents, employees, and successors. This Agreement is enforceable only by the parties. No person or entity is intended to be a third party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action, and accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement. This Agreement is not intended to impair or expand the right of any person or organization to seek relief against the City defendants for their conduct or the conduct of LAPD officers; accordingly, it does not alter legal standards governing any such claims, including those under California Business and Professional Code Section 17200, *et. seq.* This Agreement does not authorize, nor shall it be construed to authorize, access to any City or Department documents, except as expressly provided by this Agreement, by persons or entities other than the DOJ, the City

-3-

1   defendants and the Monitor.

2

3       11.     The City is responsible for providing necessary support to the Los Angeles Board

4   of Police Commissioners, the Inspector General, the LAPD and the Chief of Police to enable each

5   of them to fulfill their obligations under this Agreement.

6

7       12.     The City, by and through its officials, agents, employees, and successors, is

8   enjoined from engaging in a pattern or practice of conduct by law enforcement officers of the

9   LAPD that deprives persons of rights, privileges, or immunities secured or protected by the

10  Constitution or laws of the United States. This paragraph does not apply to the City of Los

11  Angeles' employment policies, practices, or procedures.

12

13  B.     *Definitions*

14

15      13.     The term "Categorical Uses of Force" means (i) all incidents involving the use of

16  deadly force by an LAPD officer ("OIS"); (ii) all uses of an upper body control hold by an LAPD

17  officer and can include the use of a modified carotid, full carotid or locked carotid; (iii) all uses of

18  force by an LAPD officer resulting in an injury requiring hospitalization, commonly referred to as

19  a law enforcement related injury or LERI incident; (iv) all head strikes with an impact weapon;

20  (v) all other uses of force by an LAPD officer resulting in a death, commonly known as a law

21  enforcement activity related death or LEARD incident; and (vi) all deaths while the arrestee or

22  detainee is in the custodial care of the LAPD, commonly referred to as an in-custody death or

23  ICD. In addition, under current LAPD policy, a canine bite is not a use of force. However, for

24  purposes of this Agreement only, a Categorical Use of Force shall include all incidents where a

25  member of the public is bitten by a canine assigned to the LAPD and where hospitalization is

26  required.

27                                          -4-

28

14.    The term "Charter" means the Los Angeles City Charter, as may be amended from time to time.

15.    The term "City" means the City of Los Angeles acting through the Mayor of Los Angeles and the Los Angeles City Council.

16.    The term "complaint" means any complaint by a member of the public regarding Department services, policy or procedure, claims for damages (which allege employee misconduct) or employee misconduct; and any allegation of possible misconduct made by an LAPD employee. All complaints shall be recorded on Complaint Form 1.28. A complaint may be initiated by any of the methods set forth in paragraph 74. For purposes of this Agreement, the term "complaint" does not include any allegation of employment discrimination.

17.    The term "Complaint Form 1.28 investigations" means all administrative investigations of complaints by the LAPD.

18.    The term "complainant" means any person who files a complaint against an officer or the LAPD.

19.    The term "Department" means the Los Angeles Police Department, a constituent department of the City of Los Angeles, as defined in the Charter, and includes the LAPD, the Inspector General, and the Police Commission.

20.    The terms "document" and "record" include all "writings and recordings" as defined by Federal Rules of Evidence Rule 1001(1).

21.     The term "DOJ" means the United States Department of Justice and its agents and employees.  In this action, the DOJ represents the United States of America.

22.     The term "effective date" means the day this Agreement is entered by the Court.

23.     The term "including" means "including, but not limited to."

24.     The term "Independent Monitor" or "Monitor" as used in this document except for paragraph 158, means the Monitor established by Section XI of this Agreement, and all persons or entities associated by the Monitor to assist in performing the monitoring tasks.

25.     The term "Inspector General" means the Office of the Inspector General, as established in the Charter.

26.     The term "LAPD" means the Chief of Police of the Department and all employees under his or her command.

27.     The term "LAPD employee" means any employee under the command of the Chief of Police, including civilian employees.

28.     The term "LAPD unit" means any officially designated organization of officers within the LAPD, including Bureaus, Areas, Divisions, Groups, Sections, and specialized units.

29.     The term "manager" means an LAPD supervisor at the rank of captain or above.

30.     The term "motor vehicle stop" means any instance where an LAPD officer directs

-6-

1    a civilian operating a motor vehicle of any type to stop and the driver is detained for any length of

2    time.  Such term does not include: checkpoint stops; roadblock stops; commercial vehicle

3    inspection stops; safe driving award stops; child safety seat giveaway stops; stops related to the

4    execution of arrest warrants where the person being stopped is reasonably believed to be the

5    person named on the warrant; stops directly related to the execution of search warrants; or stops as

6    part of targeted task force prostitution and drug enforcement stings which sole purpose is to

7    identify and arrest persons who engage in or attempt to engage in the targeted unlawful conduct.

8

9         31.    The term "non-disciplinary action" refers to action other than discipline taken by

10   an LAPD supervisor to enable or encourage an officer to modify his or her performance.  It may

11   include: oral or written counseling; training; increased field supervision for a specified time

12   period; mandatory professional assistance; referral to Behavioral Science Services ("BSS") or to

13   the Employee Assistance Program; a change of an officer's partner; or a reassignment or transfer.

14

15        32.    The term "pedestrian stop" means any instance where an LAPD officer performs a

16   stop (i.e., a temporary restraint where a person is not free to leave) of a person who is not in a

17   motor vehicle.  Such term does not include: (i) field interviews of witnesses to or victims of

18   crime; (ii) stops in direct response to the time, place, and circumstances of a call for service for

19   homicide, rape, robbery, assault, domestic violence, shots fired, suspect with a gun or knife,

20   kidnapping, bomb threat, child in danger of physical harm caused by another person, officer needs

21   help or assistance, or battery; (iii) stops related to the execution of arrest warrants where the

22   person being stopped is reasonably believed to be the person named on the warrant; (iv) stops

23   directly related to the execution of search warrants; (v) stops as part of targeted task force

24   prostitution and drug enforcement stings which sole purpose is to identify and arrest persons who

25   engage in or attempt to engage in the targeted unlawful conduct; (vi) stops related to the

26   declaration of an unlawful assembly by an LAPD supervisor at the scene, and incidental stops

27                                          -7-

28

related to crowd control; (vii) consensual stops except when such stops are followed by a pat-down/frisk, search or seizure (other than searches or seizures incident to an arrest), preparation of a field interview card, citation or arrest.

33.     The terms "Police Commission" or "Commission" mean the Los Angeles Board of Police Commissioners, as established in the Charter.

34.     The term "police officer" or "officer" means any law enforcement officer employed by the LAPD, including supervisors and managers.

35.     The term "specified audit" means those audits required under paragraphs 128, 129, 131, 132, 136, 137, and 138 of this Agreement.

36.     The term "sting audits" means those audits described in paragraph 97.

37.     The term "supervisor" means a police officer with oversight responsibility for other officers and includes managers.

38.     The term *use of force* means a reportable use of force incident as defined in Section 4/245.05 of the LAPD manual as of October 1, 2000.

## II.   MANAGEMENT AND SUPERVISORY MEASURES TO PROMOTE CIVIL RIGHTS INTEGRITY

A.   *TEAMS II*      [Computer Information System]

39.   The City has taken steps to develop, and shall establish a database containing relevant information about its officers, supervisors, and managers to promote professionalism and best policing practices and to identify and modify at-risk behavior (also known as an early warning system). This system shall be a successor to, and not simply a modification of, the existing computerized information processing system known as the Training Evaluation and Management System ("TEAMS"). The new system shall be known as "TEAMS II".

40.   The Commission, the Inspector General, and the Chief of Police shall each have equal and full access to TEAMS II, and may each use TEAMS II to its fullest capabilities in performing their duties and responsibilities, subject to restrictions on use of information contained in applicable law. To the extent that highly sensitive information is contained in TEAMS II, the Commission may impose an identical access restriction on itself and the Inspector General to such information, provided that no such access restriction may in any way impair or impede implementation of this Agreement. The Department shall establish a policy with respect to granting or limiting access to TEAMS II by all other persons, including the staff of the Commission and the Inspector General, but excluding DOJ and the Monitor, whose access to TEAMS II is governed by paragraphs 166, 167, and 177.

41.   TEAMS II shall contain information on the following matters:

a.   all non-lethal uses of force that are required to be reported in LAPD "use of force" reports or otherwise are the subject of an administrative investigation by

the Department;

b.     all instances in which a police canine bites a member of the public;

c.     all officer-involved shootings and firearms discharges, both on-duty and off-duty (excluding training or target range shootings, authorized ballistic testing, legal sport shooting events, or those incidents that occur off-duty in connection with the recreational use of firearms, in each case, where no person is hit by the discharge);

d.     all other lethal uses of force;

e.     all other injuries and deaths that are reviewed by the LAPD Use of Force Review Board (or otherwise are the subject of an administrative investigation);

f.     all vehicle pursuits and traffic collisions;

g.     all Complaint Form 1.28 investigations;

h.     with respect to the foregoing clauses (a) through (g), the results of adjudication of all investigations (whether criminal or administrative) and discipline imposed or non-disciplinary action taken;

I.     all written compliments received by the LAPD about officer performance;

j.     all commendations and awards;

-10-

k.   all criminal arrests and investigations known to LAPD of, and all charges against, LAPD employees;

l.   all civil or administrative claims filed with and all lawsuits served upon the City or its officers, or agents, in each case resulting from LAPD operations, and all lawsuits served on an officer of the LAPD resulting from LAPD operations and known by the City, the Department, or the City Attorney's Office;

m.   all civil lawsuits against LAPD officers which are required to be reported to the LAPD pursuant to paragraph 77;

n.   all arrest reports, crime reports, and citations made by officers, and all motor vehicle stops and pedestrian stops that are required to be documented in the manner specified in paragraphs 104 and 105;

o.   assignment and rank history, and information from performance evaluations for each officer;

p.   training history and any failure of an officer to meet weapons qualification requirements; and

q.   all management and supervisory actions taken pursuant to a review of TEAMS II information, including non-disciplinary actions.

TEAMS II further shall include, for the incidents included in the database, appropriate additional information about involved officers (*e.g.*, name and serial number), and appropriate information

-11-

1  about the involved members of the public (including demographic information such as race,

2  ethnicity, or national origin).  Additional information on officers involved in incidents (*e.g.*, work

3  assignment, officer partner, field supervisor, and shift at the time of the incident) shall be

4  determinable from TEAMS II.

5

6      42.    The Department shall prepare and implement a plan for inputting historical data

7  into TEAMS II (the "Data Input Plan").  The City shall have flexibility in determining the most

8  cost effective, reliable and time sensitive means for inputting such data, which may include

9  conversion of existing computerized databases.  The Data Input Plan will identify the data to be

10 included and the means for inputting such data (whether conversion or otherwise), the specific

11 fields of information to be included, the past time periods for which information is to be included,

12 the deadlines for inputting the data, and will assign responsibility for the input of the data.  The

13 City will use reasonable efforts to include historical data that are up-to-date and complete in

14 TEAMS II.  The amount, type and scope of historical data to be included in TEAMS II shall be

15 determined by the City, after consultation with the DOJ, on the basis of the availability and

16 accuracy of such data in existing computer systems, the cost of obtaining or converting such data,

17 and the impact including or not including such data will have on the overall ability of the

18 Department to use TEAMS II as an effective tool to manage at-risk behavior.   The means and

19 schedule for inputting such data will be determined by the City in consultation with DOJ, taking

20 into consideration the above factors, as well as the City's ability to meet its obligations under

21 paragraph 50.  With regard to historic use of force data, the City shall make the determinations

22 required by this paragraph for the beta version of TEAMS II required by paragraph 50(c) and

23 again for the final version of TEAMS II.

24

25     43.    TEAMS II shall include relevant numerical and descriptive information about each

26 incorporated item and incident, and scanned or electronic attachments of copies of relevant

27                                       -12-

28

documents (*e.g.*, through scanning or using computerized word processing).  TEAMS II shall

have the capability to search and retrieve (through reports and queries) numerical counts,

percentages and other statistical analyses derived from numerical information in the database;

listings; descriptive information; and electronic document copies for (a) individual employees,

LAPD units, and groups of officers, and (b) incidents or items, and groups of incidents or items.

TEAMS II shall have the capability to search and retrieve this information for specified time

periods, based on combinations of data fields contained in TEAMS II (as designated by the

authorized user).

44.     Where information about a single incident is entered in TEAMS II from more than

one document (*e.g.*, from a Complaint Form 1.28 and a use of force report), TEAMS II shall use a

common control number or other equally effective means to link the information from different

sources so that the user can cross-reference the information and perform analyses.  Similarly, all

personally identifiable information relating to LAPD officers shall contain the serial or other

employee identification number of the officer to allow for linking and cross-referencing

information.

45.     The City shall prepare a design document for TEAMS II that sets forth in detail the

City's plan for ensuring that the requirements of paragraphs 41, 43, and 44 are met, including:  (i)

the data tables and fields and values to be included pursuant to paragraphs 41 and 43 and (ii) the

documents that will be electronically attached.  The City shall prepare this document in

consultation with the DOJ and the Monitor, and shall obtain approval for such design document

from the DOJ, which approval shall not be unreasonably withheld.

46.     The Department shall develop and implement a protocol for using TEAMS II, for

purposes including supervising and auditing the performance of specific officers, supervisors,

-13-

1  managers, and LAPD units, as well as the LAPD as a whole.  The City shall prepare this protocol

2  in consultation with the DOJ and the Monitor, and shall obtain approval for the protocol and any

3  subsequent modifications to the protocol from the DOJ for matters covered by paragraph 47,

4  which approval(s) shall not be unreasonably withheld.  The City shall notify DOJ of proposed

5  modifications to the protocol that do not address matters covered by paragraph 47 prior to

6  implementing such modifications.  In reviewing the protocol and the design document for

7  approval, DOJ shall use reasonable efforts to respond promptly to the City in order to enable the

8  City to meet the deadlines imposed by paragraph 50.

9

10  47.  The protocol for using TEAMS II shall include the following provisions and

11  elements:

12

13  a.  The protocol shall require that, on a regular basis, supervisors review and

14  analyze all relevant information in TEAMS II about officers under their

15  supervision to detect any pattern or series of incidents that indicate that an officer,

16  group of officers, or an LAPD unit under his or her supervision may be engaging

17  in at-risk behavior.

18

19  b.  The protocol shall provide that when at-risk behavior may be occurring

20  based on a review and analysis described in the preceding subparagraph,

21  appropriate managers and supervisors shall undertake a more intensive review of

22  the officer's performance.

23

24  c.  The protocol shall require that LAPD managers on a regular basis review

25  and analyze relevant information in TEAMS II about subordinate managers and

26  supervisors in their command regarding the subordinate's ability to manage

27  -14-

28

1   adherence to policy and to address at-risk behavior.

2

3       d.     The protocol shall state guidelines for numbers and types of incidents

4   requiring a TEAMS II review by supervisors and managers (in addition to the

5   regular reviews required by the preceding subparagraphs), and the frequency of

6   these reviews.

7

8       e.     The protocol shall state guidelines for the follow-up managerial or

9   supervisory actions (including nondisciplinary actions) to be taken based on

10   reviews of the information in TEAMS II required pursuant to this protocol.

11

12       f.     The protocol shall require that managers and supervisors use TEAMS II

13   information as one source of information in determining when to undertake an

14   audit of an LAPD unit or group of officers.

15

16       g.     The protocol shall require that all relevant and appropriate information in

17   TEAMS II be taken into account when selecting officers for assignment to the

18   OHB Unit established in paragraph 55, units covered by paragraph 106, pay grade

19   advancement, promotion, assignment as an IAG investigator or as a Field Training

20   Officer, or when preparing annual personnel performance evaluations.  Complaints

21   and portions of complaints not permitted to be used in making certain decisions

22   under state law shall not be used in connection with such decisions and TEAMS II

23   shall reflect this limitation by excluding such complaints and portions of

24   complaints from the information that is retrieved by a query or report regarding

25   such decisions.  Supervisors and managers shall be required to document their

26   consideration of any sustained administrative investigation, adverse judicial

27                            -15-

28

finding, or discipline against an officer in each case for excessive force, false arrest or charge, improper search or seizure, sexual harassment, discrimination, or dishonesty in determining when such officer is selected for assignment to the OHB Unit, units covered by paragraph 106, pay grade advancement, promotion, or assignment as an IAG investigator or as a Field Training Officer, or when preparing annual personnel performance evaluations.

h.    The protocol shall specify that actions taken as a result of information from TEAMS II shall be based on all relevant and appropriate information, and not solely on the number or percentages of incidents in any category recorded in TEAMS II.

i.    The protocol shall provide that managers' and supervisors' performance in implementing the provisions of the TEAMS II protocol shall be taken into account in their annual personnel performance evaluations.

j.    The protocol shall provide specific procedures that provide for each LAPD officer to be able to review on a regular basis all personally-identifiable data about him or her in TEAMS II in order to ensure the accuracy of that data.  The protocol also shall provide for procedures for correcting data errors discovered by officers in their review of the TEAMS II data.

k.    The protocol shall require regular review by appropriate managers of all relevant TEAMS II information to evaluate officer performance citywide, and to evaluate and make appropriate comparisons regarding the performance of all LAPD units in order to identify any patterns or series of incidents that may indicate

-16-

at-risk behavior.  These evaluations shall include evaluating the performance over time of individual units, and comparing the performance of units with similar responsibilities.

l.      The protocol shall provide for the routine and timely documentation in TEAMS II of actions taken as a result of reviews of TEAMS II information.

m.     The protocol shall require that whenever an officer transfers into a new Division or Area, the Commanding officer of such new Division or Area shall promptly cause the transferred officer's TEAMS II record to be reviewed by the transferred officer's watch commander or supervisor.  This shall not apply to probationary Police Officers I.

48.     The LAPD shall train managers and supervisors, consistent with their authority, to use TEAMS II to address at-risk behavior and to implement the protocol described in paragraphs 46 and 47.

49.     The City shall maintain all personally identifiable information about an officer included in TEAMS II during the officer's employment with the LAPD and for at least three years thereafter (unless otherwise required by law to be maintained for a longer period).  Information necessary for aggregate statistical analysis shall be maintained indefinitely in TEAMS II.  On an ongoing basis, the City shall make all reasonable efforts to enter information in TEAMS II in a timely, accurate, and complete manner, and to maintain the data in a secure and confidential manner consistent with the applicable access policy as established pursuant to paragraph 40.

50.     TEAMS II shall be developed and implemented according to the following

-17-

schedule:

    a.     Within three months of the effective date of this Agreement, the City shall submit the design document required by paragraph 45 to DOJ for approval. The City shall share drafts of this document with the DOJ and the Monitor to allow the DOJ and the Monitor to become familiar with the document as it develops and to provide informal comments on it. The City and the DOJ shall together seek to ensure that the design document receives formal approval within 30 days after it is submitted for approval. The City shall respond to any DOJ written comments or objections during the approval process within 10 days, excluding weekends and state and federal holidays. Such response shall explain the City's position and propose changes to the design document as appropriate to respond to DOJ's concerns.

    b.     Within 15 months of DOJ's approval of the design document pursuant to paragraph 50(a), the City shall submit the protocol for using TEAMS II required by paragraph 46 to DOJ for approval. The City shall share drafts of this document with the DOJ and the Monitor to allow the DOJ and the Monitor to become familiar with the document as it develops and to provide informal comments on it. The City and DOJ shall together seek to ensure that the protocol receives final approval within 60 days after it is presented for approval. The City shall respond to any DOJ written comments or objections during the approval process within 10 days, excluding weekends and state and federal holidays. Such response shall explain the City's position and propose any changes to the protocol as appropriate to respond to DOJ's concerns, together with a schedule for making the proposed changes.

-18-

c.    Within 12 months of the approval of the design document pursuant to paragraph 50(a), the City shall have ready for testing a beta version of TEAMS II consisting of: (i) server hardware and operating systems installed, configured and integrated with the LAPD intranet; (ii) necessary data base software installed and configured; (iii) data structures created, including interfaces to source data; and (iv) the use of force information system completed, including, subject to paragraph 42, historic data. The DOJ and the Monitor shall have the opportunity to participate in testing the beta version using use of force data and test data created specifically for purposes of checking the TEAMS II system. As a beta version of TEAMS II becomes operational, it shall be used in conjunction with TEAMS I and Internal Affairs Group Form 1.80's to satisfy the requirements of paragraph 51 until TEAMS II is fully implemented.

d.    The TEAMS II computer program and computer hardware shall be operational and implemented to the extent possible, subject to the completion of the protocol for using TEAMS II required by paragraph 46, within 21 months of the approval of the design document pursuant to paragraph 50(a).

e.    TEAMS II shall be implemented fully within the later of 21 months of the approval of the design document pursuant to paragraph 50(a), or 6 months of the approval of the protocol for using TEAMS II pursuant to paragraph 50(b).

51.    The LAPD shall, until such time as TEAMS II is implemented, utilize existing databases, information and documents to make certain decisions, as follows:

a.    Selection of officers for assignment to the OHB Unit or as IAG

-19-

investigators shall require that the LAPD review the applicable IAG Form 1.80's, and all pending complaint files for such officers, in conjunction with the officer's TEAMS I record.

b.    Selection of officers as FTOs or for units covered by paragraph 106 shall require that the LAPD review the applicable TEAMS I record for such officer.

c.    Whenever an officer transfers into a new Division or Area, the Commanding Officer of such new Division or Area shall promptly cause the transferred officer's TEAMS I record to be reviewed by the transferred officer's watch commander or supervisor.  This shall not apply to Probationary Police Officers I.

d.    To the extent available from the reviews required by this paragraph, supervisors and managers shall be required to document their consideration of any sustained administrative investigation, adverse judicial finding, or discipline against an officer, in each case, for excessive force, false arrest or charge, improper search or seizure, sexual harassment, discrimination, or dishonesty in determining when such officer is selected for assignment to the OHB Unit, units covered by paragraph 106, or assignment as an IAG investigator or Field Training Officer.

52.    Following the initial implementation of TEAMS II, and as experience and the availability of new technology may warrant, the City may or may cause the Department to add, subtract, or modify data tables and fields, modify the list of documents electronically attached, and add, subtract, or modify standardized reports and queries.  The City shall or shall cause the Department to consult with the DOJ and the Monitor before subtracting or modifying any data

tables or data fields, or modifying the list of documents to be electronically attached, and make all reasonable modifications to the proposed alterations based on any objections by the DOJ.

B.   *Management and Coordination of Risk Assessment Responsibilities*

53.     The LAPD shall designate a unit within the Human Resources Bureau that is responsible for developing, implementing, and coordinating LAPD-wide risk assessments. Such unit shall be responsible for the operation of TEAMS II, and for ensuring that information is entered into and maintained in TEAMS II in accordance with this Agreement. Such unit further shall provide assistance to managers and supervisors who are using TEAMS II to perform the tasks required hereunder and in the protocol adopted pursuant to paragraphs 46 and 47 above, and shall be responsible for ensuring that appropriate standardized reports and queries are programmed to provide the information necessary to perform these tasks. Nothing in this Agreement shall preclude such unit from also having the responsibility for providing investigative support and liaison with the Office of the City Attorney.

C.   *Performance Evaluation System*

54.     Within 24 months of the effective date of this Agreement, the Department shall develop and initiate implementation of a plan consistent with applicable federal and state law and the City Charter, that ensures that annual personnel performance evaluations are prepared for all LAPD sworn employees that accurately reflect the quality of each sworn employee's performance, including with respect to: (a) civil rights integrity and the employee's community policing efforts (commensurate with the employee's duties and responsibilities); (b) managers' and supervisors' performance in addressing at-risk behavior including the responses to Complaint Form 1.28 investigations; (c) managers' and supervisors' response to and review of Categorical

-21-

1    and Non-Categorical Use of Force incidents, review of arrest, booking, and charging decisions

2    and review of requests for warrants and affidavits to support warrant applications; and (d)

3    managers' and supervisors' performance in preventing retaliation.  The plan shall include

4    provisions to add factors described in subparts (a)-(d), above, to employees' job descriptions,

5    where applicable.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    -22-

28

III.   **INCIDENTS, PROCEDURES, DOCUMENTATION, INVESTIGATION, AND REVIEW**

A.   *Use of Force*

55.   Within six months of the effective date of this Agreement, all Categorical Use of Force administrative investigations, including those formerly conducted by the Robbery Homicide Division ("RHD") or the Detectives Headquarters Division ("DHD"), shall be conducted by a unit assigned to the Operations Headquarters Bureau ("OHB"), which unit (the "OHB Unit") shall report directly to the commanding officer of OHB.

      a.   Investigators in this unit shall be detectives, sergeants, or other officers with supervisory rank.

      b.   In the organizational structure of the LAPD, the commanding officer of OHB shall not have direct line supervision for the LAPD's geographic bureaus; provided, however, that such commanding officer may continue to serve on the Operations Committee (or any successor thereto), issue orders applicable to the LAPD (including the geographic bureaus), assume staff responsibilities, as defined in the LAPD manual, and undertake special assignments as determined by the Chief of Police.

      c.   Investigators in this unit shall be trained in conducting administrative investigations as specified in paragraph 80.

56.   The OHB Unit shall have the capability to "roll out" to all Categorical Use of

-23-

Force incidents 24 hours a day.  The Department shall require immediate notification to the Chief
of Police, the OHB Unit, the Commission and the Inspector General by the LAPD whenever there
is a Categorical Use of Force.  Upon receiving each such notification, an OHB Unit investigator
shall promptly respond to the scene of each Categorical Use of Force and commence his or her
investigation.  The senior OHB Unit manager present shall have overall command of the crime
scene and investigation at the scene where multiple units are present to investigate a Categorical
Use of Force incident; provided, however, that this shall not prevent the Chief of Police, the Chief
of Staff, the Department Commander or the Chief's Duty Officer from assuming command from a
junior OHB supervisor or manager when there is a specific need to do so.

57.     In addition to administrative investigations and where the facts so warrant, the
LAPD shall also conduct a separate criminal investigation of Categorical Uses of Force.  The
criminal investigation shall not be conducted by the OHB Unit.

58.     The LAPD shall continue its policy of notifying the County of Los Angeles
District Attorney's Office whenever an LAPD officer, on or off-duty, shoots and injures any
person during the scope and course of employment.  In addition, the LAPD shall notify the
District Attorney's Office whenever an individual dies while in the custody or control of an
LAPD officer or the LAPD, and a use of force by a peace officer may be a proximate cause of the
death.

59.     The LAPD shall continue to provide cooperation to the District Attorney's Office
personnel who arrive on the scene of the incident.

60.     The Department shall renew its request to the appropriate bargaining unit(s) for a
provision in its collective bargaining agreements that when more than one officer fires his or her

-24-

weapon in a single OIS incident, then each officer should be represented by a different attorney during the investigation and subsequent proceedings. The foregoing acknowledges that each officer retains the right to be represented by an attorney of his or her choice.

61.     All involved officers and witness officers shall be separated immediately after an OIS, and shall remain separated until all such officers have given statements or, in the case of involved officers, declined to give a statement; provided, however, that nothing in this Agreement prevents the Department from compelling a statement or requires the Department to compel a statement in the event that the officer has declined to give a statement. In such a case, all officers shall remain separated until such compelled statement has been given.

62.     Managers shall analyze the circumstances surrounding the presence or absence of a supervisor at (a) a Categorical Use of Force incident, and (b) the service of a search warrant. In each case, such analysis shall occur within one week of the occurrence of the incident or service to determine if the supervisor's response to the incident or service was appropriate. Such supervisory conduct shall be taken into account in each supervisor's annual personnel performance evaluation.

63.     The Department shall continue its practice of referring all officers involved in a Categorical Use of Force resulting in death or the substantial possibility of death (whether on or off duty) to BSS for a psychological evaluation by a licensed mental health professional. The matters discussed in such evaluation shall be strictly confidential and shall not be communicated to other LAPD officers without the consent of the officer evaluated. No such officer shall return to field duty until his or her manager determines that the officer should be returned to field duty upon consultation with BSS.

-25-

64.     Except as limited or prohibited by applicable state law, when a manager reviews and makes recommendations regarding discipline or non-disciplinary action as a result of a Categorical Use of Force, the manager will consider the officer's work history, including information contained in the TEAMS II system, and that officer's Categorical Use of Force history, including a review of the tactics the officer has used in past uses of force.

65.     The Department shall continue to require officers to report to the LAPD without delay the officer's own use of force (on the use of force form as revised pursuant to paragraph 66).

66.     The LAPD shall modify its current use of force report form to include data fields that require officers to identify with specificity the type of force used for the physical force category, to record the body area impacted by such physical use of force, to identify fractures and dislocations as a type of injury, and to include bean bag shot gun as a type of force category.

67.     The Commission shall continue its practice of reviewing all Categorical Uses of Force including all the reports prepared by the Chief of Police regarding such incidents and related investigation files.  These reports shall be provided to the Police Commission at least 60 days before the running of any statute of limitations that would restrict the imposition of discipline related to such Categorical Use of Force.  Provided, however, if the investigation file has not been completed by this time, the LAPD shall provide the Commission with a copy of the underlying file, including all evidence gathered, with a status report of the investigation that includes an explanation of why the investigation has not been completed, a description of the investigative steps still to be completed, and a schedule for the completion of the investigation. The Commission shall review whether any administrative investigation was unduly delayed due to a related criminal investigation, and, if so, shall assess the reasons therefor.

68.    The LAPD shall continue to require that all uses of force that are not Categorical Uses of Force ("Non-Categorical Uses of Force") be reported to a supervisor who shall conduct a timely supervisory investigation of the incident, as required under LAPD policy and paragraphs 69 and 81, including collecting and analyzing relevant documents and witness interviews, and completing a use of force report form.

69.    The Department shall continue to have the Use of Force Review Board review all Categorical Uses of Force.  The LAPD shall continue to have Non-Categorical Uses of Force reviewed by chain-of-command managers at the Division and Bureau level.  Non-Categorical Use of Force investigations shall be reviewed by Division management within 14 days of the incident, unless a member of the chain-of-command reviewing the investigation detects a deficiency in the investigation, in which case the review shall be completed within a period of time reasonably necessary to correct such deficiency in the investigation or reports.

B.    *Search and Arrest Procedures*

70.    The Department shall continue to require all booking recommendations be personally reviewed and approved by a watch commander as to appropriateness, legality, and conformance with Department policies.  Additionally, the watch commander or designee will personally review and approve supporting arrest reports as to appropriateness, legality and conformance with Department polices in light of the booking recommendation.

a.    Such reviews shall continue to entail a review for completeness of the information that is contained on the applicable forms and an authenticity review to include examining the form for "canned" language, inconsistent information, lack of articulation of the legal basis for the action or other indicia that the information

-27-

on the forms is not authentic or correct.

       b.     Supervisors shall evaluate each incident in which a person is charged with interfering with a police officer (California Penal Code § 148), resisting arrest, or assault on an officer to determine whether it raises any issue or concern regarding training, policy, or tactics.

       c.     The quality of these supervisory reviews shall be taken into account in the supervisor's annual personnel performance evaluations.

71.    The LAPD shall continue to implement procedures with respect to search warrants and probable cause arrest warrants as defined in the LAPD manual (commonly known as "Ramey" warrants), which require, among other things, that a supervisor shall review each request for a warrant and each affidavit filed by a police officer to support the warrant application.  Such review shall include:

       a.     a review for completeness of the information contained therein and an authenticity review to include an examination for "canned" language, inconsistent information, and lack of articulation of the legal basis for the warrant; and

       b.     a review of the information on the application and affidavit, where applicable, to determine whether the warrant is appropriate, legal and in conformance with LAPD procedure.

       c.     In addition, a supervisor shall review the officer's plan for executing the search warrant and, after execution of the search warrant, review the execution of

-28-

the search warrant.  A supervisor shall be present for execution of the search warrant.

72.    Each Area and specialized Division of the LAPD shall maintain a log listing each search warrant, the case file where a copy of such warrant is maintained, and the officer who applied for and each supervisor who reviewed the application for such warrant.

73.    All detainees and arrestees brought to an LAPD facility shall be brought before a watch commander for inspection.  The watch commander shall visually inspect each such detainee or arrestee for injuries as required by LAPD procedures and, at a minimum, ask the detainee or arrestee the questions required by current LAPD procedures, which are: 1) "Do you understand why you were detained/arrested?"; 2) "Are you sick, ill, or injured?"; 3) "Do you have any questions or concerns?".  In the rare cases where circumstances preclude such an inspection and interview by a watch commander, the LAPD shall ensure that the person is inspected and interviewed by a supervisor who did not assist or participate in the person's arrest or detention.  In each instance, the watch commander or supervisor, as appropriate, shall sign the related booking documentation, which shall indicate their compliance with these procedures.

C.    *Initiation of Complaints*

74.    The Department shall continue to provide for the receipt of complaints as follows:

    a.    in writing or verbally, in person, by mail, by telephone (or TDD), facsimile transmission, or by electronic mail;

    b.    anonymous complaints;

-29-

c.      at LAPD headquarters, any LAPD station or substation, or the offices of the
Police Commission or the Inspector General;

d.      distribution of complaint materials and self-addressed postage-paid
envelopes in easily accessible City locations throughout Los Angeles and in
languages utilized by the City of Los Angeles in municipal election ballot
materials;

e.      distribution of the materials needed to file a complaint upon request to
community groups, community centers, and public and private service centers;

f.      the assignment of a case number to each complaint; and

g.      continuation of a 24-hour toll-free telephone complaint hotline.  Within six
months of the effective date of this Agreement, the Department shall record all
calls made on this hotline.

h.      In addition, the Department shall prohibit officers from asking or requiring
a potential complainant to sign any form that in any manner limits or waives the
ability of a civilian to file a police complaint with the LAPD or any other entity.
The Department shall also prohibit officers, as a condition for filing a misconduct
complaint, from asking or requiring a potential complainant to sign a form that
limits or waives the ability of a civilian to file a lawsuit in court.

75.     The LAPD shall initiate a Complaint Form 1.28 investigation against (i) any
officer who allegedly fails to inform any civilian who indicates a desire to file a complaint of the

-30-

1    means by which a complaint may be filed; (ii) any officer who allegedly attempts to dissuade a

2    civilian from filing a complaint; or (iii) any officer who is authorized to accept a complaint who

3    allegedly refuses to do so.

4

5        76.    The City shall cause the LAPD to be notified whenever a person serves a civil

6    lawsuit on or files a claim against the City alleging misconduct by an LAPD officer or other

7    employee of the LAPD.

8

9        77.    The Department shall continue to require all officers to notify without delay the

10   LAPD whenever the officer is arrested or criminally charged for any conduct, or the officer is

11   named as a party in any civil suit involving his or her conduct while on duty (or otherwise while

12   acting in an official capacity).  In addition, the Department shall require such notification from

13   any officer who is named as a defendant in any civil suit that results in a temporary, preliminary,

14   or final adjudication on the merits in favor of a plaintiff complaining of off-duty physical

15   violence, threats of physical violence, or domestic violence by the officer.

16

17       78.    The Department shall continue to require officers to report to the LAPD without

18   delay:  any conduct by other officers that reasonably appears to constitute (a) an excessive use of

19   force or improper threat of force; (b) a false arrest or filing of false charges; (c) an unlawful search

20   or seizure; (d) invidious discrimination; (e) an intentional failure to complete forms required by

21   LAPD policies and in accordance with procedures; (f) an act of retaliation for complying with any

22   LAPD policy or procedure; or (g) an intentional provision of false information in an

23   administrative investigation or in any official report, log, or electronic transmittal of information.

24   Officers shall report such alleged misconduct by fellow officers either directly to IAG or to a

25   supervisor who shall complete a Complaint Form 1.28.  This requirement applies to all officers,

26   including supervisors and managers who learn of evidence of possible misconduct through their

27                                              -31-

28

1  review of an officer's work.  Failure to voluntarily report as described in this paragraph shall be

2  an offense subject to discipline if sustained.

3

4  D.    *Conduct of Investigations*

5

6      79.    Within 10 days of their receipt by the LAPD, the IAG shall receive and promptly

7  review the "face sheet" of all complaints to determine whether they meet the criteria in paragraphs

8  93, 94 and 95 for being investigated by IAG, or the OHB Unit, or chain of command supervisors.

9

10     80.    In conducting all Categorical Use of Force investigations, and complaint

11  investigations regarding the categories of misconduct allegations and matters identified in

12  paragraphs 93 and 94 (whether conducted by IAG, the OHB Unit, or by chain of command during

13  the transition period specified in paragraph 95), the LAPD shall, subject to and in conformance

14  with applicable state law:

15

16          a.    tape record or videotape interviews of complainants, involved officers, and

17              witnesses;

18

19          b.    whenever practicable and appropriate, and not inconsistent with good

20              investigatory practices such as canvassing a scene, interview complainants and

21              witnesses at sites and times convenient for them, including at their residences or

22              places of business;

23

24          c.    prohibit group interviews;

25

26          d.    notify involved officers and the supervisors of involved officers, except

27                                           -32-

28

when LAPD deems the complaint to be confidential under the law;

    e.    interview all supervisors with respect to their conduct at the scene during the incident;

    f.    collect and preserve all appropriate evidence, including canvassing the scene to locate witnesses where appropriate, with the burden for such collection on the LAPD, not the complainant; and

    g.    identify and report in writing all inconsistencies in officer and witness interview statements gathered during the investigation.

81.    Chain of command investigations of complaints (other than those covered by paragraph 80), and Non-Categorical Uses of Force shall comply with subsections c, e, and f, of paragraph 80 where applicable.

82.    If during the course of any investigation of a Categorical Use of Force, Non-Categorical Use of Force, or complaint, the investigating officer has reason to believe that misconduct may have occurred other than that alleged by the complainant, the alleged victim of misconduct, or the triggering item or report, the investigating officer must notify a supervisor, and an additional Complaint Form 1.28 investigation of the additional misconduct issue shall be conducted.

83.    Subject to restrictions on use of information contained in applicable state law, the OHB Unit investigating Categorical Uses of Force as described in paragraph 55 and 93 and IAG investigators conducting investigations as described in paragraphs 93 and 94, shall have access to

all information contained in TEAMS II, where such information is relevant and appropriate to such investigations, including training records, Complaint Form 1.28 investigations, and discipline histories, and performance evaluations.

E. *Adjudicating Investigations*

84.    The Department shall continue to employ the following standards when it makes credibility determinations: use of standard California Jury Instructions to evaluate credibility; consideration of the accused officer's history of complaint investigations and disciplinary records concerning that officer, where relevant and appropriate; and consideration of the civilian's criminal history, where appropriate.  There shall be no automatic preference of an officer's statement over the statement of any other witness including a complainant who is also a witness. There shall be no automatic judgment that there is insufficient information to make a credibility determination when the only or principal information about an incident is contained in conflicting statements made by the involved officer and the complainant.  Absent other indicators of bias or untruthfulness, mere familial or social relationship with a victim or officer shall not render a witness' statement as biased or untruthful; however, the fact of such relationship may be noted.

85.    The LAPD shall adjudicate all complaints using a preponderance of the evidence standard.  Wherever supported by evidence collected in the investigation, complaints shall be adjudicated as "sustained," "sustained-no penalty," "not resolved," "unfounded," "exonerated," "duplicate," or "no Department employee."  In no case may a Complaint Form 1.28 investigation be closed without a final adjudication.

86.    Withdrawal of a complaint, unavailability of a complainant to make a statement, or the fact that the complaint was filed anonymously or by a person other than the victim of the

-34-

misconduct, shall not be a basis for adjudicating a complaint without further attempt at investigation. The LAPD shall use reasonable efforts to investigate such complaints to determine whether the complaint can be corroborated.

87.      All investigations of complaints shall be completed in a timely manner, taking into account: (a) the investigation's complexity; (b) the availability of evidence; and (c) overriding or extenuating circumstances underlying exceptions or tolling doctrines that may be applied to the disciplinary limitations provisions (i) applicable to LAPD officers and (ii) applicable to many other law enforcement agencies in the State of California. The parties expect that, even after taking these circumstances into account, most investigations will be completed within five months.

F.      *Discipline & Non-Disciplinary Action*

88.      The Chief of Police, no later than 45 calendar days following the end of each calendar quarter, shall report to the Commission, with a copy to the Inspector General, on the imposition of discipline during such quarter (the "Discipline Report"). The Chief of Police shall provide the first such report to the Police Commission by February 15, 2001, and such report shall provide the information listed below for the period from the effective date of this Agreement until December 31, 2000; thereafter such report will be provided on a calendar quarter basis. Such report shall contain: (a) a summary of all discipline imposed during the quarter reported by type of misconduct, broken down by type of discipline, bureau, and rank; (b) a summary comparison between discipline imposed and determinations made by the Boards of Rights during the quarter; (c) a written explanation of each reduction in penalty from that prescribed by the Board of Rights; (d) a description of all discipline and non-disciplinary actions for each Categorical Use of Force the Commission has determined was out of policy; and (e) a written explanation, following the

-35-

1 Chief of Police's final determination regarding the imposition of discipline, when discipline has

2 not been imposed (other than exoneration by the Board of Rights) and the following has occurred:

3 the officer has entered a guilty plea or has been found guilty in a criminal case; the officer had a

4 Complaint Form 1.28 investigation, in the categories identified in paragraphs 93 and 94 (whether

5 conducted by the OHB Unit, IAG, or by chain of command during the transition period specified

6 in paragraph 95) sustained; or the officer has been found civilly liable by a judge or jury of

7 conduct committed on duty or while acting in his or her official capacity; or the officer's conduct

8 has been the basis for the City being found civilly liable by a judge or jury. Each quarterly

9 Discipline Report shall include as attachments copies of the monthly Internal Affairs Group

10 Reports on Administration of Internal Discipline for that quarter, which, during the term of this

11 Agreement, shall continue to contain at least the level of detail included in the August 1999

12 report.

13

14 89.     The Inspector General shall review, analyze and report to the Commission on each

15 Discipline Report, including the circumstances under which discipline was imposed and the

16 severity of any discipline imposed. The Commission, no later than 45 days after receipt of the

17 Discipline Report, following consultation with the Chief of Police, shall review the Discipline

18 Report and document the Commission's assessment of the appropriateness of the actions of the

19 Chief of Police described in the Discipline Report. With respect to Categorical Uses of Force,

20 such assessment and documentation shall be made for each officer whose conduct was determined

21 to be out of policy by the Commission. Such assessment and documentation shall be considered

22 as part of the Chief's annual evaluation as provided in paragraph 144.

23

24 90.     The LAPD shall continue its practice of having managers evaluate all Complaint

25 Form 1.28 investigations to identify underlying problems and training needs. After such

26 evaluations the manager shall implement appropriate non-disciplinary actions or make a

27

28

-36-

recommendation to the proper LAPD entity to implement such actions.

91.     After a complaint is resolved by the LAPD, the LAPD shall inform the complainant of the resolution, in writing, including the investigation's significant dates, general allegations, and disposition.

92.     The City and the Department shall prohibit retaliation in any form against any employee for reporting possible misconduct by any other employee of the LAPD.  Within six months of the effective date of this Agreement and annually thereafter, the Police Commission shall review the Department's anti-retaliation policy and its implementation and make modifications as appropriate to protect officers from reprisals for reporting misconduct.  The Commission's review of such policy and its implementation shall consider the discipline imposed for retaliation and supervisors' performance in addressing and preventing retaliation.

G.     *Internal Affairs Group*

93.     The City shall reallocate responsibility for complaint investigations between IAG and chain-of-command supervisors.  Under this reallocation, IAG, and not chain-of-command supervisors, shall investigate (a) all civil suits or claims for damages involving on duty conduct by LAPD officers or civil suits and claims involving off-duty conduct required to be reported under paragraph 77; and (b) all complaints which allege:

> (i)     unauthorized uses of force, other than administrative Categorical Use of Force investigations (which shall be investigated by the OHB Unit as part of its investigation of such Categorical Uses of Force);

   (ii) invidious discrimination (*e.g.*, on the basis of race, ethnicity, gender, religion, national origin, sexual orientation, or disability), including improper ethnic remarks and gender bias;

   (iii) unlawful search;

   (iv) unlawful seizure (including false imprisonment and false arrest);

   (v) dishonesty;

   (vi) domestic violence;

   (vii) improper behavior involving narcotics or drugs;

   (viii) sexual misconduct;

   (ix) theft; and

   (x) any act of retaliation or retribution against an officer or civilian.

94. In addition to the categories of complaint allegations set forth in paragraph 93, IAG, and not chain of command supervisors, shall investigate the following:

   a. all incidents in which both (i) a civilian is charged by an officer with interfering with a police officer (California Penal Code § 148), resisting arrest, or disorderly conduct, and (ii) the prosecutor's office notifies the Department either

1  that it is dismissing the charge based upon officer credibility or a judge dismissed

2  the charge based upon officer credibility;

4      b.      all incidents in which the Department has received written notification from

5  a prosecuting agency in a criminal case that there has been an order suppressing

6  evidence because of any constitutional violation involving potential misconduct by

7  an LAPD officer, any other judicial finding of officer misconduct made in the

8  course of a judicial proceeding or any request by a federal or state judge or

9  magistrate that a misconduct investigation be initiated pursuant to some

10  information developed during a judicial proceeding before a judge or magistrate.

11  The LAPD shall request that all prosecuting agencies provide them with written

12  notification whenever the prosecuting agency has determined that any of the above

13  has occurred;

15      c.      all incidents in which an officer is arrested or charged with a crime other

16  than low grade misdemeanors, as defined in the LAPD manual, which

17  misdemeanors shall be investigated by chain-of-command supervisors; and

19      d.      any request by a judge or prosecutor that a misconduct investigation be

20  initiated pursuant to information developed during the course of an official

21  proceeding in which such judge or prosecutor has been involved.

23      95.    The City shall in fiscal year 2001-2002 provide all necessary position authorities to

24  fully implement paragraphs 93 and 94.  Investigation responsibilities shall be transitioned as

25  positions are filled.  Prior to positions being filled, investigation responsibilities shall be

26  transitioned commensurate with available resources.  Positions will be filled and investigation

-39-

1   responsibility transition shall be completed by December 31, 2002. For complaints filed on or

2   after July 1, 2001, the Department shall make a first priority of allocating to IAG complaints in

3   the categories specified in paragraphs 93 and 94 against officers assigned to special units covered

4   by paragraph 106. The LAPD shall make a second priority of allocating to IAG complaints

5   alleging unauthorized uses of force (other than administrative Categorical Uses of Force). These

6   complaint investigations will be allocated to IAG so as to allow the City to meet its obligations

7   under paragraph 87 of this Agreement.

8

9           96.     Paragraphs 93 and 94 shall not apply to misconduct complaints lodged against the

10  Chief of Police, which investigations shall be directed by the Commission as set forth in

11  paragraph 145. Paragraphs 93 and 94 do not preclude IAG from undertaking such other

12  investigations as the Department may determine.

13

14          97.     By July 1, 2001, the City shall develop and initiate a plan for organizing and

15  executing regular, targeted, and random integrity audit checks, or "sting" operations (hereinafter

16  "sting audits"), to identify and investigate officers engaging in at-risk behavior, including:

17  unlawful stops, searches, seizures (including false arrests), uses of excessive force, or violations

18  of LAPD's Manual Section 4/264.50 (or its successor). These operations shall also seek to

19  identify officers who discourage the filing of a complaint or fail to report misconduct or

20  complaints. IAG shall be the unit within the LAPD responsible for these operations. The

21  Department shall use the relevant TEAMS II data, and other relevant information, in selecting

22  targets for these sting audits. Sting audits shall be conducted for each subsequent fiscal year for

23  the duration of this Agreement. Nothing in this Agreement is intended to limit the application of

24  any federal statute.

25

26          98.     The commanding officer of IAG shall select the staff who are hired and retained as

27                                                 -40-

28

1    IAG investigators and supervisors, subject to the applicable provisions of the City's civil service

2    rules and regulations and collective bargaining agreements. Investigative experience shall be a

3    desirable, but not a required, criterion for an IAG investigatory position. Officers who have a

4    history of any sustained investigation or discipline received for the use of excessive force, a false

5    arrest or charge, or an improper search or seizure, sexual harassment, discrimination or dishonesty

6    shall be disqualified from IAG positions unless the IAG commanding officer justifies in writing

7    the hiring of such officer despite such a history.

8

9        99.    The Department shall establish a term of duty of up to three years for the IAG

10   Sergeants, Detectives and Lieutenants who conduct investigations, and may reappoint an officer

11   to a new term of duty only if that officer has performed in a competent manner. Such IAG

12   investigators may be removed during their term of duty for acts or behaviors that would disqualify

13   the officer from selection to IAG or under any other personnel authority available to the

14   Department.

15

16       100.   IAG investigators shall be evaluated based on their competency in following the

17   policies and procedures for Complaint Form 1.28 investigations. The LAPD shall provide regular

18   and periodic re-training and re-evaluations on topics relevant to their duties.

19

20       101.   The LAPD shall refer to the appropriate criminal prosecutorial authorities all

21   incidents involving LAPD officers with facts indicating criminal conduct.

22

23

24

25

26

27                                      -41-

28

H.   *Non-Discrimination Policy and Motor Vehicle and Pedestrian Stops*

102.   The Department shall continue to prohibit discriminatory conduct on the basis of race, color, ethnicity, national origin, gender, sexual orientation, or disability in the conduct of law enforcement activities. The Department shall continue to require that, to the extent required by federal and state law, all stops and detentions, and activities following stops or detentions, by the LAPD shall be made on the basis of legitimate, articulable reasons consistent with the standards of reasonable suspicion or probable cause.

103.   LAPD officers may not use race, color, ethnicity, or national origin (to any extent or degree) in conducting stops or detentions, or activities following stops or detentions, except when engaging in appropriate suspect-specific activity to identify a particular person or group. When LAPD officers are seeking one or more specific persons who have been identified or described in part by their race, color, ethnicity, or national origin, they may rely in part on race, color, ethnicity, or national origin only in combination with other appropriate identifying factors and may not give race, color, ethnicity or national origin undue weight.

104.   By November 1, 2001, the Department shall require LAPD officers to complete a written or electronic report each time an officer conducts a motor vehicle stop.

a.   The report shall include the following:

(i)   the officer's serial number;

(ii)   date and approximate time of the stop;

-42-

(iii)    reporting district where the stop occurred;

(iv)    driver's apparent race, ethnicity, or national origin;

(v)    driver's gender and apparent age;

(vi)    reason for the stop, to include check boxes for: (1) suspected moving violation of the vehicle code; (2) suspected violation of the Penal or Health and Safety Codes; (3) suspected violation of a City ordinance; (4) Departmental briefing (including crime broadcast/crime bulletin/roll call briefing); (5) suspected equipment/registration violation; (6) call for service; and (7) other (with a brief text field);

(vii)    whether the driver was required to exit the vehicle;

(viii)    whether a pat-down/frisk was conducted;

(ix)    action taken, to include check boxes for warning, citation, arrest, completion of a field interview card, with appropriate identification number for the citation or arrest report; and

(x)    whether the driver was asked to submit to a consensual search of person, vehicle, or belongings, and whether permission was granted or denied.

b.     Information described in (iv), (v), (viii), (ix) and (x) of the preceding subparagraph shall be collected for each passenger required to exit the vehicle.

c.     If a warrantless search is conducted, the report shall include check boxes for the following:

(i)     search authority, to include: (1) consent; (2) incident to an arrest; (3) parole/probation; (4) visible contraband; (5) odor of contraband; (6) incident to a pat-down/frisk; (7) impound inventory; and (8) other (with a brief text field);

(ii)     what was searched, to include: (1) vehicle; (2) person; and (3) container; and

(iii)     what was discovered/seized, to include: (1) weapons; (2) drugs; (3) alcohol; (4) money; (5) other contraband; (6) other evidence of a crime; and (7) nothing.

105.     By November 1, 2001, the Department shall require LAPD officers to complete a written or electronic report each time an officer conducts a pedestrian stop.

a.     The report shall include the following:

(I)     the officer's serial number;

(ii)     date and approximate time of the stop;

-44-

1    (iii)   reporting district where the stop occurred;

2

3    (iv)   person's apparent race, ethnicity, or national origin;

4

5    (v)   person's gender and apparent age;

6

7    (vi)   reason for the stop, to include check boxes for: (1) suspected

8          violation of the Penal Code; (2) suspected violation of the Health

9          and Safety Code; (3) suspected violation of the Municipal Code; (4)

10         suspected violation of the Vehicle Code; (5) Departmental briefing

11         (including crime broadcast/crime bulletin/roll call briefing); (6)

12         suspect flight; (7) consensual (which need only be checked if there

13         is a citation, arrest, completion of a field interview card, search or

14         seizure (other than searches or seizures incident to arrest) or pat-

15         down/frisk); (8) call for service; or (9) other (with brief text field);

16

17   (vii)   whether a pat-down/frisk was conducted;

18

19   (viii)   action taken, to include check boxes for (1) warning; (2) citation;

20         (3) arrest; and (4) completion of a field interview card, with

21         appropriate identification number for the citation or arrest report;

22         and

23

24   (ix)   whether the person was asked to submit to a consensual search of

25         their person or belongings, and whether permission was granted or

26         denied.

27                                   -45-

28

b.    If a warrantless search is conducted, the report shall include check boxes for the following:

(I)    search authority, to include: (1) consent; (2) incident to an arrest; (3) parole/probation; (4) visible contraband; (5) odor of contraband; (6) incident to a pat-down/frisk; and (7) other (with a brief text field);

(ii)    what was searched, to include: (1) vehicle; (2) person; and (3) container; and

(iii)    what was discovered/seized, to include: (1) weapons; (2) drugs; (3) alcohol; (4) money; (5) other contraband; (6) other evidence of a crime; and (7) nothing.

c.    In preparing the form of the reports required by paragraphs 104 and 105, the Department may use "check off" type boxes to facilitate completion of such reports.  In documenting motor vehicle and pedestrian stops as required by these paragraphs, the Department may create new forms or modify existing forms.

## IV. MANAGEMENT OF GANG UNITS

106.    The LAPD has developed and shall continue to implement a protocol that includes the following requirements for managing and supervising all LAPD units that are primarily responsible for monitoring or reducing gang activity, including the Special Enforcement Units:

a.    Each unit shall be assigned to an Area or Bureau, and shall be managed and controlled by the Area or Bureau command staff where it is assigned. The Bureau gang coordinators and the citywide gang coordinator (the Detective Support Division Commanding Officer) coordinate the Bureau-wide and citywide activities of these units, provide training and technical assistance, and are involved in coordinating and providing information for the audits of these units.

b.    Eligibility criteria for selection of a non-supervisory officer in these units shall include that officers have completed probation, have acquired a minimum number of years as a police officer in the LAPD, and have demonstrated proficiency in a variety of law enforcement activities, interpersonal and administrative skills, cultural and community sensitivity, and a commitment to police integrity. Without the prior written approval of the Chief of Police, a non-supervisory officer shall not be reassigned to a unit until 13 LAPD Deployment Periods have elapsed since their previous assignment in these units.

c.    Eligibility criteria for selection as a supervisor in these units shall include that supervisors have one year experience as a patrol supervisor, have been wheeled from their probationary Area of assignment, and have demonstrated outstanding leadership, supervisory, and administrative skills. In addition, without

-47-

the prior written approval of the Chief of Police, an individual shall not be selected as a supervisor in these units until 13 LAPD Deployment Periods have elapsed since the individual's previous assignment in these units as an officer or supervisor.

d.      Supervisors and non-supervisory officers in these units shall have a limited tour assignment to these units, for a period not to exceed 39 LAPD Deployment Periods.  An extension of such assignment for up to three LAPD Deployment Periods may be granted upon the written approval of the Bureau commanding officer.  Any longer extension shall be permitted upon written approval of the Chief of Police.

e.      Unit supervisors and non-supervisory officers shall continue to: (i) be subject to existing procedures for uniformed patrol officers regarding detention, transportation, arrest, processing and booking of arrestees and other persons; (ii) wear Class A or Class C uniforms (and may not wear clothing with unauthorized insignias identifying them as working at a particular unit); (iii) use marked police vehicles for all activities; (iv) check out and return all field equipment from the Area kit room on a daily basis; (v) attend scheduled patrol roll calls; (vi) base all unit activities out of the concerned Area station; and (vii) not use off-site locations at night other than LAPD primary area stations for holding arrestees (including interviews) or interviewing witnesses; provided, however, that the foregoing does not apply to interviews at the scene of a crime, interviews in connection with a canvass of a scene, or when the witness requests to be interviewed at a different location.  Any exceptions from these requirements shall require the approval of the appropriate managers, and shall be for a specified, limited period of time.

-48-

Exceptions to the requirements set forth in subparagraphs (ii) and (iii) shall be in writing.

f.      A unit supervisor shall provide a daily field presence and maintain an active role in unit operations.  Unit supervisors shall brief the Area watch commander regularly regarding the activities of their unit, and shall coordinate unit activities with other Area supervisors.

g.      Area managers shall be responsible for ensuring that supervisors exercise proper control over these units, and for providing oversight over planned tactical operations.

h.      Each Bureau gang coordinator shall be responsible for monitoring and assessing the operation of all units in the Bureau that address gang activity.  The coordinator shall personally inspect and audit at least one Area unit each month, and shall submit copies of completed audits to the pertinent Bureau and Area, OHB Detective Support Division Command office, and the LAPD Audit Unit created in paragraph 124 below.  The coordinator may use bureau staff to conduct such audits who themselves serve in a Bureau or Area gang-activity unit and are deployed in the field to monitor or reduce gang activity.

The provisions of this paragraph do not apply to the Detective Support Division's gang unit whose primary, gang-related responsibility is to provide administrative support.

107.    In addition to the requirements set forth in the preceding paragraph, the LAPD shall implement the following requirements, which shall be applicable to all LAPD units that are

-49-

covered by the preceding paragraph.

     a.     The eligibility criteria for selection of an officer in these units shall require a positive evaluation of the officer based upon the officer's relevant and appropriate TEAMS II record.  Supervisors shall be required to document in writing their consideration of any sustained Complaint Form 1.28 investigation, adverse judicial finding, or discipline for use of excessive force, a false arrest or charge, an improper search and seizure, sexual harassment, discrimination, or dishonesty in determining whether an officer shall be selected for the unit.

     b.     The procedures for the selection of supervisors and non-supervisory officers in these units shall include a formal, written application process, oral interview(s), and the use of TEAMS II and annual performance evaluations to assist in evaluating the application.

     c.     Without limiting any other personnel authority available to the Department, during a supervisor's or non-supervisory officer's assignment tour in these units, a sustained complaint or adverse judicial finding for use of excessive force, a false arrest or charge, an unreasonable search or seizure, sexual harassment, discrimination, or dishonesty, shall result in the officer's supervisor reviewing the incident and making a written determination as to whether the subject officer should remain in the unit.

1  **V.   CONFIDENTIAL INFORMANTS**

2

3     108.   The LAPD has developed and shall continue to implement procedures for the

4  handling of informants.  The procedures include and LAPD shall continue to require the

5  following:

6

7          a.     The use of informants by LAPD personnel is limited to those non-

8                 uniformed personnel assigned to investigative units, such as, Area Detectives,

9                 Narcotics Division, and Specialized Detective Divisions.  Personnel in uniform

10                assignments shall not maintain or use informants.

11

12         b.     An officer desiring to utilize an individual as an informant shall identify

13                that person by completing an informant control package.

14

15         c.     The officer shall submit that package to his or her chain-of-command

16                supervisor for review and approval by the appropriate manager prior to utilizing

17                that individual as an informant, which review shall be for completeness and

18                compliance with LAPD procedures.

19

20         d.     Each informant shall be assigned a Confidential Informant ("CI") number.

21

22         e.     The commanding officer shall be responsible for ensuring that informant

23                control packages are stored in a secure location that provides for restricted access

24                and sign-out approval by the officer in charge or watch commander.  There shall be

25                a written record including each accessing officer's name and date of access in the

26                informant control package.

27                                          -51-

28

f.      Informant control packages shall not be retained beyond end of watch without approval of the officer in charge or watch commander.

g.      Whenever information is supplied by an informant whom the investigating officer has not used as a source within the past three months, the officer shall check the Department-wide undesirable informant file and update the individual's informant control package prior to acting on such information.

h.      Investigating officers shall be required to confer with a supervisor prior to meeting with an informant; document all meetings, significant contacts, and information received from an informant in the informant control package; inform their supervisor of any contact with an informant; and admonish the informant that he or she shall not violate any laws in the gathering of information.

i.      Supervisors shall be required to meet with each confidential informant at least once prior to the information control package being submitted to the commanding officer. The quality of supervisors' oversight with respect to adherence to LAPD guidelines and procedures regarding informant use by officers under his or her command and such supervisors' own adherence thereto, shall be factors in such supervisor's annual personnel performance evaluation.

j.      Whenever an officer takes action based on information supplied by an informant, the officer shall document the information supplied, and the results of the investigation, in the individual's informant control package.

109.   The LAPD shall establish a permanent Department-wide confidential database or

-52-

listing of all LAPD confidential informants except those listed by the Anti-Terrorist Division and those used in conjunction with another agency, containing the following information: Confidential Informant number, name, aliases, and date of birth.

110.   Within six months of the effective date of this Agreement, the LAPD shall publish a confidential informant manual which further expands and defines the procedures for identifying and utilizing informants, and which will include all of the requirements set out in paragraphs 108 and 109.

## VI. DEVELOPMENT OF PROGRAM FOR RESPONDING TO PERSONS WITH MENTAL ILLNESS

111. Within one year of the effective date of this Agreement, the Department shall: (a) conduct an in-depth evaluation of successful programs in other law enforcement agencies across the United States dealing with police contacts with persons who may be mentally ill; and (b) conduct an in-depth evaluation of LAPD training, policies, and procedures for dealing with persons who may be mentally ill, including detailed reviews of at least ten incidents since January 1, 1999 in which a person who appeared to be mentally ill was the subject of a Categorical Use of Force and at least 15 incidents since January 1, 1999 in which the LAPD mental health evaluation unit was contacted.

112. Within 13 months of the effective date of this Agreement, the LAPD, based upon its analysis required by the preceding paragraph, shall prepare a report for the Police Commission detailing the results of its analysis and recommending appropriate changes in policies, procedures, and training methods regarding police contact with the persons who may be mentally ill with the goal of de-escalating the potential for violent encounters with mentally ill persons. The recommendation shall include a proposal on potential methods for tracking calls and incidents dealing with persons who may appear to be mentally ill. The Police Commission shall forward its reports and actions regarding any appropriate new or modifications to existing policies, practices, or training methods regarding police contact with persons who may be mentally ill to the City Council and Mayor.

113. Within one year of the date of receipt by the Police Commission of the report required in the preceding paragraph, but in no case more than 32 months after the effective date of this Agreement, the Department shall complete an audit to evaluate LAPD handling of calls and

-54-

incidents over the previous one year period involving persons who appear to be mentally ill. The audit and evaluation shall include any new policies, procedures and training methods implemented pursuant to the preceding paragraph and shall specify any additional modifications necessary in the Department's policies, procedures or training to meet the objectives specified in the preceding paragraph.

## VII.   TRAINING

A.   *FTO Program*

114.   The Department shall continue to implement formal eligibility criteria for Field Training Officers ("FTO").  The criteria require, *inter alia*, demonstrated analytical skills, demonstrated interpersonal and communication skills, cultural and community sensitivity, diversity, and commitment to police integrity.  The criteria shall be expanded to require a positive evaluation of the officer based upon the officer's TEAMS II record.  Managers shall comply with paragraphs 47(g) or 51, as appropriate, in selecting officers to serve as FTOs.

115.   Without limiting any other personnel authority available to the Department, FTOs may be removed during their tenure for acts or behaviors that would disqualify the officer from selection as an FTO.

116.   The LAPD shall continue to implement a plan to ensure that FTOs receive adequate training, including training to be an instructor and training in LAPD policies and procedures, to enable them to carry out their duties.  FTOs' annual personnel performance evaluations shall include their competency in successfully completing and implementing their FTO training.  The LAPD shall provide regular and periodic re-training on these topics.

B.   *Training Content*

117.   The LAPD shall continue to provide all LAPD recruits, officers, supervisors and managers with regular and periodic training on police integrity.  Such training shall include and address, *inter alia*:

a.      the duty to report misconduct and facts relevant to such misconduct;

b.      what constitutes retaliation for reporting misconduct, the prohibition against retaliation for reporting misconduct, and the protections available to officers from retaliation;

c.      cultural diversity, which shall include training on interactions with persons of different races, ethnicities, religious groups, sexual orientations, persons of the opposite sex, and persons with disabilities, and also community policing;

d.      the role of accurately completing written reports in assuring police integrity, and the proper completion of such reports;

e.      Fourth Amendment and other constitutional requirements, and the policy requirements set forth in paragraphs 102-103, governing police actions in conducting stops, searches, seizures, making arrests and using force; and

f.      examples of ethical dilemmas faced by LAPD officers and, where practicable given the location, type, and duration of the training, interactive exercises for resolving ethical dilemmas shall be utilized.

118.   The Department shall train all members of the public scheduled to serve on the Board of Rights in police practices and procedures.

119.   The City may establish a plan to annually provide tuition reimbursement for continuing education for a reasonable number of officers in subjects relevant to this Agreement,

-57-

1  including subjects which will promote police integrity and professionalism.  Such educational

2  programs shall be attended while officers are off-duty.

3

4       120.    The LAPD shall establish procedures for supervisors and officers of the LAPD to

5  communicate to the LAPD Training Group any suggestions they may have for improving the

6  standardized training provided to LAPD officers, and to make written referrals to the appropriate

7  LAPD official regarding suggestions about LAPD policies or tactics.

8

9  C.    *Supervisory Training*

10

11       121.    The LAPD shall provide all officers promoted to supervisory positions, up to and

12  including the rank of Captain, with training to perform the duties and responsibilities of such

13  positions.  Such LAPD officers and supervisors shall be provided with such training before they

14  assume their new supervisory positions, except for those officers promoted to the rank of Captain,

15  who shall have at least commenced their Command Development training before they assume

16  their new positions.

17

18       122.    The LAPD shall provide regular and periodic supervisory training on reviewing the

19  reports addressed in this Agreement, incident control, and ethical decision making.

20

21       123.    The LAPD shall ensure that any supervisor who performs, or is expected to

22  perform, administrative investigations, including chain of command investigations of uses of

23  force and complaints, receives training on conducting such investigations.

24

25

26

27

28

## VIII.  INTEGRITY AUDITS

A.    _Audit Plan_

124.    By June 1, 2001, and prior to the beginning of each fiscal year thereafter, the Chief of Police shall submit to the Police Commission, with a copy to the Inspector General, a listing of all scheduled audits of the LAPD to be conducted by the LAPD in the upcoming fiscal year, other than sting audits (the "Annual Audit Plan").  The Annual Audit Plan shall include all specified audits required to be conducted by the LAPD, and any other audits required by this Agreement, including the audits required by paragraphs 111, 113, 133 and 134.  The Police Commission shall review this Annual Audit Plan, and following consultation with the Chief of Police, shall make appropriate modifications, and approve it.  The Chief of Police shall report to the Commission quarterly, with a copy to the Inspector General, on the status of audits listed in the Annual Audit Plan, including any significant results of such audits conducted by the LAPD ("Quarterly Audit Report").  The Department shall create and continue to have an audit unit within the office of the Chief of Police (the "Audit Unit") with centralized responsibility for developing the Annual Audit Plan, coordinating and scheduling audits contemplated by the Annual Audit Plan and ensuring timely completion of audits, and conducting audits as directed by the Chief of Police.  The Audit Unit shall be established effective July 1, 2001, in connection with the adoption of the City's 2001-2002 Budget, with positions to be filled as quickly as reasonably possible in accordance with applicable civil service provisions.  Audits contemplated by the Annual Audit Plan may be conducted by the Audit Unit or by other LAPD units, as appropriate, provided, however, that the Audit Unit shall take over responsibility for conducting those audits contemplated by paragraphs 128 and 129 once that Unit is established.  The Audit Unit shall serve as a resource to other LAPD units in the conduct of audits and shall also periodically assess the quality of audits performed by other LAPD units.  In the event the LAPD desires to amend the

1     Annual Audit Plan, it may do so in the Quarterly Audit Report; provided, however, that the

2     Annual Audit Plan shall include the specified audits to be conducted by the LAPD. Each audit

3     conducted by the Department shall be documented in a report that provides the audit's

4     methodology, data sources, analysis of the data and conclusions.

6          125.    Prior to July 1, 2001, the LAPD shall conduct the following audits:

8          a.       a stratified random sample of warrant applications and affidavits used to

9                  support warrant applications, consistent with paragraph 128;

11          b.       a stratified random sample of arrest, booking, and charging reports,

12                  consistent with paragraph 128;

14          c.       a stratified random sample of confidential informant control packages,

15                  consistent with paragraph 128; and

17          d.       the work product of all LAPD units covered by paragraph 106 consistent

18                  with paragraph 131.

20          126.    By November 1, 2001, the LAPD shall conduct an audit of a stratified random

21     sample of all use of force reports consistent with paragraph 128.

-60-

B.    *Audits by the LAPD*

127.    Sting audits shall not be reported in the Quarterly Audit Report, rather the results of all sting audits shall be reported to the Police Commission and the Inspector General by the Chief of Police within two weeks of the Chief's receipt of each sting audit report.

128.    LAPD shall conduct regular, periodic audits of stratified random samples of 1) warrant applications and affidavits used to support warrant applications; 2) arrest, booking, and charging reports; 3) use of force reports; 4) all motor vehicle stops and pedestrian stops that are required to be documented in the manner specified in paragraphs 104 and 105; and 5) confidential informant control packages.  The review of these documents shall entail, at a minimum, a review for completeness of the information contained and an authenticity review to include an examination for "canned" language, inconsistent information, lack of articulation of the legal basis for the applicable action or other indicia that the information in the document is not authentic or correct.  The review shall also assess the information in the documents to determine whether the underlying action was appropriate, legal, and in conformance with LAPD procedures.  To the extent possible from a review of such samples, the audit shall also evaluate the supervisory oversight of the applicable incident and any post-incident review.

129.    The LAPD shall conduct regular, periodic audits of random samples of: (i) all Categorical Use of Force investigations; (ii) all Non-Categorical Use of Force investigations; and (iii) all Complaint Form 1.28 investigations.  These audits shall assess:

      a.    the timeliness of completing the investigations, and satisfying the requirements of paragraphs 67, 69 and 87 where applicable;

b.     the completeness of the investigation file, including whether the file contains all appropriate evidence and documentation, or, if evidence is missing, an explanation of why the evidence is missing;

c.     a comparison of the officer, complainant, and witness statements with the investigator's summaries thereof, where applicable;

d.     the adequacy of the investigation, including the application of the standards set forth in paragraphs 80-86; and

e.     the appropriateness of IAG's determinations under paragraph 79.

130.    The LAPD shall annually report to the Commission, with a copy to the Inspector General, the type of complaint allegations it receives and the disposition (including sustained rate) and discipline or lack of discipline resulting from each type of allegation.  This report shall include both the allegations received and any collateral misconduct discovered during the investigation.  This report shall list the above information for each type of allegation as well as summarize aggregate information by geographic division (department, bureau, area, and district), officer rank, and type of assignment.

131.    The LAPD shall conduct regular periodic audits of the work product of all LAPD units covered by paragraph 106.  These audits shall be conducted by OHB Detective Support Division.  Each such audit shall include:

a.     auditing a random sample of the work of the unit as a whole and further auditing the work of any individual officers whose work product the auditor has

-62-

observed contains indicia of untruthfulness, other forms of misconduct, or otherwise merits further review;

    b.    assessing compliance with the selection criteria set forth in paragraphs 106 and 107;

    c.    an audit of the type set forth in paragraph 128;

    d.    auditing the use of confidential informants by such units to assess compliance with paragraph 108;

    e.    auditing the roles and conduct of supervisors of these units;

    f.    reviewing the incidents requiring supervisory review pursuant to paragraphs 62, 64, 68, 70 and 71, assessing the supervisor's response, and examining the relationships of particular officers working together or under particular supervisors in such incidents to determine whether additional investigation is needed to identify at-risk practices; and

    g.    the audit shall draw conclusions regarding the adherence of the unit to the law, LAPD policies and procedures, and this Agreement, and shall recommend a course of action to correct any deficiencies found.

132.    The LAPD shall require regular and periodic financial disclosures by all LAPD officers and other LAPD employees who routinely handle valuable contraband or cash.  The LAPD shall periodically audit a random sample of such disclosures to ensure their accuracy.

1   When necessary, the LAPD shall require the necessary waivers from such officers.

2

3       133.    Within 18 months of the effective date of this Agreement, the Department shall

4   audit police officer and supervisory officer training, using independent consultants who have

5   substantial experience in the area of police training.  The audit shall assess: ways in which LAPD

6   training could be improved (i) to reduce incidents of excessive use of force, false arrests, and

7   illegal searches and seizures and (ii) by making greater use of community-oriented-policing

8   training models that take into account factors including paragraph 117(c).

9

10      134.    Eighteen months after the effective date of this Agreement, the Department shall

11  complete a review and audit of all uses of force resulting in skeletal fractures known to the LAPD.

12  The audit shall review and evaluate: 1) the frequency of occurrence of skeletal fractures, by

13  officers and groups of officers, and the types of force that produced the fractures; 2) medical care

14  provided to persons who sustain such a fracture where the medical care is provided while the

15  person is in the custody of the Department, or provided at another time and the Department knows

16  of the fracture; 3) the quality, thoroughness, disposition, and timeliness of the chain of command

17  investigation and review of uses of force resulting in fractures, pursuant to paragraph 68; and 4)

18  frequency and outcome of complaints where the complainant allegedly received such a fracture.

19  Such audit shall analyze the circumstances giving rise to the use of force and resulting fracture,

20  and the Department's response to such injuries.  The audit shall recommend potential reforms to

21  Department policies and procedures with the goal of minimizing and promptly treating such

22  fractures, including the feasibility and desirability of including uses of force resulting in fractures

23  within the definition of a Categorical Use of Force, as appropriate.

24

25

26

27                                      -64-

28

C.     *Inspector General Audits*

135.    The Inspector General shall be provided with copies of all reports of specified audits prepared by the LAPD and audits prepared in compliance with paragraphs 111, 113, 125, 126, 133 and 134 within one week of the completion thereof, and with copies of all sting audits as required by paragraph 127. The Inspector General shall evaluate all such audits to assess their quality, completeness and findings. Upon request from the Inspector General, the LAPD shall forward any other LAPD audit report requested to the Inspector General within one week of such request, and the Inspector General, at his or her discretion where he or she deems appropriate, or upon direction from the Commission, may evaluate these audits. The Inspector General shall deliver its evaluations in writing to the Police Commission.

136.    The Inspector General shall continue to review all Categorical Use of Force investigations. The Inspector General also shall conduct a regular, periodic audit and review of a stratified random sample of: (i) all Non-Categorical Uses of Force; and (ii) Complaint Form 1.28 investigations. Both of these types of reviews shall assess the quality, completeness, and findings of the investigations and shall include determinations of whether the investigations were completed in a timely manner, summarized and transcribed statements accurately match the recorded statements, all available evidence was collected and analyzed, and the investigation was properly adjudicated. The Inspector General shall promptly report its findings from these reviews in writing to the Police Commission.

137.    The Inspector General, between 6-12 months following implementation of TEAMS II and on a regular basis thereafter, shall audit the quality and timeliness of the LAPD's use of TEAMS II to perform the tasks identified in the protocol described in paragraph 47 above.

138.    The Inspector General shall periodically use TEAMS II to conduct audits of the LAPD and to review LAPD unit specific and officer specific audits conducted by the LAPD. Such audits and reviews shall include procedures that:

a.    examine and identify officers demonstrating at-risk behavior as determined by their history of (i) administrative investigations, (ii) misconduct complaints, (iii) discipline, (iv) uses of lethal and non-lethal force, (v) criminal or civil charges or lawsuits, (vi) searches and seizures, (vii) racial bias, (viii) improper arrests or (ix) any other matter requested by the Police Commission or, subject to Charter section 573, any other improper conduct or at-risk behavior the Inspector General has reason to believe exists;

b.    examine and identify at-risk practices or procedures as determined by trends within a unit or between and among units using, at a minimum, the criteria in subsection (a) above.

139.    The Inspector General may receive complaints from LAPD employees alleging retaliation for reporting possible misconduct or at-risk behavior.  The Inspector General shall record and track the allegations in such complaints.  If the Inspector General determines that such complaints indicate possible retaliation in the Police Department's handling of complaints, the Inspector General shall conduct an investigation and forward its findings to the Police Commission.  The Police Commission shall work with the Inspector General to develop and implement retaliation complaint investigation protocols that will protect, to the maximum extent permitted by law, the confidentiality of the identity of the person reporting retaliation to the Inspector General.

1    140.    The Police Commission may identify subjects for audits and direct either the

2   LAPD or the Inspector General to conduct such audits.  The LAPD and Inspector General shall

3   conduct such audits as directed by the Commission and shall report the audit results to the

4   Commission within the time frames established by the Commission.  Subject to Charter Section

5   573, the Inspector General shall continue to have the authority to initiate other audits.

-67-

## IX.   OPERATIONS OF THE POLICE COMMISSION & INSPECTOR GENERAL

A.   _Police Commission_

141.    This Agreement sets forth obligations of the Commission, Inspector General and Chief of Police; however, it in no way constrains them from exercising their powers and satisfying their duties set forth in the Charter and other applicable law.

142.    The Commission and Inspector General shall continue to review and evaluate all Categorical Uses of Force.  The Commission shall determine whether the officer's conduct conforms with LAPD policies, procedures, and the requirements of this Agreement, and so inform the Chief of Police.  The Commission shall annually issue a publicly available report detailing its findings regarding these incidents.

143.    The Commission shall review the specified audit reports, the sting audit reports, and the audits required by paragraphs 111, 113, 125, 126, 133, and 134 to determine whether any changes or modifications in LAPD policies are necessary.  In addition, the Police Commission shall consider the results of such audits in its annual evaluation of the Chief of Police.  The Police Commission shall exercise its authority to review and approve all new LAPD policies and procedures or changes to existing LAPD policies and procedures that are made to address the requirements of this Agreement. Review and approval of procedures, or changes to existing procedures that are made to address the requirements of this Agreement, by the Chief of Police (or his or her designee) affecting only procedure (and not policy) may be obtained on a ratification basis by placement of such item on the Commission agenda within 14 days of the date of the action by the Chief or designee, and the Commission must approve, disapprove, or require modification of such item within 14 days of receipt.  All new policies, or changes to existing

-68-

1   policies, must be reviewed and approved by the Commission prior to implementation.

2

3       144.    Under the Charter, the Commission is required to conduct an annual review of the

4   Chief of Police. Such a review is intended to be an overall assessment of the Police Chief's

5   performance as the chief administrative officer of the LAPD, including as it relates to satisfaction

6   of universal performance goals applicable to chief administrative officers, budgeting goals and

7   other goals determined by the Commission. In conducting such review, the Commission shall

8   also consider the Police Chief's responses to use of force incidents and complaints of officer

9   misconduct, assessment and imposition of discipline and those matters described in paragraphs

10  67, 88, 89, 106, 124, 127, and 143.

11

12      145.    The Commission shall investigate all misconduct complaints against the Chief of

13  Police and may use its staff, the Inspector General, or authorized contractors to conduct such

14  investigations.

15

16      146.    The Commission shall continue to review and approve the LAPD's budget

17  requests.

18

19  B.    *Inspector General*

20

21      147.    The Inspector General shall be notified in a timely manner of all Categorical Uses

22  of Force and be entitled to be present, at his or her discretion, as an observer on all Categorical

23  Use of Force "roll outs". The Inspector General shall report to the Commission in the event that

24  the Inspector General's observations at the scene of an incident raise issues regarding

25  conformance with LAPD policies, procedures, and the requirements of this Agreement.

26

27                                              -69-

28

148.   The Inspector General may attend any Use of Force Review Board meeting. The Inspector General may interview any participant in such hearing after the conclusion of the hearing.

149.   The LAPD shall promptly provide the Inspector General with any documents or other information requested by the Inspector General related to the Inspector General's responsibilities under this Agreement. The Inspector General shall develop and provide the LAPD with a list of reports, complete with time-frames and frequency of their production, that the LAPD shall provide to the Inspector General on a specified schedule in order for the Inspector General to fulfill his or her responsibilities under this Agreement, which list may be updated from time to time by the Inspector General.

150.   The Inspector General shall accept complaints from LAPD officers regarding matters which the Inspector General has authority to investigate, and the Inspector General shall not disclose the identity of an individual without the consent of the employee from whom a complaint or information has been received, unless such disclosure is unavoidable in order to effectively investigate an allegation or is otherwise required by law or the Los Angeles Office of the City Attorney; provided, however, that the Inspector General shall disclose the identity of such individual to the Police Commission, upon request.

151.   Paragraphs 139 and 150 do not relieve officers of their obligations described in paragraphs 65, 77, 78 and 82.

152.   The LAPD shall continue to provide the Inspector General with all complaint intake information, including the assignment for investigation, within one week after its receipt by IAG. The Inspector General shall review such information to ensure that complaints are being

-70-

received in a manner that complies with LAPD policies and procedures, and the terms of this Agreement.

153.    The Inspector General shall keep the Commission informed of the status of all pending investigations and audits to be performed by the Inspector General hereunder.

C.    *General*

154.    Reviews, audits and reports required hereunder to be made by the Commission, the Inspector General or the Department may contain recommendations to correct deficiencies.  The identification of deficiencies in such reviews, audits or reports shall not be a breach of this Agreement, rather the City, including the Department, shall take appropriate, timely and reasonable steps to remedy such deficiencies.

-71-

## X.    COMMUNITY OUTREACH AND PUBLIC INFORMATION

155.    For the term of this Agreement, the Department shall conduct a Community Outreach and Public Information program for each LAPD geographic area. The program shall require the following:

a.    at least one open meeting per quarter in each of the 18 geographic Areas for the first year of the Agreement, and one meeting in each Area annually thereafter, to inform the public about the provisions of this Agreement, and the various methods of filing a complaint against an officer.  At least one week before such meetings the City shall publish notice of the meeting (i) in public areas; (ii) in at least one newspaper covering the City of Los Angeles; (iii) in one or more local community newspaper(s) that services the Area, taking into account the diversity in language and ethnicity of the area's residents; (iv) on the City and LAPD website; and (v) in the primary languages spoken by the communities located in such area.

b.    the open public meetings described above shall include presentations and information on the LAPD and LAPD operations, which presentations and information are designed to enhance interaction between officers and community members in daily policing activities.

156.    The LAPD shall prepare and publish on its website semiannual public reports required by this paragraph.  Such reports shall include aggregate statistics broken down by each LAPD geographic area and for the Operations Headquarters Bureau, and broken down by the race/ethnicity/national origin of the citizens involved, for arrests, information required to be

-72-

1  maintained pursuant to paragraphs 104 and 105, and uses of force.  Such reports shall include a

2  brief description of each of the following that was completed during that period:  (i) report of a

3  specified audit completed, audits completed pursuant to paragraphs 111, 113, 125, 126, 130, 133

4  and 134, and any significant actions taken as a result of such audits or reports, (ii) a summary of

5  all discipline imposed during the period reported by type of misconduct, broken down by type of

6  discipline, bureau and rank, and (iii) any new policies or changes in policies made by the

7  Department to address the requirements of this Agreement.  Such reports shall also include the

8  reports prepared pursuant to paragraphs 173 and 175.

9

10       157.    The LAPD shall continue to utilize community advisory groups in each geographic

11  Area and to meet quarterly with the community they serve.  The Department shall establish a

12  media advisory working group to facilitate information dissemination to the predominant

13  ethnicities and cultures in Los Angeles.

## XI. INDEPENDENT MONITOR

158. By March 1, 2001, the City and the DOJ shall together select an Independent Monitor, acceptable to both, who shall monitor and report on the City's implementation of this Agreement. The selection of the Monitor shall be pursuant to a method jointly established by the DOJ and the City. If the DOJ and City are unable to agree on a Monitor or an alternative method of selection, the DOJ and the City each shall submit two names of persons to the Court who shall have the following attributes: (i) a reputation for integrity, evenhandedness, and independence; (ii) experience as a law enforcement officer, expertise in law enforcement practices, or experience as a law enforcement practices monitor; (iii) an absence of bias, including any appearance of bias, for or against the DOJ, the City, the Department, or their officers or employees; and (iv) no personal involvement, in the last eight years, whether paid or unpaid, with a claim or lawsuit against the City or the Department or any of their officers, agents or employees, unless waived by the parties. The DOJ and the City shall also submit to the Court the resumes, cost proposals, and other relevant information for such persons demonstrating the above qualifications, and the Court shall appoint the Monitor from among the names of qualified persons so submitted; provided, however, that if the Court so selects the Monitor, then the maximum sum to be paid the Monitor, including any additional persons he or she may associate pursuant to paragraph 159 (excluding reasonable costs or fees associated with non-compliance or breach of the Agreement by the City or the Department), shall not exceed $10 million, plus out-of-pocket costs for travel and incidentals, for the first five years after the effective date of this Agreement.

159. The Monitor, at any time, may associate such additional persons or entities as are reasonably necessary to perform the monitoring tasks specified by this Agreement. Any additional persons or entities associated by the Monitor shall possess the following attributes: a reputation for integrity, evenhandedness, and independence; an absence of bias, including any

-74-

1   appearance of bias, for or against the DOJ, the City, the Department, or their officers or

2   employees; and no personal involvement in the last five years, whether paid or unpaid, with a

3   claim or lawsuit against the City or the Department or any of their officers, agents or employees

4   unless waived by the parties, which waiver shall not be unreasonably withheld. The Monitor shall

5   notify in writing the DOJ and the City if and when such additional persons or entities are selected

6   for association by the Monitor. The notice shall identify the person or entity to be associated and

7   the monitoring task to be performed, and, if a waiver is being requested, the notice shall indicate

8   if the person had any such involvement in the last five years, whether paid or unpaid, with a claim

9   or lawsuit against the City or the Department or any of their officers, agents, or employees. Either

10   the DOJ or the City may notify in writing the Monitor within 10 days (excluding weekends, and

11   federal or state holidays) of any objection either may have to the selection. If the parties and the

12   Monitor are unable to resolve any such objection, and the Monitor believes that the specific

13   person or entity in question is needed to assist the Monitor and such person or entity satisfies the

14   qualifications and requirements in this paragraph, the Monitor may seek Court authorization to

15   hire such person. For purposes of all paragraphs of this Agreement other than the preceding

16   paragraph, the term Monitor shall include any and all persons or entities that the Monitor

17   associates to perform monitoring tasks and such persons shall be subject to the same provisions

18   applicable to the Monitor under this Agreement.

19

20       160.    The City shall bear all reasonable fees and costs of the Monitor. The Court retains

21   the authority to resolve any dispute that may arise regarding the reasonableness of fees and costs

22   charged by the Monitor. In selecting the Monitor, DOJ and the City recognize the importance of

23   ensuring that the fees and costs borne by the City are reasonable, and accordingly fees and costs

24   shall be one factor considered in selecting the Monitor. In the event that any dispute arises

25   regarding the payment of the Monitor's fees and costs, the City, DOJ and the Monitor shall

26   attempt to resolve such dispute cooperatively prior to seeking the Court's assistance.

27

28

-75-

161.   The Monitor shall be an agent of the Court and shall be subject to the supervision and orders of this Court, consistent with this Agreement. The Monitor shall only have the duties, responsibilities and authority conferred by this Agreement. The Monitor shall not, and is not intended to, replace or take over the role and duties of the Mayor, City Council, Commission, Chief of Police or the Inspector General. In order to monitor and report on the City's and the Department's implementation of each substantive provision of this Agreement, the Monitor shall conduct the reviews specified in paragraph 162 and such additional reviews as the Monitor deems appropriate. At the request of the DOJ or the City, based on the Monitor's reviews, the Monitor may make recommendations to the parties regarding measures necessary to ensure full and timely implementation of this Agreement.

162.   In order to monitor and report on the City and Department's implementation of this Agreement, the Monitor shall, subject to paragraph 163 and paragraphs 165 through 171:

a.   between six and twelve months following implementation of TEAMS II and at least annually thereafter, conduct a review of the use of TEAMS II by the LAPD, the Inspector General, and the Police Commission and its staff;

b.   regularly review and evaluate the quality and timeliness of the specified audits, sting audits, and audits conducted by LAPD or the Inspector General under paragraphs 125, 126, 133, 134 , and 140; and

c.   regularly review appropriate samples of (i) Categorical and Non-Categorical Use of Force investigations, adjudications and related disciplinary and non-disciplinary actions; and (ii) Complaint Form 1.28 investigations, adjudications and related disciplinary and non-disciplinary actions (focusing, in

-76-

1    particular, on those involving alleged uses of excessive force, false arrests or

2    improper stops, improper searches or seizures, discrimination or retaliation); and

3    motor vehicle and pedestrian stop data collected pursuant to paragraphs 104 and

4    105.

5

6    In performing its obligations under this Agreement, the Monitor shall, where appropriate, utilize

7    audits conducted by the City or Department for this purpose, and employ appropriate sampling

8    techniques.

9

10   163.   The Monitor may review completed portions of administrative investigations and

11   resulting internal proceedings while they are pending, provided, however, that in such instances

12   the Monitor may review only those parts of such investigations and proceedings that have been

13   completed (such as the completed use of force report, completed Use of Force Review Board

14   proceedings, or completed Board of Rights proceedings). If the Monitor determines that any

15   administrative use of force or Complaint Form 1.28 investigation, which has been adjudicated or

16   otherwise disposed or completed, is inadequate under this Agreement, the Monitor shall confer

17   with the Commission, Chief of Police and the Inspector General, and provide a confidential

18   written evaluation to the Department, the Inspector General, and the DOJ containing the

19   additional measures that should be taken with respect to future investigations in order to satisfy

20   this Agreement. Such evaluation shall be for the purpose of assisting the Commission, the Chief

21   of Police and the Inspector General in conducting future investigations, and shall not obligate the

22   Department to reopen or re-adjudicate any investigation.

23

24   164.   In monitoring the implementation of this Agreement, the Monitor shall maintain

25   regular contact with the City, the Commission, the Chief of Police, the Inspector General as well

26   as the DOJ.

27                                   -77-

28

1    165.    The Monitor shall have full and direct access to: (a) all Department employees,

2  including the Inspector General, and all Department facilities (except facilities used solely for

3  ATD activities) that the Monitor reasonably deems necessary to carry out the duties assigned to

4  the Monitor by this Agreement; however, access to ATD personnel shall be for the sole purpose

5  of monitoring administrative investigations, including of complaints, involving such personnel;

6  and (b) within a reasonable time following notice to the City, or the Department (solely in the

7  case of individual Police Commissioners) all other City officers, employees and facilities, and the

8  individual Police Commissioners.  The Monitor shall cooperate with the City and the Department

9  to access people and facilities in a reasonable manner that, consistent with the Monitor's

10  responsibilities, minimizes interference with daily operations.

11

12    166.    The Monitor shall have full and direct access to all City and Department

13  documents, including TEAMS II data and information, that the Monitor reasonably deems

14  necessary to carry out the duties assigned to the Monitor by this Agreement, except as access is

15  limited in paragraphs 167, 168, 169, 170 and 171 or as to any such documents protected by the

16  attorney-client privilege.  Should the City or the Department decline to provide the Monitor with

17  access to a document based on attorney-client privilege, the City shall provide the Monitor and

18  DOJ with a log describing the document.

19

20    167.    The Monitor shall provide the City or Department with reasonable notice of a

21  request for copies of documents.  Upon such request, the City and the Department shall provide

22  the Monitor with copies (electronic, where readily available, or hardcopy) of any documents that

23  the Monitor is entitled to access under this Agreement, including TEAMS II information and data,

24  except for Sensitive Data.  The term "Sensitive Data" shall include confidential informant files,

25  personnel files, and other documents or data specifically designated as "Sensitive Data" in this

26  Agreement.  The City shall cooperate with the Monitor to allow access to Sensitive Data for

27                                          -78-

28

1    review in a reasonable manner that is consistent with the Monitor's responsibilities and schedule.

2    The Monitor shall treat copies of TEAMS II information and data as "non-public information," as

3    defined in paragraph 168(a).

4

5        168.    All documents provided to the Monitor, whether by the City, Department, or DOJ,

6    shall be maintained in a confidential manner.  Sensitive Data, and "non-public information" as

7    defined in subpart (a) of this paragraph, whether obtained from the City, Department or DOJ, shall

8    not be disclosed by the Monitor to any person or entity, other than (i) to the DOJ, (ii) to the Court

9    either under Seal or consistent with paragraphs 169, 170 or 173 or (iii) as consistent with subpart

10   (a) of this paragraph.

11

12        a.    "Non-public information" means any information that is exempt from

13              public disclosure or inspection under the California Public Records Act and that

14              has not been released to a member of the public by the City or the Department or

15              any of their officers or employees, and for which the exemption has not otherwise

16              been waived by the City.   Non-public information may be used in statistical

17              analysis, unit analysis or other analysis that does not identify particular individuals

18              and such analysis may be disclosed to the public solely as provided in paragraphs

19              173 and 174.

20

21        b.    Other than as expressly provided in this Agreement, this Agreement shall

22              not be deemed a waiver of any privilege or right the City or the Department may

23              assert, including those recognized at common law or created by statute, rule or

24              regulation, against any other person or entity with respect to the disclosure of any

25              document.

26

27                                    -79-

28

169. The Monitor shall have access to any City employee medical or BSS records only under the following circumstances:

    a.    The Monitor shall have direct access to City employee medical or BSS records, if permission for such access is granted by the applicable employee or the information from such records is otherwise contained in investigative files.

    b.    For any other City employee medical or BSS records reasonably necessary to carry out the duties assigned to the Monitor by this Agreement, the Monitor shall notify in writing the DOJ and the City of the need for such documents, and the City shall so notify the affected employee. Either the DOJ, the City, or the affected employee may, and the City shall if requested by the affected employee, notify in writing the Monitor within ten days (excluding weekends, and federal or state holidays) of any objection they may have to such access. If the parties, the Monitor, and, where applicable, the affected employee are unable to resolve any such objection, and the Monitor continues to believe that the documents in question are reasonably necessary to assist the Monitor, the Monitor may seek Court authorization for access to such documents, subject to any appropriate protective orders. The City shall assert applicable defenses and privileges from disclosure and protections of such records for the City and the affected employee. Any documents obtained by this procedure shall be treated as "Sensitive Data."

170. The Monitor shall have direct access to all documents in criminal investigation files that have been closed by the LAPD. The Monitor shall also have direct access to all arrest reports, warrants, and warrant applications whether or not contained in open criminal investigation files; where practicable arrest reports, warrants and warrant applications shall be

1   obtained from sources other than open criminal investigation files.

2

3            a.     The Monitor shall have access as Sensitive Data to documents prepared for

4            and contained solely in open criminal investigations of LAPD employees

5            reasonably necessary to monitor compliance with paragraph 67 (other than arrest

6            reports, warrants and warrant applications, which shall be subject to the general

7            access provisions).  Except as provided in subpart (b) of this paragraph, the

8            Monitor shall not have access to any other documents in criminal investigations

9            files that have been open for less than ten months.

10

11           b.     If the Monitor reasonably deems that access to documents contained solely

12          in either (i) open criminal investigation files, which investigations have been open

13          for more than ten months, or (ii) open criminal investigation files of LAPD

14          employees, which investigations have been open for less than ten months,  is

15          necessary to carry out the duties assigned to the Monitor by this Agreement, the

16          Monitor shall notify in writing the DOJ and the City of the need for such

17          documents.   After notification by the Monitor, either the DOJ or the City may

18          respond in writing to the Monitor within ten days (excluding weekends, and

19          federal or state holidays) if either have any objection to such access.  If the parties

20          and the Monitor are unable to resolve any such objection, and the Monitor

21          continues to believe that the documents in question are reasonably necessary  to

22          assist the Monitor, the Monitor may seek Court authorization for access to such

23          documents, subject to any appropriate protective orders.  Any documents obtained

24          by this procedure shall be treated as "Sensitive Data."

25

26   171.    The access provisions of the previous paragraphs do not apply to documents

27                                   -81-

28

1 contained solely in Anti-Terrorist Division ("ATD") files, or solely in intelligence files or

2 investigative notes files or similar files of joint task forces with other law enforcement agencies.

3

4      172.    The Department shall provide the Monitor with (i) copies of all reports of specified

5 audits, sting audits, audits or reports pursuant to paragraphs 88, 89 (including Police Commission

6 documentation), 111, 113, 125, 126, 133, 134 and the Quarterly Audit Reports required by

7 paragraph 124, within ten days after receipt by the Commission, and (ii) copies of the Annual

8 Audit Plan, within ten days after approval by the Commission.

9

10      173.    The Monitor shall file with the Court quarterly written, public reports detailing the

11 City's compliance with and implementation of each substantive provision of this Agreement.

12 These reports shall be written with due regard for the privacy interests of individual officers and

13 the interest of the City and the Department in protecting against disclosure of Sensitive Data and

14 non-public information. At least five days (excluding weekends and federal or state holidays)

15 before filing a report, the Monitor shall provide a copy of the draft to the parties for input as to

16 whether any factual errors were made or whether any Sensitive Data or non-public information is

17 disclosed. The Monitor shall consider the parties' responses and make appropriate changes, if

18 any, before issuing the report. The Monitor may testify in this case regarding any matter relating

19 to the implementation, enforcement or dissolution of this Agreement; provided, however, that

20 such testimony shall be given with due regard for the privacy interests of individual officers and

21 the interest of the City and the Department in protecting against disclosure of Sensitive Data and

22 non-public information. In the event that such testimony proffered by the DOJ may relate to

23 specific officers or other individuals or involve Sensitive Data or non-public information, the DOJ

24 shall provide reasonable notice.

25

26      174.    Except as required or authorized by the terms of this Agreement, the parties acting

27

28

1   together, or by the Court: the Monitor shall not make any public statements or issue findings with

2   regard to any act or omission of the City, or its agents, representatives, or employees; or disclose

3   Sensitive Data or non-public information provided to the Monitor pursuant to the Agreement.

4   The Monitor shall not testify in any other litigation or proceeding with regard to any act or

5   omission of the City, the Department, or any of their agents, representatives, or employees related

6   to this Agreement or regarding any matter or subject that the Monitor may have received

7   knowledge of as a result of his or her performance under this Agreement.  Unless such conflict is

8   waived by the parties, the Monitor shall not accept employment or provide consulting services

9   that would present a conflict of interest with the Monitor's responsibilities under this Agreement,

10  including being retained (on a paid or unpaid basis) by any current or future litigant or claimant,

11  or such litigant's or claimant's attorney, in connection with a claim or suit against the City or its

12  departments, officers, agents or employees.  The Monitor, as an agent of the Court, is not a state

13  or local agency, or an agent thereof, and accordingly the records maintained by the Monitor shall

14  not be deemed public records subject to public inspection within the meaning of California

15  Government Code Sec. 6250 et seq.  The Monitor shall not be liable for any claim, lawsuit, or

16  demand arising out of the Monitor's performance pursuant to this Agreement.  Provided,

17  however, that this paragraph does not apply to any proceeding before this Court related to

18  performance of contracts or subcontracts for monitoring this Agreement.

19

20

21

22

23

24

25

26

27                                              -83-

28

1  **XII.   TERM OF AGREEMENT AND HOUSEKEEPING PROVISIONS**

2

3        A.    _City Reports and Records_

4

5        175.   Between 90 and 120 days following entry of this Agreement and no later than

6  every August 1st and February 1st thereafter until this Agreement is terminated, the City shall file

7  with the Court, with a copy to the Monitor and to DOJ, a status report delineating the steps taken

8  by the City and the Department during the reporting period to comply with each provision of this

9  Agreement. The City shall also file such a report documenting the steps taken to comply with

10  each provision of this Agreement during the term of this Agreement 120 days before five years

11  from the effective date of this Agreement.

12

13        176.   During the term of this Agreement, the City and the Department shall maintain all

14  records necessary to document its compliance with the terms of this Agreement and all documents

15  expressly required by this Agreement. The Department shall maintain all Complaint Form 1.28

16  investigation files for at least ten years from the date of the incident. The City and the

17  Department shall maintain an officer's training records during the officer's employment with the

18  LAPD and for three years thereafter (unless required to be maintained for a longer period of

19  applicable law).

20

21        177.   Within a reasonable time following notice to the City or the Department, as

22  applicable, the DOJ shall have access to all City staff, facilities and documents reasonably

23  necessary to enable the DOJ to evaluate compliance with the Agreement, except that, absent Court

24  order, access to any such staff, facilities and documents shall be limited to the same extent the

25  Monitor's access is limited under paragraphs 163, 165, 166, 167, 168, 169, 170, and 171 and as to

26  any such documents protected by the attorney-client privilege shall be consistent with the

27                                            -84-

28

1   requirements of those paragraphs.  DOJ shall retain any Sensitive Data and non-public

2   information  in a confidential manner and shall not disclose any Sensitive Data or non-public

3   information to any person or entity, other than the Court or the Monitor, absent written notice to

4   the City and either written consent by the City or a court order authorizing disclosure.  In the

5   event that DOJ intends to introduce Sensitive Data or non-public information to the Court, DOJ

6   shall provide reasonable notice to the City.

7

8   B.    *Implementation*

9

10      178.    This Agreement shall become effective on entry by the Court.  The City shall

11  implement immediately all provisions of this Agreement which involve the continuation of

12  current Department policies, procedures, and practices.  The City shall implement as soon as

13  reasonably practicable and no later than 120 days after the effective date of this Agreement, the

14  following provisions:  paragraphs 57, 61, 73, 76, 79, 80 (subparts b through g inclusive), 82, 85,

15  86, 91, 101, 140, 145, 147, 148, 149, 150, and 153.  The remaining provisions shall be

16  implemented either by the specified implementation date or, for those provisions that have no

17  specified implementation date, as soon as is reasonably practicable and no later than July 1, 2001.

18  Provisions of this Agreement which require the use of TEAMS II shall become operable upon the

19  implementation of TEAMS II pursuant to paragraphs 50 (d) and (e).

20

21      179.    The Court shall retain jurisdiction of this action for all purposes during the term of

22  this Agreement.  The Agreement shall terminate five years from the effective date without further

23  action of the Court unless DOJ makes a motion to extend the term of the Agreement, which

24  motion shall extend the term of the Agreement until the resolution of such motion.  Such motion

25  shall be made within 45 days prior to the expiration of the term of the Agreement.  If the City

26  contests the motion, the Court shall hold a hearing at which both parties may present evidence to

27                                            -85-

28

1  the Court before ruling on the DOJ's motion. At the hearing, the burden shall be on the City to

2  demonstrate that it has substantially complied with each of the provisions of the Agreement and

3  maintained substantial compliance for at least two years. For the purposes of this paragraph,

4  "substantial compliance" means there has been performance of the material terms of this

5  Agreement. Materiality shall be determined by reference to the overall objectives of this

6  Agreement. Noncompliance with mere technicalities, or temporary failure to comply during a

7  period of otherwise sustained compliance, will not constitute failure to maintain substantial

8  compliance. At the same time, temporary compliance during a period of otherwise sustained

9  noncompliance shall not constitute substantial compliance. If the Court finds that the City has not

10  maintained substantial compliance for at least two years, the Court shall extend the term of this

11  Agreement until such time as the City has been in substantial compliance with this Agreement for

12  a period of two years including that period of time that the City had been in compliance prior to

13  DOJ's motion.

14

15      180.    The City and the DOJ may jointly stipulate to make changes, modifications and

16  amendments to this Agreement, which shall be effective, absent further action from the Court, 45

17  days after a joint motion has been filed with the Court.

18

19      181.    Neither the City nor the Department shall be deemed to be in breach of this

20  Agreement by reason of failure to perform any of its obligations hereunder to the extent that such

21  failure is due to unforeseen circumstances, including strikes, acts of God, acts of a court of

22  competent jurisdiction (provided that the City takes the actions required by paragraph 187),

23  weather conditions, or any similar circumstances for which the City is not responsible and which

24  are not within the City's control (collectively, " unforeseen circumstances").

25

26      182.    If any unforeseen circumstance occurs which causes a failure to timely carry out

27                                              -86-

28

any requirements of this Agreement, the City shall notify the DOJ in writing within 20 calendar days of the time that the City becomes aware of the unforeseen circumstance and its impact on the City's ability to perform under the Agreement. The notice shall describe the cause of the failure to perform and the measures taken to prevent or minimize the failure. The City shall implement all reasonable measures to avoid or minimize any such failure.

183.   If the DOJ and the City agree or the Court determines that delay in meeting any schedule or obligation in this Agreement has been caused by unforeseen circumstances then, subject to the provisions of paragraph 182, the time for performance shall be extended for a period up to that equal to such delay.

184.   The following shall be the implementation of paragraph 8:

      a.   As part of any meet and confer or consulting process demanded by an employee bargaining unit (as described in paragraph 8), the City shall discuss and seek to resolve with such bargaining unit any disputes or uncertainties regarding which provisions are subject to such process. The City will identify and provide to such bargaining unit, with a copy to the DOJ, the provisions of this Agreement that it believes are subject to the process being demanded. The City shall report to the Court and the DOJ on the results of any such discussion on this question within 30 days of the date the Complaint in this action is filed. In the event that the City and such bargaining unit are unable to resolve the list of the provisions of the Agreement that are subject to that process, the City shall seek declaratory relief from this Court to resolve such issue, provided that such bargaining unit shall receive notice and an opportunity to be heard by the Court on this issue.

b.     Following the resolution of any dispute or uncertainty regarding the issues subject to a demanded process, the City shall continue with that process and shall report to the Court and DOJ on the progress every 30 days, and (i) shall attach proposed agreements with the applicable bargaining unit relating to provisions of this Agreement as they are resolved or unilateral actions (as defined by subpart (f) of this paragraph) by the City arising from the meet and confer process as they are determined and (ii) shall identify provisions identified pursuant to subpart (a) of this paragraph that are scheduled for implementation within 45 days.  With regard to a matter that is not a subject of mandatory bargaining, the City shall not propose or enter into any such agreement with a bargaining unit that will adversely affect the City's timely implementation of this Agreement.  With regard to all such agreements with a bargaining unit and all such unilateral actions, the City shall not make them effective before the expiration of 45 days after such proposed agreement or unilateral action is reported to the Court and DOJ.  The time for implementation of any provisions of this Agreement affected by such agreement with a bargaining unit concerning a mandatory subject of bargaining or such unilateral action shall be extended for such 45-day period.  Upon receipt by DOJ of any such proposed agreement or unilateral action, the parties shall consult to determine whether, and if so to what extent, such proposed agreement or unilateral action would adversely affect the City's ability timely to implement any provision(s) of this Agreement.  If the parties determine that implementation of such proposed agreement or unilateral action would not significantly impact the City's ability to implement the affected provision(s) of this Agreement, DOJ shall waive some or all of such 45-day period, and the City shall initiate such implementation.  If such determination is not made, the parties shall discuss appropriate clarifications or modifications to this Agreement.   Where the parties

-88-

believe that a modification of this Agreement is appropriate, they shall present such modification to the Court for its consideration pursuant to paragraph 180, and the implementation date for the affected provision(s) of this Agreement shall be extended while the matter is before the Court unless the Court orders earlier implementation.  Any motion concerning a proposed bargaining agreement or unilateral action shall be brought during the 45-day period and shall not be governed by the notice requirements of paragraph 186.

c.      In the event that the City believes the meet and confer process, consultation, or any such proposed agreements with the applicable bargaining units or such proposed unilateral actions, resulting from the meet and confer process, will impair the City's ability timely to implement one or more provisions of this Agreement, and the DOJ and the City are unable to agree on an appropriate resolution, then the City shall so report to the Court and shall seek appropriate declaratory or injunctive relief (including specific performance) on such provision(s).  The DOJ also may seek relief from the Court in the event that DOJ believes the meet and confer process, consultation, or any such proposed agreements with the applicable bargaining units or such proposed unilateral actions will impair the City's ability timely to implement one or more provisions of this Agreement, and the DOJ and the City are unable to agree on an appropriate resolution.  Any such motion shall demonstrate how the City would be so impaired.

d.      In ruling on a motion under this paragraph, paragraph 8, or in regard to any meet and confer issue identified pursuant to subpart (a) of this paragraph, the Court shall consider, *inter alia*, whether the City's proposed agreements with the

-89-

applicable bargaining units or proposed unilateral actions that address provision(s)
of this Agreement are consistent with the objectives underlying such provision(s)
and whether the City has satisfied its labor relations obligations under state and
local law.  On any such motion, if the City has engaged in good faith efforts
(including consideration of the manner in which the City carried out any applicable
meet and confer or consulting obligations) to be able to implement this Agreement
in a timely manner, the City (i) shall not be in contempt or liable for any other
penalties, and (ii) may be potentially held in breach for such provision(s) only for
the limited purpose of the issuance of declaratory or injunctive remedies (including
specific performance), but may not be regarded as in breach for any other purpose.

e.      In the event that DOJ believes the meet and confer process, consultation, or
any such proposed agreements with the applicable bargaining units or unilateral
actions resulting from the meet and confer process, will impair the City's ability to
implement one or more material provision of this  Agreement, the DOJ may
alternatively file a motion seeking to dissolve this Agreement, which motion shall
be granted if the Court finds that the meet and confer process, consultation, or such
proposed bargaining agreements with the applicable bargaining units or such
proposed unilateral actions will preclude meaningful implementation of one or
more material provisions of this Agreement as contemplated on the date the DOJ's
Complaint was filed.  Should the Court grant a motion by the DOJ to dissolve this
Agreement, the DOJ may commence litigation in this case to seek relief based on
its Complaint.

f.      The term "unilateral action" shall mean an action taken by the City as
management at the conclusion of the meet and confer process on a mandatory

-90-

1     subject of bargaining to implement its last, best, and final offer where (i)

2     agreement could not be reached in the negotiations, (ii) any required impasse

3     resolution procedure has been followed, and (iii) management has decided to make

4     a unilateral implementation at the point of ultimate impasse.

5

6     185.    If there is a significant change in a state law that impairs or impedes the City's

7 ability to implement this Agreement then each of the parties reserve the right to seek declaratory

8 or other relief from the Court regarding implementation of the affected provisions of this

9 Agreement in light of the change in state law.

10

11     186.    Before the DOJ pursues any remedy with the Court based upon the City's,

12 Department's or LAPD's failure to fulfill an obligation under this Agreement, DOJ shall give

13 written notice of such failure to the City. Except as set forth below, the City shall have 45 days

14 from receipt of such notice to cure or cause the cure of such default. If such default continues

15 beyond 45 days following notice of default, DOJ may, upon three days notice to the City

16 (excluding weekends, federal or state holidays), at its election seek a remedy from the Court.

17 Provided, however, that the City shall have only seven days, excluding weekends, federal or state

18 holidays, to cure or cause the cure of any failure to fulfill an obligation that relates to the

19 provisions of this Agreement regarding access to City or Department staff, facilities, or

20 documents, or copies of such documents. If such default continues beyond the seven-day period

21 following notice of default, DOJ may, at its election, immediately seek a remedy from the Court.

22 The notice to be given under this paragraph shall be given by DOJ to the City Attorney on behalf

23 of the City and the City Attorney shall provide copies to the Chief Legislative Analyst and the

24 Chief of Staff to the Mayor.

25

26     187.    The parties agree to defend the provisions of this Agreement. The parties shall

27 -91-

28

1     notify each other of any court or administrative challenge to this Agreement.  In the event any

2     provision of this Agreement is challenged in any local or state court, removal to a federal court

3     shall be sought by the parties.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  The Parties consent and seek entry of this Agreement as an Order of this Court:

2  FOR THE PLAINTIFF, THE UNITED STATES OF AMERICA:

3                                               JANET RENO
                                                Attorney General

6  ALEJANDRO MAYORKAS          BILL LANN LEE
7  United States Attorney            Assistant Attorney General
                                                Civil Rights Division

9                                               STEVEN H. ROSENBAUM
10                                               Chief
11                                               Special Litigation Section
                                                Civil Rights Division

13                                               DONNA M. MURPHY
14                                               Special Counsel
15                                               Special Litigation Section
                                                Civil Rights Division

17                                               MARK A. POSNER
18                                               ROBERT J. MOOSSY
19                                               PATRICIA L. O'BEIRNE
                                                Trial Attorneys
20                                               Special Litigation Section
                                                Civil Rights Division
21                                               U.S. Department of Justice
                                                P.O. Box 66400
22                                               Washington, D.C. 20035-6400
                                                202/307-6264

FOR THE DEFENDANTS, CITY OF LOS ANGELES, CALIFORNIA, BOARD OF POLICE
COMMISSIONERS OF THE CITY OF LOS ANGELES, AND THE LOS ANGELES POLICE
DEPARTMENT:

APPROVED AS TO FORM
AND LEGALITY

JAMES K. HAHN
City Attorney

RICHARD RIORDAN
Mayor

JOHN FERRARO
President of City Council

GERALD CHALEFF
President of Los Angeles Board of Police Commissioners

SO ORDERED this 18th day of June, 2001.

UNITED STATES DISTRICT JUDGE

-94-