1

2

3

4

5

6

7

FILED
CLERK, U.S. DISTRICT COURT

JUL 2 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8

9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

UNITED STATES OF AMERICA,

Plaintiff,

v.

CITY OF LOS ANGELES, CALIFORNIA,
BOARD OF POLICE COMMISSIONERS
OF THE CITY OF LOS ANGELES, AND
THE LOS ANGELES POLICE
DEPARTMENT,

Defendants.

NO. CV 00-11769 GAF (RCx)

**NOTICE RE: FILING**

19

20

21

22

23

24

25

26

27

28

The Court has received the attached letter from Los Angeles Police Department

Deputy Chief, Stephen Downing.  A copy with this notice is being forwarded to the

Monitor for his review and consideration.


IT IS SO ORDERED.


DATED: July 2, 2001

ENTER ON ICMS

JUL - 3 20

_____
Judge Gary Allen Feess
United States District Court

124

S T E P H E N   D O W N I N G

June 27, 2001

Gary A. Feess, Judge
United States District Court
Central District of California
312 N. Spring Street
Los Angeles, CA 90012

RECEIVED
CHAMBERS OF

JUN 2 8 2001

JUDGE
GARY ALLEN FEESS

RE: LAPD Consent Decree

Dear Sir:

You may recall my letter of May 22, 2001 urging you to reject the city's selection of Kroll Associates as Monitor of the LAPD consent decree. I have since read in the newspapers that you agreed with the selection and Kroll Associates will assume the role of Monitor. Therefore, now it is time to get to the business of monitoring, which is the subject of this correspondence. First, a little history:

On March 6, 2000, immediately following publication of the LAPD "Board of Inquiry Report" (BOI), I was invited as a subject matter expert to advise the Board of Police Commissioners as to the means by which they should proceed with the structure and methodology of organizing their own inquiry. This inquiry became known as the "Rampart Independent Review Panel." During the meeting I told the three members of the Board who were present that I believed the BOI report was basically dishonest as it labeled the rank and file as mediocre and concealed the culpability and failures of the LAPD's top brass.

I also informed them that the BOI report failed to address the core problem underlying the Rampart Scandal, that being the corruption of well intentioned affirmative action programs. I recommended that the Board's inquiry include an investigation into the extent of this corruption by reviewing the application of selection and promotion standards going back at least to the time of the accelerated hiring mandated by Mayor Riordan. I suggested that the scandal was more about *"crooks being allowed to become cops"* than it was about *"cops becoming crooks"* and that an effort should be made to determine how many persons of poor character had been allowed to infiltrate the ranks of the LAPD and how many were left to be discovered. The silence in the room caused me to suspect that my recommendation, although valid, was too controversial for their tastes.

This was confirmed as the days following the meeting passed and I was not invited back as a member of the Independent Review Panel. On May 11, 2000, I wrote a letter (attached) to the Board of Police Commissioners acknowledging that my candor clearly contributed to the decision not to invite me back. I also urged they investigate the core

1200 5ᵀᴴ STREET • MANHATTAN BEACH, CA • 90266
PHONE: 310 318 8553 • FAX: 310 318 2141

- 2 -                                            June 27, 2001

problems I referred to in the meeting, as follows:

> "One of the major problems at the core of the Rampart Scandal is the cronyism that has crept into the Department and the weak leadership that has grown from it. Most all of the breakdowns alluded to in the BOI report can ultimately be traced back to and measured against the degree of willingness top brass have demonstrated in standing for anything less than performance related criteria and merit when selecting people or implementing and measuring the effectiveness of department programs. Every problem uncovered by the Task Force and acted upon by the Commission should be analyzed, reported and corrected using this concept as a standard."

As a result of this letter I received a call from the Commission's Executive Director who apologized for not calling earlier. He then explained that I was not invited back as "various people" believed that I had an "agenda." Again, I urged that the corruption of converting goals to quotas within the various affirmative action programs be investigated and a determination be made as to how many persons of poor character remain in the ranks of the LAPD.

In November 2000, the Consent Decree was agreed to by the city and the DOJ. In the 97 pages of the Consent Decree, there is not a single mention about the issue of character in hiring and promotions. On November 16, 2000 the Rampart Independent Review Panel report was published. The one mention in that report referred to 14 pre-employment background investigations that were studied. The study indicated that 28% of the 14 Rampart officers examined should not have been hired. The panel did not examine the pre-employment background histories of the 2000 officers hired during the mayor's accelerated hiring push. They also did not examine the in-service histories of persons of poor character and competence who were promoted to supervisory and leadership positions after "flexibility" was built into promotion procedures in the name of affirmative action. In fact, the panel reported to the public that: ***"The panel found no evidence that minimum hiring standards or formal promotion procedures at he LAPD are seriously flawed."***

The only way that statement could be true is if the panel did not look for the evidence of a flawed system. I suspect that is the case, as there are dozens of examples that prove the system is terribly flawed. The problem is that the public has not been given the opportunity to know just how extensive this corruption has become, because our leaders have continued to conceal or ignore it. What we do know slips out a piece at a time, usually when something negative occurs, like the last weeks arrest of the LAPD officer in San Diego for narcotic trafficking and murder.

I do not know what that officer's pre-employment background was, but I believe that the public should be told now that he has been arrested for such serious crimes. I do know, however, that his partner who is now being investigated as a co-conspirator, should not have been allowed to become a police officer. This individual had five felony arrests before his employment with the LAPD, of which one was for burglary a year before he was hired. Since becoming a member of the LAPD, I am informed that this individual has accumulated nineteen misconduct complaints. Had the panel looked, this individual would

have been discovered. His association with the officer in San Diego might too have been uncovered, prior to the murder and the narcotic transaction.

The most recent example of incompetence in promotions that has "slipped out" is that of a captain investigated for gross negligence and mismanagement. His deputy chief recommended a five-day suspension. Instead the chief of police gave him an official reprimand and promoted him to the rank of commander. Had the Panel reviewed this case, they would have been led to many other sub-standard promotions. They would have also gained insight into the extent that highly qualified candidates are being passed over in favor of blatant cronyism.

At the time I met with the members of the Board of Police Commissioners, I reminded them that they had a confidential study in their possession made by a former Inspector General that proved improper manipulation of the promotion system and cover ups of misconduct by high ranking officers. I suggested that they use that study as a foundation for reform rather than tucking it away and taking no action. One of the many egregious examples outlined in the report was the cover up of a felony wife beating charge by the brass and internal affairs in order to protect a member of a protected class so that he could be promoted to the rank of captain.

I recommend that you direct the Monitor to obtain that report from the Board of Police commissioners so that he can see first hand what really needs reform within the LAPD. He should also go back and study all of the opportunities that LAPD brass have either overlooked or stonewalled that could have prevented the "Rampart Scandal." A perfect place to start is with a June 1996 internal affairs investigation filed as IA # 96-1408.

This investigation demonstrates how a hard working uniformed police officer, coordinating with ATF and the FBI single handedly uncovered criminal activity within Deathrow Records and identified several LAPD officers, as well as officers from other jurisdictions, as being on Deathrow's payroll. A competent reading of the report will illustrate the failures of LAPD brass to deal with one particular officer, his possible criminal associations or the potential for uncovering other LAPD personnel involved with a criminal organization. The investigation is mute on the disposition of the other three officers identified.

This officer who was the subject of the investigation is the same officer who was called a year later by Suge Knight to provide armed security for Tupac Shakur after he was shot in Las Vegas, Nevada. This same officer was promoted to Sergeant within a year of receiving a five-day suspension for lying. I do not know what his pre-employment history looks like, but I do know that management handling of his post employment performance is a perfect example of administrative incompetence, corrupt affirmative action promotion practices and the kind of political cover up that has permeated the catalyst events of the scandal, including the later failures to completely and thoroughly investigate Raphael Perez, David Mack and Kevin Gaines.

The opportunity and information urging further investigation of each of these individuals and all of the ramifications related to their infective presence within the ranks of the LAPD, as well as the related corruption of affirmative action programs, was afforded to

June 27, 2001

the Independent Review Panel and nothing was done. Instead innocent officers were made the victims of a witch-hunt, hard core criminals were released from prison, and the Brutality Bar collected $125 million from the people of Los Angeles, all on the word of Perez.

We do not yet know how many gangsters and people of poor character have been allowed to infiltrate the ranks of the LAPD or how extensively the supervisory, management and leadership ranks have been diluted by the cronyism that has been allowed to creep into the upper ranks. However, the leads are still there to follow and the records are still there to be inspected and analyzed. The public does not have access, the Police Commission failed to do the job and the Consent Decree ignored the need. The only opportunity left is you, Judge Feess, and the Monitor. He has an $11 million budget. Please ask him to spend it wisely and look in the right places.

There is no reform, no academy class teaching integrity and no form of leadership that can put a full shine on a rotten apple. This should be the focus of LAPD reform. Data gathering, tracking systems and threshold management are bureaucratic frills that will only promote more bureaucrats offering more data collection programs and more discussion on how to interpret and manage those programs. If we start with good people, weed out the bad ones, promote the best and give the good ones some meaningful, balanced leadership the LAPD will once again become a great police department.

Sincerely,

Stephen Downing
Deputy Chief, LAPD, (retired)

Attachments:    Letter to Gerald I. Chaleff, 5-11-00

               Letter to Ted Hunt 9-9-00

# STEPHEN DOWNING

May 11, 2000

Gerald L. Chaleff, President
Los Angeles Board of Police Commissioners
150 N. Los Angeles Street
Los Angeles, CA 90012

Dear Sir:

In case you missed the article by Mr. Wachtel in today's Times, I have attached a copy.

Mr. Wachtel provides the kind of clear thinking and diversity that should be represented within the Police Commission Task Force. We need more of his kind of perspective in reviewing the Rampart Scandal and the BOI report than that of the *Times* labeled "Bull Dog Lawyers" who seem to proliferate every pore of city government. What we don't need is more lawyers from the DOJ to instruct us in local reform. Please do all you can to oppose this intrusion upon our right to Home Rule.

You may recall that I was one of the "experts" asked to review the BOI Report and meet with selected members of the Commission and other subject matter experts on March 6, 2000. I am sure that it was my candor - about the corruption of affirmative action programs, double standards practiced by the top brass, and my views that the BOI Report serves only as a means of taking attention from the core problems of the scandal - that contributed to the decision that I not be invited back. I accept that. In so doing, I ask only that you consider the insight contained in Mr. Wachtel's Op Ed piece.

One of the major problems at the core of the Rampart Scandal is the cronyism that has crept into the Department and the weak leadership that has grown from it. Most all of the breakdowns alluded to in the BOI report can ultimately be traced back to and measured against the degree of willingness top brass have demonstrated in standing for anything less than performance related criteria and merit when selecting people or implementing and measuring the effectiveness of department programs. Every problem uncovered by the Task Force and acted upon by the Commission should be analyzed, reported and corrected using this concept as a standard.

This weakness of leadership is best demonstrated by the current severity of internal discipline the Mayor has been boasting about. Escalation of severe discipline cannot be celebrated as a demonstration of competence and effectiveness, unless it involves the weeding out of personnel who should not have been hired in the first place. In the absence of evidence supporting such a mass weeding out of the unfit, the Mayor, as well as the lawyers assigned to your Task Force, should understand that weak leadership *always* translates into increased and severe internal discipline. It is always the tool of first resort for those who lack the confidence and competence of good leadership.

It requires special courage, common sense, and political credibility to be firm in declaring a controversial incident, not involving misconduct, to be a policy and/or training issue. As Mr. Wachtel suggests, more management does not translate into better management, especially if it is more of the same kind of

management.

Finally, it remains my sincere hope that the corruption of the affirmative action programs is studied in light of their contribution to the Rampart Scandal. In my opinion, had the natural leads of the Gaines/Lyga case been followed, the corruption of Rampart, as well as the corruption of the affirmative action programs, would have been uncovered and brought to an end at least a year earlier, without having to negotiate a bargain with the likes of Rafael Perez. It is also highly probable that David Mack would have been weeded out before he robbed a bank of $700,000, the fruits of which were enjoyed by both Perez and Gaines. And most important, Frank Lyga, a good, decent, hard working police officer, could have escaped the label of racist put upon him by those same gangsters and their attorneys, a condition that has yet to be remedied.

Although I have now come to believe that an outside citizens commission comprised of people with diverse professional backgrounds would best serve in identifying the reforms necessary for all of city government, I wish you well in finding the solutions necessary to bring back the luster and the professionalism of the Los Angeles Police Department.

Sincerely,

Stephen Downing
Deputy Chief, LAPD (ret.)

    Cc:    T. Warren Jackson, Vice President, Herbert F. Boeckman,II, Commissioner
            Dean Hansell, Commissioner, Raquelle de la Rocha, Commissioner,
            Joseph Gunn, Executive Director, Jeffery Eglash, Inspector General

# STEPHEN DOWNING

November 9, 2000

Ted Hunt
President, Police Protective League
Via Fax: 213 251 4566

Dear Ted:

It would be appreciated if you consider the following for the Blue Line.

**The Word of Perez.** Is there really a Rampart Scandal? Or is this too a "butterfly flap" that has become an out-of-control political tsunami having as its catalyst *"the word of Perez?"* The chaos has now washed away our 10th amendment right to home rule as well as the well-being and reputations of good cops made targets of innuendo, false allegations, and political hysteria.

Fingers have been pointed, headlines written, political pronouncements made and the witch hunt called an investigation has still revealed no evidence of "massive scandal," -- but still 70 police officers have been taken from the streets for more than one year based upon *"the word of Perez."* Of those who have been charged and taken to a board of rights, all but one was found not guilty of misconduct. During this same period over 100 gangsters previously convicted of serious felonies, like Perez, have been released back to the community, all based solely on *"the word of Perez."*

Let us RECAP THE SCANDAL: Raphael Perez was caught stealing dope. He knew he would be convicted so he created a few stories to manipulate a plea bargain and cut down on his prison time. It worked. Parks and Garcetti bought his whole lurid story and the Rampart Scandal was officially launched. Parks dug in and published 350 pages about on-going management failures and used it to label his street cops as "mediocre," saying nothing about himself or his brass. Garcetti dismissed over 100 felony gangster convictions with no evidence other than *"the word of Perez."* The Department of Justice (DOJ) moved in from Washington D.C. with a lawsuit based upon Parks' 350 page report. The Los Angeles lawyer industry moved in with a few hundred more lawsuits and FINALLY Garcetti filed felony charges against four of the Rampart cops.

We followed the trial eagerly, waiting for the presentation of "real" evidence. But, all we got was a parade of self-serving gangsters and killers doing the same thing Perez did - lie to save their own hides. The best the *L.A. Times* could provide to support their previously biased reporting was to describe one of the four cops as overweight (a burly cop) and prone to the use of poor grammar. They tried to paint the gangsters in the best possible light, but failed. And the best the DA could do to destroy the cop's credibility was to present evidence that one of them admitted to his pre-employment police background investigator that he used a fake i.d. when he was 19 years old in order to go night clubbing.

Does all of the above amount to a "pattern of civil rights abuses?" Consider the answer to this in light of the fact that the U.S. Supreme court has interpreted this phrase by stating, "that the matter at hand had to be the "standard operating procedure - the regular, rather than unusual practice. . . . [That] isolated or accidental or sporadic discriminatory acts do not fall under the "pattern or practice" term.

There is no pattern and there is no evidence of a pattern. But, with this definition in hand, the people we elected to run the city still gave away our 10th amendment rights to local governance and handed their elected responsibilities over to the DOJ, without even asking them to produce their evidence. The result: our elected officials are no longer responsible for the management or the budget of the police department, they only

November 9, 2000

have to provide the money.   They assure us, however, that the consent decree is a reasonable COMPROMISE, that they have a PARTNERSHIP with the DOJ and that nothing DECISIVE has really occurred.   They just have no say in how it goes from now on, except for the fact that they get to "consult" - - and ante up the money.

The price tag on the consent decree is several hundred more cops coming off the streets to staff everybody's new ideas and an additional $150 million plus so the taxpayer can finance a brand new bureaucratic blizzard of paper.   The new "DOJ Partnership" is going to provide them with all kinds of new statistics about street police work to speculate about.  They don't quite yet know what the speculation will be, but they're already in serious discussions aimed at defining "statistical thresholds" that will dig out errant cops and find new "patterns."  So, rest assured, we will be getting something really profound for the $150 million. We're just not sure how many of the cops we have left will seek employment elsewhere in order to avoid being caught up in the "threshold matrix" yet to be invented.

But, we can be sure that the new systems and data collection will produce a whole new corps of experts and consultants to tell us what it means.  And, wouldn't you know - JOHNNY'S BACK with the rest of the regulars from the downtown lawyer industry and as usual, they have their eye on the taxpayer's treasury.  And why not?  Feeding at the public trough in Los Angeles is better than working for a living and it is SO EASY. Besides, if the establishment can release 100 convicted gangsters and put four Rampart cops on trial without evidence, why should Johnny and his ilk be required to prove their lawsuits?

A final question remains: Will the City Council agree with the City Attorney and settle with Johnny and his ilk or did they learn their lesson when they discovered that Hahn secretly settled the Gains-Lyga case three years ago, handing Mr. Cochran $300,000 of the taxpayers money to stay out of court?

They all know now that case would have been a slam-dunk win for the taxpayer.  They all know now that it was a cover up to conceal the fact that the cop, Gaines, was a gangster prior to the LAPD putting him on the payroll.  They all know now that it was the 1980 DOJ consent decree that encouraged and allowed it to happen.  They all know now that by taking the case to court the lid would have been blown off of that dangerous "protected classes" numbers game and prevented the likes of Perez, the bank robber-cop David Mack and Gaines from ever becoming a police officer.  They all know now that too much of the taxpayers money has been given away without the hint of a fight.  They all know now that NOBODY HAS ANY EVIDENCE!

So, now that the chaos of the tsunami is receding, what will they do?

Sincerely,

Stephen Downing
Deputy Chief, LAPD (ret)