Dated:  June 11, 2009

Kroll, Inc.

Michael G. Cherkasky
Independent Monitor of the
Los Angeles Police Department

# Appendix A

**The Department of Justice's May 8, 2008
Notice of Investigation Letter to the City of Los Angeles**

FILED

2009 NOV -3 PH 3: 59

1  JANET RENO
   Attorney General
2  BILL LANN LEE (SBN 108452)
   Assistant Attorney General
3  Civil Rights Division
   STEVEN H. ROSENBAUM
4  Chief
   DONNA M. MURPHY
5  Special Counsel
   MARK A. POSNER
6  ROBERT J. MOOSSY
   PATRICIA L. O'BEIRNE
7  Trial Attorneys
   Special Litigation Section
8  Civil Rights Division
   U.S. Department of Justice
9  P.O. Box 66400
   Washington, DC. 20035-6400
10 Telephone: (202)307-6264
11 Facsimile: (202)514-0212

12 ALEJANDRO N. MAYORKAS
   (SBN 122447)
13 United States Attorney
   312 North Spring Street
14 Los Angeles, California 90012
   Telephone: (213) 894-4600
15 Facsimile: (213) 894-2535

16 Attorneys for Plaintiff

17
                IN THE UNITED STATES DISTRICT COURT
18              FOR THE CENTRAL DISTRICT OF CALIFORNIA

19 UNITED STATES OF AMERICA,       )
20          Plaintiff,              )
                                    )   00-11769
21                                  )
                                    )   C.A. No.      GAF  (RCx)
22                                  )
   CITY OF LOS ANGELES,            )   COMPLAINT
23 CALIFORNIA, BOARD OF POLICE      )
   COMMISSIONERS OF THE CITY OF     )
24 LOS ANGELES,                     )
   and the LOS ANGELES POLICE       )
25 DEPARTMENT,                      )
                                    )
26          Defendants.             )
27 //

28

-1-

The United States of America alleges:

1. The United States brings this action under 42 U.S.C. § 14141 to remedy a pattern or practice of conduct by law enforcement officers of the Los Angeles Police Department that deprives persons of rights, privileges, and immunities secured or protected by the Constitution or laws of the United States. The defendants, through their acts and omissions, are engaging in a pattern or practice of conduct by LAPD officers of subjecting individuals to uses of excessive force, false arrests, and improper searches and seizures. The defendants have failed adequately to train, supervise, and monitor police officers; to investigate, review and evaluate use of force incidents; to accept complaints of misconduct, investigate alleged misconduct, and appropriately discipline officers who are guilty of misconduct; and to implement effective systems to ensure that management controls adopted by the Los Angeles Police Department are properly carried out. Accordingly, the United States seeks a judgment granting injunctive and declaratory relief for the defendants' violations of law.

## DEFENDANTS

2. The Defendant City of Los Angeles ("City") is a chartered municipal corporation in the State of California.

3. The Defendant Board of Police Commissioners of the City of Los Angeles is a board of five appointed members that is responsible for the supervision, control, regulation and management of the Los Angeles Police Department.

4. The Defendant Los Angeles Police Department ("LAPD") is a law enforcement agency operated by the City.

-2-

## JURISDICTION AND VENUE

5.   This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1345.

6.   The United States is authorized to initiate this action pursuant to 42 U.S.C. § 14141.

7.   Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391, as the defendants reside in and the claims arose in the Central District of California.

## FACTUAL ALLEGATIONS

8.   The defendants, through their acts or omissions, have engaged in and continue to engage in a pattern or practice of conduct by LAPD officers of using excessive force against persons in Los Angeles.

9.   The defendants, through their acts or omissions, have engaged in and continue to engage in a pattern or practice of conduct by LAPD officers of falsely arresting persons in Los Angeles without probable cause.

10.   The defendants, through their acts or omissions, have engaged in and continue to engage in a pattern or practice of conduct by LAPD officers of improperly stopping, searching, and seizing persons in Los Angeles.

11.   The defendants are, through their acts or omissions, engaging in a pattern or practice of systemic deficiencies that has resulted in the pattern or practice by LAPD officers of uses of excessive force, false arrests, and improper searches and seizures, described in paragraphs 8-10 above.  These systemic deficiencies include, but are not limited to:

//

-3-

a.   failing to implement policies, procedures, and
     practices regarding use of force that
     appropriately guide and monitor the actions of
     individual LAPD officers;

b.   failing to train LAPD officers adequately to
     prevent the occurrence of misconduct;

c.   failing to supervise LAPD officers adequately to
     prevent the occurrence of misconduct;

d.   failing to monitor adequately LAPD officers who
     engage in or may be likely to engage in
     misconduct;

e.   failing to implement policies and procedures
     whereby complaints and other allegations of LAPD
     officer misconduct are adequately received and
     investigated;

f.   failing to investigate adequately incidents in
     which an LAPD officer uses force;

g.   failing to fairly and adequately adjudicate or
     review citizen complaints, and incidents in which
     an LAPD officer uses force; and

h.   failing to discipline adequately LAPD officers who
     engage in misconduct.

                    CAUSE OF ACTION

12.   Through the actions described in paragraphs 8-11 above,
the defendants have engaged in and continue to engage in a
pattern or practice of conduct by LAPD officers that deprives
persons of rights, privileges, or immunities secured or protected
by the Constitution (including the Fourth and Fourteenth

                         -4-

1  Amendments) or the laws of the United States, in violation of 42

2  U.S.C. § 14141.

3                          PRAYER FOR RELIEF

4       13.  The Attorney General is authorized under 42 U.S.C.

5  § 14141 to seek declaratory and equitable relief to eliminate a

6  pattern or practice of law enforcement officer conduct that

7  deprives persons of rights, privileges, or immunities secured or

8  protected by the Constitution or laws of the United States.

9       WHEREFORE, the United States prays that the Court:

10      a.  declare that defendants have engaged in a pattern or

11  practice of conduct by LAPD officers that deprives persons of

12  rights, privileges, or immunities secured or protected by the

13  Constitution or laws of the United States, as described in

14  paragraphs 8-11 above;

15      b.  order the defendants, their officers, agents, and

16  employees to refrain from engaging in any of the predicate acts

17  forming the basis of the pattern or practice of conduct as

18  described in paragraphs 8-11 above;

19      c.  order the defendants, their officers, agents, and

20  employees to adopt and implement policies and procedures to

21  remedy the pattern or practice of conduct described in paragraphs

22  8-11 above, and to prevent LAPD officers from depriving persons

23  of rights, privileges, or immunities secured or protected by the

24  Constitution or laws of the United States; and

25      d.  order such other appropriate relief as the interests of

26  justice may require.

27

28

1

2

3

ALEJANDRO MAYORKAS (SBN 122447)
United States Attorney
312 North Spring Street
Los Angeles, California 90012
(213) 894-2727

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JANET RENO
Attorney General

BILL LANN LEE (SBN 108452)
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section
Civil Rights Division

DONNA M. MURPHY
Special Counsel, Special
Litigation Section
Civil Rights Division

MARK A. POSNER
ROBERT J. MOOSSY
PATRICIA L. O'BEIRNE
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66400
Washington, D.C. 20035-6400
(202) 307-6264

-6-

# Appendix B

**The Department of Justice's Civil Complaint**



**U. S. Department of Justice**

**Civil Rights Division**

_____

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

May 8, 2000

James K. Hahn, Esquire
City Attorney
City of Los Angeles
1800 City Hall
Los Angeles, CA  90012

Dear Mr. Hahn:

As you are aware, the Department of Justice's Civil Rights
Division has been conducting a civil investigation of allegations
of police misconduct involving the Los Angeles Police Department
("LAPD").  As a result of our investigation, we have determined
that the LAPD is engaging in a pattern or practice of excessive
force, false arrests, and unreasonable searches and seizures in
violation of the Fourth and Fourteenth Amendments to the
Constitution.  Accordingly, I have authorized the filing of a
civil suit in United States District Court, pursuant to 42 U.S.C.
§ 14141, to obtain injunctive and declaratory relief to eliminate
the pattern or practice of misconduct.  We would be willing to
defer filing suit, however, if City officials are interested in
negotiating a voluntary settlement in the form of a consent
decree to be filed with our civil complaint.

At the same time, this Department's investigations to
determine whether particular LAPD officers committed prosecutable
federal criminal offenses will continue.  The decisions whether
to prosecute will be made based upon the facts of each individual
case.

Our civil investigation has included a variety of actions.
We have reviewed LAPD policy statements; reports on officer-
involved shootings and incidents in which non-lethal force was
used; misconduct complaint files in which serious misconduct was
alleged; information on civil suits filed against the LAPD and
its officers; information on criminal charges filed against LAPD
officers; information relating to police training; and reports
and memoranda prepared by the LAPD, the Board of Police
Commissioners ("Police Commission"), and the Inspector General
that discuss or analyze reform initiatives.  We have met with
LAPD leaders and Police Commission members on several occasions,

-2-

and have met with LAPD managers and supervisors responsible for such matters as internal investigations, reviews of officer-involved shootings, and training.  The Department also has sought to assist the LAPD in addressing potential officer misconduct by providing funds to develop a comprehensive, computerized risk management system.

We have found that the LAPD's pattern or practice of police misconduct includes: the unconstitutional use of force by LAPD officers, including improper officer-involved shootings; improper seizures of persons, including making police stops not based on reasonable suspicion and making arrests without probable cause; seizures of property not based on probable cause; and improper searches of persons and property with insufficient cause. Although we have concluded that these types of misconduct occur on a regular basis in the LAPD, we believe that the majority of officers are ethical, hardworking, and responsible individuals, who have not, themselves, violated the constitutional rights of the persons they serve and protect.

Serious deficiencies in City and LAPD policies and procedures for training, supervising, and investigating and disciplining police officers foster and perpetuate officer misconduct.  First, LAPD supervisors fail to supervise adequately LAPD officers carrying out their routine policing responsibilities.  Supervisors do not, to the extent necessary, direct, evaluate, and monitor officer performance in the field. Supervisors fail to respond to the scene of significant incidents; fail to adequately review reports, including arrest and booking reports; fail to ensure the integrity of applications for warrants and the use of confidential informants; and fail to ensure the appropriate treatment of persons in police custody. Many supervisors do not have the training necessary to perform their supervisory responsibilities and correct deficiencies. This failure in direct supervision has created an environment where officers may engage in misconduct without detection and intervention by LAPD supervisors.

The LAPD also has failed to supervise officers properly by failing to identify and respond to patterns of at-risk officer behavior.  Specifically, the LAPD has failed to implement a comprehensive risk-management system to identify patterns of at-risk conduct by individual officers and groups of officers, such as patterns of uses of force, injury to citizens, and citizen complaints.  One important component of a risk management system is an appropriate "early warning" system.  As the Police Commission acknowledged several years ago, the LAPD's current "early warning" system, the Training, Evaluation, and Management System ("TEAMS"), is inadequate.  Despite this recognition, however, the LAPD has failed to make progress in developing an adequate "early warning" system.  Indeed, it has not even

- 3 -

utilized the federal funds made available for this specific purpose. The LAPD also has failed to utilize properly other supervision and risk management tools, including meaningful personnel evaluations, regular and appropriate integrity audits of officers and units, integrity "sting" investigations, and assessments of officers' history and performance when undertaking actions such as promotions and sensitive assignments (e.g., assignments as field training officers or to specialized units).

In addition, the LAPD fails to respond properly to citizen complaints of officer misconduct in that it conducts inadequate investigations and adjudications of civilian complaints. Because they are unlikely to be discovered and disciplined, officers are not deterred from engaging in misconduct. Similarly, poorly trained officers are not identified for re-training or counseling. Together with the training and supervision deficiencies identified above, inadequate complaint investigations create an environment that allows police misconduct to occur.

Finally, we have concluded that the Police Commission and Inspector General do not have the resources needed to conduct meaningful oversight of the LAPD in a consistent, ongoing manner. Whether additional structural reforms also are needed is something that we are continuing to examine, and are interested in discussing with you if settlement negotiations are undertaken.

We note that other investigative bodies have made similar findings regarding LAPD misconduct and deficient management practices. Indeed, the LAPD has been aware, at least since the 1991 Report of the Independent Commission on the Los Angeles Police Department (the Christopher Commission Report), that its management practices were inadequate to appropriately identify and prevent misconduct by its officers. Such findings were echoed in the Police Commission's 1996 Special Counsel report, entitled Five Years Later, in various reports by the Police Commission's Inspector General, and most recently in the March 1, 2000 Public Report of the LAPD Board of Inquiry into the Rampart Area Corruption Incident ("BOI Report"). Still, the pattern or practice of police misconduct, and the LAPD's failure to adequately address it, continues.

We acknowledge the ongoing efforts of the LAPD and the Police Commission to uncover the misconduct that occurred in the Rampart Area, and to identify management practices that allowed the misconduct to take place. We believe the BOI Report includes many important recommendations for reform, and we are encouraged by the commitment of the Police Commission and the Inspector General to thoroughly evaluate a broad range of issues related to and prompted by the BOI Report, including the LAPD's management practices. We believe, however, that federal action now is

-4-

required to eliminate the pattern or practice of police
misconduct in the LAPD.  The Department of Justice has extensive
experience in developing and implementing systems to ensure
officer integrity and accountability, and we have the ability to
obtain a resolution that will be implemented promptly and fully.
We will seek to use these resources to enhance and strengthen the
City's efforts to address the pattern or practice of misconduct.

Finally, we note that during our investigation we received
allegations of misconduct that, if substantiated, could violate
other statutes in addition to 42 U.S.C. § 14141.  These statutes
include Title VI of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000d, and the Omnibus Crime Control and Safe Streets Act of
1968, 42 U.S.C. § 3789d(c).  Such allegations concern whether the
LAPD discriminates on the basis of race or national origin in its
law enforcement activities.  We have not yet reached any final
determination with regard to these allegations.

We hope that we can work cooperatively to ensure that the
appropriate reforms are developed and implemented promptly and
effectively.

Sincerely,

Bill Lann Lee
Acting Assistant
Attorney General
Civil Rights Division

cc:  Honorable Richard J. Riordan
     Mayor, City of Los Angeles

     Gerald L. Chaleff, Esquire
     President, Los Angeles
        Board of Police Commissioners

     Mr. Bernard C. Parks
     Chief, Los Angeles Police Department

# Appendix C

**Consent Decree**
**United States of America, Plaintiff v. City of Los Angeles, California**

**C.A. No. CV-11769 GAF**

JANET RENO
Attorney General
BILL LANN LEE
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief
DONNA M. MURPHY
Special Counsel
MARK A. POSNER
ROBERT J. MOOSSY
PATRICIA L. O'BEIRNE
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66400
Washington, DC  20035-6400
Telephone: (202)307-6264
Facsimile: (202)514-0212

ALEJANDRO MAYORKAS
United States Attorney
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-4600
Facsimile: (213) 894-3535

Attorneys for Plaintiff


JAMES K. HAHN, City Attorney, State Bar No. 66073X
TIMOTHY B. McOSKER, Chief Deputy, State Bar No. 130513
FREDERICK MERKIN, Senior Assistant City Attorney, State Bar No. 052628
MARK FRANCIS BURTON, Assistant City Attorney, State Bar No. 127073
1700 City Hall East
200 North Main Street
Los Angeles, California 90012-4130
Telephone:  (213) 485-5425
Facsimile:  (213) 485-8898

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,    )
                             )
    Plaintiff,               )
                             )
v.                           )   C.A. No.
                             )
CITY OF LOS ANGELES, CALIFORNIA,  )   **CONSENT DECREE**
BOARD OF POLICE COMMISSIONERS     )
OF THE CITY OF LOS ANGELES, and the  )
LOS ANGELES POLICE DEPARTMENT,    )
                             )
    Defendants.              )
                             )

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.   *General Provisions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.   *Definitions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  **MANAGEMENT AND SUPERVISORY MEASURES TO PROMOTE CIVIL RIGHTS INTEGRITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     A.   *TEAMS II*   [Computer Information System] . . . . . . . . . . . . . . . . . . . 9
     B.   *Management and Coordination of Risk Assessment Responsibilities* . . . . . . . . 21
     C.   *Performance Evaluation System* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III. **INCIDENTS, PROCEDURES, DOCUMENTATION, INVESTIGATION, AND REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     A.   *Use of Force* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     B.   *Search and Arrest Procedures* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
     C.   *Initiation of Complaints* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     D.   *Conduct of Investigations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
     E.   *Adjudicating Investigations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
     F.   *Discipline & Non-Disciplinary Action* . . . . . . . . . . . . . . . . . . . . . . . 35
     G.   *Internal Affairs Group* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
     H.   *Non-Discrimination Policy and Motor Vehicle and Pedestrian Stops* . . . . . . . . 42

IV.  **MANAGEMENT OF GANG UNITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

V.   **CONFIDENTIAL INFORMANTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

VI.  **DEVELOPMENT OF PROGRAM FOR RESPONDING TO PERSONS WITH MENTAL ILLNESS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

**VII.   TRAINING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    A.    *FTO Program* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    B.    *Training Content* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    C.    *Supervisory Training* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

**VIII.   INTEGRITY AUDITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
    A.    *Audit Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
    B.    *Audits by the LAPD* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
    C.    *Inspector General Audits* . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

**IX.   OPERATIONS OF THE POLICE COMMISSION & INSPECTOR GENERAL** . . . 68
    A.    *Police Commission* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
    B.    *Inspector General* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
    C.    *General* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

**X.   COMMUNITY OUTREACH AND PUBLIC INFORMATION** . . . . . . . . . . . . . . . 72

**XI.   INDEPENDENT MONITOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

**XII.   TERM OF AGREEMENT AND HOUSEKEEPING PROVISIONS** . . . . . . . . . . . 84
    A.    *City Reports and Records* . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
    B.    *Implementation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

I.  **INTRODUCTION**

A.  *General Provisions*

1.  The United States and the City of Los Angeles, a chartered municipal corporation in the State of California, share a mutual interest in promoting effective and respectful policing.  They join together in entering this settlement in order to promote police integrity and prevent conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

2.  In its Complaint, plaintiff United States alleges that the City of Los Angeles, the Los Angeles Board of Police Commissioners, and the Los Angeles Police Department (collectively, "the City defendants") are violating 42 U.S.C. § 14141 by engaging in a pattern or practice of unconstitutional or otherwise unlawful conduct that has been made possible by the failure of the City defendants to adopt and implement proper management practices and procedures.  In making these allegations, the United States recognizes that the majority of Los Angeles police officers perform their difficult jobs in a lawful manner.

3.  The City defendants deny the allegations in the Complaint.  Nothing in this Agreement, the United States' complaint, or the negotiation process shall be construed as an admission or evidence of liability under any federal, state or local law, including 42 U.S.C. § 1983, or 18 U.S.C. 1961 *et. seq.*

4.  This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1345.  The United States is authorized to initiate this action pursuant to 42 U.S.C. § 14141.  Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391.

5.  This Agreement resolves all claims in the United States' Complaint filed in this case. This

-1-

Agreement also constitutes a full and complete settlement of any and all claims the United States may have against the City defendants, and their officers, employees or agents, regarding any alleged pattern or practice of conduct by Los Angeles police officers in carrying out their law enforcement responsibilities, including racial discrimination, in violation of 42 U.S.C. §§ 14141, 2000d, 3789d(c) or any other law under which such an action could have been brought by the United States that: (i) have occurred up to and including the date the Complaint is filed, or (ii) could have been raised as of the date the Complaint is filed.  This paragraph does not apply to any potential employment discrimination claims against the City of Los Angeles.

6.      The parties enter into this Agreement to provide for the expeditious implementation of remedial measures, to promote the use of the best available practices and procedures for police management, and to resolve the United States' claims without resort to adversarial litigation.

7.      Nothing in this Agreement is intended to alter the lawful authority of LAPD police officers to use reasonable and necessary force, effect arrests and file charges, conduct searches or make seizures, or otherwise fulfill their law enforcement obligations to the people of the City of Los Angeles in a manner consistent with the requirements of the Constitutions and laws of the United States and the State of California.

8.      Nothing in this Agreement is intended to: (a) alter the existing collective bargaining agreements between the City (as defined in paragraph 15) and LAPD employee bargaining units; or (b) impair the collective bargaining rights of employees in those units under state and local law.  The parties acknowledge that as a matter of state and local law the implementation by the City of certain provisions of this Agreement may require compliance with the meet and confer process or consulting process.  The City shall comply with any such legal requirements and shall do so with a goal of concluding any such processes in a manner that will permit the City's timely implementation of this Agreement.  The City shall

-2-

give appropriate notice of this Agreement to affected employee bargaining units to allow such processes to begin as to this Agreement as filed with the Court. The City has received one demand to meet and confer in regard to the proposed Agreement and will use its best efforts to have expedited that process and any others that may be demanded. The City agrees to consult with the DOJ in regard to the positions it takes in any meeting and conferring or consulting processes connected with this Agreement.

9.     This Agreement shall constitute the entire integrated agreement of the parties. No prior drafts or prior or contemporaneous communications, oral or written, shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding.

10.     This Agreement is binding upon the parties hereto, by and through their officials, agents, employees, and successors. This Agreement is enforceable only by the parties. No person or entity is intended to be a third party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action, and accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement. This Agreement is not intended to impair or expand the right of any person or organization to seek relief against the City defendants for their conduct or the conduct of LAPD officers; accordingly, it does not alter legal standards governing any such claims, including those under California Business and Professional Code Section 17200, *et. seq.* This Agreement does not authorize, nor shall it be construed to authorize, access to any City or Department documents, except as expressly provided by this Agreement, by persons or entities other than the DOJ, the City defendants and the Monitor.

11.     The City is responsible for providing necessary support to the Los Angeles Board of Police Commissioners, the Inspector General, the LAPD and the Chief of Police to enable each of them to fulfill their obligations under this Agreement.

-3-

12.     The City, by and through its officials, agents, employees, and successors, is enjoined from engaging in a pattern or practice of conduct by law enforcement officers of the LAPD that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. This paragraph does not apply to the City of Los Angeles' employment policies, practices, or procedures.

B.     *Definitions*

13.     The term "Categorical Uses of Force" means (i) all incidents involving the use of deadly force by an LAPD officer ("OIS"); (ii) all uses of an upper body control hold by an LAPD officer and can include the use of a modified carotid, full carotid or locked carotid; (iii) all uses of force by an LAPD officer resulting in an injury requiring hospitalization, commonly referred to as a law enforcement related injury or LERI incident; (iv) all head strikes with an impact weapon; (v) all other uses of force by an LAPD officer resulting in a death, commonly known as a law enforcement activity related death or LEARD incident; and (vi) all deaths while the arrestee or detainee is in the custodial care of the LAPD, commonly referred to as an in-custody death or ICD.  In addition, under current LAPD policy, a canine bite is not a use of force.  However, for purposes of this Agreement only, a Categorical Use of Force shall include all incidents where a member of the public is bitten by a canine assigned to the LAPD and where hospitalization is required.

14.     The term "Charter" means the Los Angeles City Charter, as may be amended from time to time.

15.     The term "City" means the City of Los Angeles acting through the Mayor of Los Angeles and the Los Angeles City Council.

-4-

16.     The term "complaint" means any complaint by a member of the public regarding Department services, policy or procedure, claims for damages (which allege employee misconduct) or employee misconduct; and any allegation of possible misconduct made by an LAPD employee. All complaints shall be recorded on Complaint Form 1.28. A complaint may be initiated by any of the methods set forth in paragraph 74. For purposes of this Agreement, the term "complaint" does not include any allegation of employment discrimination.

17.     The term "Complaint Form 1.28 investigations" means all administrative investigations of complaints by the LAPD.

18.     The term "complainant" means any person who files a complaint against an officer or the LAPD.

19.     The term "Department" means the Los Angeles Police Department, a constituent department of the City of Los Angeles, as defined in the Charter, and includes the LAPD, the Inspector General, and the Police Commission.

20.     The terms "document" and "record" include all "writings and recordings" as defined by Federal Rules of Evidence Rule 1001(1).

21.     The term "DOJ" means the United States Department of Justice and its agents and employees. In this action, the DOJ represents the United States of America.

22.     The term "effective date" means the day this Agreement is entered by the Court.

23.     The term "including" means "including, but not limited to."

-5-

24.     The term "Independent Monitor" or "Monitor" as used in this document except for paragraph 158, means the Monitor established by Section XI of this Agreement, and all persons or entities associated by the Monitor to assist in performing the monitoring tasks.

25.     The term "Inspector General" means the Office of the Inspector General, as established in the Charter.

26.     The term "LAPD" means the Chief of Police of the Department and all employees under his or her command.

27.     The term "LAPD employee" means any employee under the command of the Chief of Police, including civilian employees.

28.     The term "LAPD unit" means any officially designated organization of officers within the LAPD, including Bureaus, Areas, Divisions, Groups, Sections, and specialized units.

29.     The term "manager" means an LAPD supervisor at the rank of captain or above.

30.     The term "motor vehicle stop" means any instance where an LAPD officer directs a civilian operating a motor vehicle of any type to stop and the driver is detained for any length of time. Such term does not include: checkpoint stops; roadblock stops; commercial vehicle inspection stops; safe driving award stops; child safety seat giveaway stops; stops related to the execution of arrest warrants where the person being stopped is reasonably believed to be the person named on the warrant; stops directly related to the execution of search warrants; or stops as part of targeted task force prostitution and drug enforcement stings which sole purpose is to identify and arrest persons who engage in or attempt to engage in the targeted unlawful conduct.

-6-

1      31.    The term "non-disciplinary action" refers to action other than discipline taken by an

2 LAPD supervisor to enable or encourage an officer to modify his or her performance.  It may include:

3 oral or written counseling; training; increased field supervision for a specified time period; mandatory

4 professional assistance; referral to Behavioral Science Services ("BSS") or to the Employee Assistance

5 Program; a change of an officer's partner; or a reassignment or transfer.

6

7      32.    The term "pedestrian stop" means any instance where an LAPD officer performs a stop

8 (i.e., a temporary restraint where a person is not free to leave) of a person who is not in a motor vehicle.

9 Such term does not include: (i) field interviews of witnesses to or victims of crime; (ii) stops in direct

10 response to the time, place, and circumstances of a call for service for homicide, rape, robbery, assault,

11 domestic violence, shots fired, suspect with a gun or knife, kidnapping, bomb threat, child in danger of

12 physical harm caused by another person, officer needs help or assistance, or battery; (iii) stops related to

13 the execution of arrest warrants where the person being stopped is reasonably believed to be the person

14 named on the warrant; (iv) stops directly related to the execution of search warrants; (v) stops as part of

15 targeted task force prostitution and drug enforcement stings which sole purpose is to identify and arrest

16 persons who engage in or attempt to engage in the targeted unlawful conduct; (vi) stops related to the

17 declaration of an unlawful assembly by an LAPD supervisor at the scene, and incidental stops related to

18 crowd control; (vii) consensual stops except when such stops are followed by a pat-down/frisk, search

19 or seizure (other than searches or seizures incident to an arrest), preparation of a field interview card,

20 citation or arrest.

21

22      33.    The terms "Police Commission" or "Commission" mean the Los Angeles Board of

23 Police Commissioners, as established in the Charter.

24

25      34.    The term "police officer" or "officer" means any law enforcement officer employed by

26 the LAPD, including supervisors and managers.

27                                          -7-

28

35.     The term "specified audit" means those audits required under paragraphs 128, 129, 131, 132, 136, 137, and 138 of this Agreement.

36.     The term "sting audits" means those audits described in paragraph 97.

37.     The term "supervisor" means a police officer with oversight responsibility for other officers and includes managers.

38.     The term "use of force" means a reportable use of force incident as defined in Section 4/245.05 of the LAPD manual as of October 1, 2000.

II.  **MANAGEMENT AND SUPERVISORY MEASURES TO PROMOTE CIVIL RIGHTS INTEGRITY**

A.  *TEAMS II*        [Computer Information System]

39.     The City has taken steps to develop, and shall establish a database containing relevant information about its officers, supervisors, and managers to promote professionalism and best policing practices and to identify and modify at-risk behavior (also known as an early warning system).  This system shall be a successor to, and not simply a modification of, the existing computerized information processing system known as the Training Evaluation and Management System ("TEAMS").  The new system shall be known as "TEAMS II".

40.     The Commission, the Inspector General, and the Chief of Police shall each have equal and full access to TEAMS II, and may each use TEAMS II to its fullest capabilities in performing their duties and responsibilities, subject to restrictions on use of information contained in applicable law.  To the extent that highly sensitive information is contained in TEAMS II, the Commission may impose an identical access restriction on itself and the Inspector General to such information, provided that no such access restriction may in any way impair or impede implementation of this Agreement.  The Department shall establish a policy with respect to granting or limiting access to TEAMS II by all other persons, including the staff of the Commission and the Inspector General, but excluding DOJ and the Monitor, whose access to TEAMS II is governed by paragraphs 166, 167, and 177.

41.     TEAMS II shall contain information on the following matters:

a.     all non-lethal uses of force that are required to be reported in LAPD "use of force" reports or otherwise are the subject of an administrative investigation by the Department;

-9-

b.      all instances in which a police canine bites a member of the public;

c.      all officer-involved shootings and firearms discharges, both on-duty and off-duty (excluding training or target range shootings, authorized ballistic testing, legal sport shooting events, or those incidents that occur off-duty in connection with the recreational use of firearms, in each case, where no person is hit by the discharge);

d.      all other lethal uses of force;

e.      all other injuries and deaths that are reviewed by the LAPD Use of Force Review Board (or otherwise are the subject of an administrative investigation);

f.      all vehicle pursuits and traffic collisions;

g.      all Complaint Form 1.28 investigations;

h.      with respect to the foregoing clauses (a) through (g), the results of adjudication of all investigations (whether criminal or administrative) and discipline imposed or non-disciplinary action taken;

I.      all written compliments received by the LAPD about officer performance;

j.      all commendations and awards;

k.      all criminal arrests and investigations known to LAPD of, and all charges against, LAPD employees;

-10-

1          l.     all civil or administrative claims filed with and all lawsuits served upon the City or

2          its officers, or agents, in each case resulting from LAPD operations, and all lawsuits

3          served on an officer of the LAPD resulting from LAPD operations and known by the

4          City, the Department, or the City Attorney's Office;

5

6          m.     all civil lawsuits against LAPD officers which are required to be reported to the

7          LAPD pursuant to paragraph 77;

8

9          n.     all arrest reports, crime reports, and citations made by officers, and all motor

10         vehicle stops and pedestrian stops that are required to be documented in the manner

11         specified in paragraphs 104 and 105;

12

13         o.     assignment and rank history, and information from performance evaluations for

14         each officer;

15

16         p.     training history and any failure of an officer to meet weapons qualification

17         requirements; and

18

19         q.     all management and supervisory actions taken pursuant to a review of TEAMS

20         II information, including non-disciplinary actions.

21

22  TEAMS II further shall include, for the incidents included in the database, appropriate additional

23  information about involved officers (*e.g.*, name and serial number), and appropriate information about

24  the involved members of the public (including demographic information such as race, ethnicity, or

25  national origin). Additional information on officers involved in incidents (*e.g.*, work assignment, officer

26  partner, field supervisor, and shift at the time of the incident) shall be determinable from TEAMS II.

27                             -11-

28

42.     The Department shall prepare and implement a plan for inputting historical data into TEAMS II (the "Data Input Plan"). The City shall have flexibility in determining the most cost effective, reliable and time sensitive means for inputting such data, which may include conversion of existing computerized databases. The Data Input Plan will identify the data to be included and the means for inputting such data (whether conversion or otherwise), the specific fields of information to be included, the past time periods for which information is to be included, the deadlines for inputting the data, and will assign responsibility for the input of the data. The City will use reasonable efforts to include historical data that are up-to-date and complete in TEAMS II. The amount, type and scope of historical data to be included in TEAMS II shall be determined by the City, after consultation with the DOJ, on the basis of the availability and accuracy of such data in existing computer systems, the cost of obtaining or converting such data, and the impact including or not including such data will have on the overall ability of the Department to use TEAMS II as an effective tool to manage at-risk behavior.  The means and schedule for inputting such data will be determined by the City in consultation with DOJ, taking into consideration the above factors, as well as the City's ability to meet its obligations under paragraph 50. With regard to historic use of force data, the City shall make the determinations required by this paragraph for the beta version of TEAMS II required by paragraph 50(c) and again for the final version of TEAMS II.

43.     TEAMS II shall include relevant numerical and descriptive information about each incorporated item and incident, and scanned or electronic attachments of copies of relevant documents (*e.g.*, through scanning or using computerized word processing). TEAMS II shall have the capability to search and retrieve (through reports and queries) numerical counts, percentages and other statistical analyses derived from numerical information in the database; listings; descriptive information; and electronic document copies for (a) individual employees, LAPD units, and groups of officers, and (b) incidents or items, and groups of incidents or items. TEAMS II shall have the capability to search and retrieve this information for specified time periods, based on combinations of data fields contained in

-12-

TEAMS II (as designated by the authorized user).

44.     Where information about a single incident is entered in TEAMS II from more than one document (*e.g.*, from a Complaint Form 1.28 and a use of force report), TEAMS II shall use a common control number or other equally effective means to link the information from different sources so that the user can cross-reference the information and perform analyses. Similarly, all personally identifiable information relating to LAPD officers shall contain the serial or other employee identification number of the officer to allow for linking and cross-referencing information.

45.     The City shall prepare a design document for TEAMS II that sets forth in detail the City's plan for ensuring that the requirements of paragraphs 41, 43, and 44 are met, including: (i) the data tables and fields and values to be included pursuant to paragraphs 41 and 43 and (ii) the documents that will be electronically attached. The City shall prepare this document in consultation with the DOJ and the Monitor, and shall obtain approval for such design document from the DOJ, which approval shall not be unreasonably withheld.

46.     The Department shall develop and implement a protocol for using TEAMS II, for purposes including supervising and auditing the performance of specific officers, supervisors, managers, and LAPD units, as well as the LAPD as a whole. The City shall prepare this protocol in consultation with the DOJ and the Monitor, and shall obtain approval for the protocol and any subsequent modifications to the protocol from the DOJ for matters covered by paragraph 47, which approval(s) shall not be unreasonably withheld. The City shall notify DOJ of proposed modifications to the protocol that do not address matters covered by paragraph 47 prior to implementing such modifications. In reviewing the protocol and the design document for approval, DOJ shall use reasonable efforts to respond promptly to the City in order to enable the City to meet the deadlines imposed by paragraph 50.

-13-

47.     The protocol for using TEAMS II shall include the following provisions and elements:

a.      The protocol shall require that, on a regular basis, supervisors review and analyze all relevant information in TEAMS II about officers under their supervision to detect any pattern or series of incidents that indicate that an officer, group of officers, or an LAPD unit under his or her supervision may be engaging in at-risk behavior.

b.      The protocol shall provide that when at-risk behavior may be occurring based on a review and analysis described in the preceding subparagraph, appropriate managers and supervisors shall undertake a more intensive review of the officer's performance.

c.      The protocol shall require that LAPD managers on a regular basis review and analyze relevant information in TEAMS II about subordinate managers and supervisors in their command regarding the subordinate's ability to manage adherence to policy and to address at-risk behavior.

d.      The protocol shall state guidelines for numbers and types of incidents requiring a TEAMS II review by supervisors and managers (in addition to the regular reviews required by the preceding subparagraphs), and the frequency of these reviews.

e.      The protocol shall state guidelines for the follow-up managerial or supervisory actions (including nondisciplinary actions) to be taken based on reviews of the information in TEAMS II required pursuant to this protocol.

f.      The protocol shall require that managers and supervisors use TEAMS II information as one source of information in determining when to undertake an audit of an

-14-

LAPD unit or group of officers.

g.     The protocol shall require that all relevant and appropriate information in TEAMS II be taken into account when selecting officers for assignment to the OHB Unit established in paragraph 55, units covered by paragraph 106, pay grade advancement, promotion, assignment as an IAG investigator or as a Field Training Officer, or when preparing annual personnel performance evaluations.  Complaints and portions of complaints not permitted to be used in making certain decisions under state law shall not be used in connection with such decisions and TEAMS II shall reflect this limitation by excluding such complaints and portions of complaints from the information that is retrieved by a query or report regarding such decisions.  Supervisors and managers shall be required to document their consideration of any sustained administrative investigation, adverse judicial finding, or discipline against an officer in each case for excessive force, false arrest or charge, improper search or seizure, sexual harassment, discrimination, or dishonesty in determining when such officer is selected for assignment to the OHB Unit, units covered by paragraph 106, pay grade advancement, promotion, or assignment as an IAG investigator or as a Field Training Officer, or when preparing annual personnel performance evaluations.

h.     The protocol shall specify that actions taken as a result of information from TEAMS II shall be based on all relevant and appropriate information, and not solely on the number or percentages of incidents in any category recorded in TEAMS II.

i.     The protocol shall provide that managers' and supervisors' performance in implementing the provisions of the TEAMS II protocol shall be taken into account in their annual personnel performance evaluations.

j.     The protocol shall provide specific procedures that provide for each LAPD

-15-

officer to be able to review on a regular basis all personally-identifiable data about him or her in TEAMS II in order to ensure the accuracy of that data. The protocol also shall provide for procedures for correcting data errors discovered by officers in their review of the TEAMS II data.

k.    The protocol shall require regular review by appropriate managers of all relevant TEAMS II information to evaluate officer performance citywide, and to evaluate and make appropriate comparisons regarding the performance of all LAPD units in order to identify any patterns or series of incidents that may indicate at-risk behavior. These evaluations shall include evaluating the performance over time of individual units, and comparing the performance of units with similar responsibilities.

l.    The protocol shall provide for the routine and timely documentation in TEAMS II of actions taken as a result of reviews of TEAMS II information.

m.    The protocol shall require that whenever an officer transfers into a new Division or Area, the Commanding officer of such new Division or Area shall promptly cause the transferred officer's TEAMS II record to be reviewed by the transferred officer's watch commander or supervisor. This shall not apply to probationary Police Officers I.

48.    The LAPD shall train managers and supervisors, consistent with their authority, to use TEAMS II to address at-risk behavior and to implement the protocol described in paragraphs 46 and 47.

49.    The City shall maintain all personally identifiable information about an officer included in TEAMS II during the officer's employment with the LAPD and for at least three years thereafter (unless

-16-

otherwise required by law to be maintained for a longer period).  Information necessary for aggregate statistical analysis shall be maintained indefinitely in TEAMS II.  On an ongoing basis, the City shall make all reasonable efforts to enter information in TEAMS II in a timely, accurate, and complete manner, and to maintain the data in a secure and confidential manner consistent with the applicable access policy as established pursuant to paragraph 40.

50.    TEAMS II shall be developed and implemented according to the following schedule:

a.    Within three months of the effective date of this Agreement, the City shall submit the design document required by paragraph 45 to DOJ for approval. The City shall share drafts of this document with the DOJ and the Monitor to allow the DOJ and the Monitor to become familiar with the document as it develops and to provide informal comments on it.  The City and the DOJ shall together seek to ensure that the design document receives formal approval within 30 days after it is submitted for approval.  The City shall respond to any DOJ written comments or objections during the approval process within 10 days, excluding weekends and state and federal holidays.  Such response shall explain the City's position and propose changes to the design document as appropriate to respond to DOJ's concerns.

b.    Within 15 months of DOJ's approval of the design document pursuant to paragraph 50(a), the City shall submit the protocol for using TEAMS II required by paragraph 46 to DOJ for approval. The City shall share drafts of this document with the DOJ and the Monitor to allow the DOJ and the Monitor to become familiar with the document as it develops and to provide informal comments on it.  The City and DOJ shall together seek to ensure that the protocol receives final approval within 60 days after it is presented for approval.  The City shall respond to any DOJ written comments

-17-

or objections during the approval process within 10 days, excluding weekends and state and federal holidays.  Such response shall explain the City's position and propose any changes to the protocol as appropriate to respond to DOJ's concerns, together with a schedule for making the proposed changes.

c.      Within 12 months of the approval of the design document pursuant to paragraph 50(a), the City shall have ready for testing a beta version of TEAMS II consisting of: (i) server hardware and operating systems installed, configured and integrated with the LAPD intranet; (ii) necessary data base software installed and configured; (iii) data structures created, including interfaces to source data; and (iv) the use of force information system completed, including, subject to paragraph 42, historic data. The DOJ and the Monitor shall have the opportunity to participate in testing the beta version using use of force data and test data created specifically for purposes of checking the TEAMS II system.  As a beta version of TEAMS II becomes operational, it shall be used in conjunction with TEAMS I and Internal Affairs Group Form 1.80's to satisfy the requirements of paragraph 51 until TEAMS II is fully implemented.

d.      The TEAMS II computer program and computer hardware shall be operational and implemented to the extent possible, subject to the completion of the protocol for using TEAMS II required by paragraph 46, within 21 months of the approval of the design document pursuant to paragraph 50(a).

e.      TEAMS II shall be implemented fully within the later of 21 months of the approval of the design document pursuant to paragraph 50(a), or 6 months of the approval of the protocol for using TEAMS II pursuant to paragraph 50(b).

51.     The LAPD shall, until such time as TEAMS II is implemented, utilize existing databases,

-18-

information and documents to make certain decisions, as follows:

    a.     Selection of officers for assignment to the OHB Unit or as IAG investigators shall require that the LAPD review the applicable IAG Form 1.80's, and all pending complaint files for such officers, in conjunction with the officer's TEAMS I record.

    b.     Selection of officers as FTOs or for units covered by paragraph 106 shall require that the LAPD review the applicable TEAMS I record for such officer.

    c.     Whenever an officer transfers into a new Division or Area, the Commanding Officer of such new Division or Area shall promptly cause the transferred officer's TEAMS I record to be reviewed by the transferred officer's watch commander or supervisor. This shall not apply to Probationary Police Officers I.

    d.     To the extent available from the reviews required by this paragraph, supervisors and managers shall be required to document their consideration of any sustained administrative investigation, adverse judicial finding, or discipline against an officer, in each case, for excessive force, false arrest or charge, improper search or seizure, sexual harassment, discrimination, or dishonesty in determining when such officer is selected for assignment to the OHB Unit, units covered by paragraph 106, or assignment as an IAG investigator or Field Training Officer.

    52.    Following the initial implementation of TEAMS II, and as experience and the availability of new technology may warrant, the City may or may cause the Department to add, subtract, or modify data tables and fields, modify the list of documents electronically attached, and add, subtract, or modify standardized reports and queries. The City shall or shall cause the Department to consult with the DOJ

-19-

and the Monitor before subtracting or modifying any data tables or data fields, or modifying the list of documents to be electronically attached, and make all reasonable modifications to the proposed alterations based on any objections by the DOJ.

B.     *Management and Coordination of Risk Assessment Responsibilities*

53.     The LAPD shall designate a unit within the Human Resources Bureau that is responsible for developing, implementing, and coordinating LAPD-wide risk assessments.  Such unit shall be responsible for the operation of TEAMS II, and for ensuring that information is entered into and maintained in TEAMS II in accordance with this Agreement.  Such unit further shall provide assistance to managers and supervisors who are using TEAMS II to perform the tasks required hereunder and in the protocol adopted pursuant to paragraphs 46 and 47 above, and shall be responsible for ensuring that appropriate standardized reports and queries are programmed to provide the information necessary to perform these tasks.  Nothing in this Agreement shall preclude such unit from also having the responsibility for providing investigative support and liaison with the Office of the City Attorney.

C.     *Performance Evaluation System*

54.     Within 24 months of the effective date of this Agreement, the Department shall develop and initiate implementation of a plan consistent with applicable federal and state law and the City Charter, that ensures that annual personnel performance evaluations are prepared for all LAPD sworn employees that accurately reflect the quality of each sworn employee's performance, including with respect to: (a) civil rights integrity and the employee's community policing efforts (commensurate with the employee's duties and responsibilities); (b) managers' and supervisors' performance in addressing at-risk behavior including the responses to Complaint Form 1.28 investigations; (c) managers' and supervisors' response to and review of Categorical and Non-Categorical Use of Force incidents, review

-20-

of arrest, booking, and charging decisions and review of requests for warrants and affidavits to support

warrant applications; and (d) managers' and supervisors' performance in preventing retaliation.  The

plan shall include provisions to add factors described in subparts (a)-(d), above, to employees' job

descriptions, where applicable.

-21-

**III.    INCIDENTS, PROCEDURES, DOCUMENTATION, INVESTIGATION, AND REVIEW**

A.    *Use of Force*

55.    Within six months of the effective date of this Agreement, all Categorical Use of Force administrative investigations, including those formerly conducted by the Robbery Homicide Division ("RHD") or the Detectives Headquarters Division ("DHD"), shall be conducted by a unit assigned to the Operations Headquarters Bureau ("OHB"), which unit (the "OHB Unit") shall report directly to the commanding officer of OHB.

       a.    Investigators in this unit shall be detectives, sergeants, or other officers with supervisory rank.

       b.    In the organizational structure of the LAPD, the commanding officer of OHB shall not have direct line supervision for the LAPD's geographic bureaus; provided, however, that such commanding officer may continue to serve on the Operations Committee (or any successor thereto), issue orders applicable to the LAPD (including the geographic bureaus), assume staff responsibilities, as defined in the LAPD manual, and undertake special assignments as determined by the Chief of Police.

       c.    Investigators in this unit shall be trained in conducting administrative investigations as specified in paragraph 80.

56.    The OHB Unit shall have the capability to "roll out" to all Categorical Use of Force incidents 24 hours a day.  The Department shall require immediate notification to the Chief of Police, the OHB Unit, the Commission and the Inspector General by the LAPD whenever there is a Categorical

-22-

Use of Force.  Upon receiving each such notification, an OHB Unit investigator shall promptly respond to the scene of each Categorical Use of Force and commence his or her investigation.  The senior OHB Unit manager present shall have overall command of the crime scene and investigation at the scene where multiple units are present to investigate a Categorical Use of Force incident; provided, however, that this shall not prevent the Chief of Police, the Chief of Staff, the Department Commander or the Chief's Duty Officer from assuming command from a junior OHB supervisor or manager when there is a specific need to do so.

57.     In addition to administrative investigations and where the facts so warrant, the LAPD shall also conduct a separate criminal investigation of Categorical Uses of Force.  The criminal investigation shall not be conducted by the OHB Unit.

58.     The LAPD shall continue its policy of notifying the County of Los Angeles District Attorney's Office whenever an LAPD officer, on or off-duty, shoots and injures any person during the scope and course of employment.  In addition, the LAPD shall notify the District Attorney's Office whenever an individual dies while in the custody or control of an LAPD officer or the LAPD, and a use of force by a peace officer may be a proximate cause of the death.

59.     The LAPD shall continue to provide cooperation to the District Attorney's Office personnel who arrive on the scene of the incident.

60.     The Department shall renew its request to the appropriate bargaining unit(s) for a provision in its collective bargaining agreements that when more than one officer fires his or her weapon in a single OIS incident, then each officer should be represented by a different attorney during the investigation and subsequent proceedings.  The foregoing acknowledges that each officer retains the right to be represented by an attorney of his or her choice.

-23-

61.    All involved officers and witness officers shall be separated immediately after an OIS, and shall remain separated until all such officers have given statements or, in the case of involved officers, declined to give a statement; provided, however, that nothing in this Agreement prevents the Department from compelling a statement or requires the Department to compel a statement in the event that the officer has declined to give a statement. In such a case, all officers shall remain separated until such compelled statement has been given.

62.    Managers shall analyze the circumstances surrounding the presence or absence of a supervisor at (a) a Categorical Use of Force incident, and (b) the service of a search warrant. In each case, such analysis shall occur within one week of the occurrence of the incident or service to determine if the supervisor's response to the incident or service was appropriate. Such supervisory conduct shall be taken into account in each supervisor's annual personnel performance evaluation.

63.    The Department shall continue its practice of referring all officers involved in a Categorical Use of Force resulting in death or the substantial possibility of death (whether on or off duty) to BSS for a psychological evaluation by a licensed mental health professional. The matters discussed in such evaluation shall be strictly confidential and shall not be communicated to other LAPD officers without the consent of the officer evaluated. No such officer shall return to field duty until his or her manager determines that the officer should be returned to field duty upon consultation with BSS.

64.    Except as limited or prohibited by applicable state law, when a manager reviews and makes recommendations regarding discipline or non-disciplinary action as a result of a Categorical Use of Force, the manager will consider the officer's work history, including information contained in the TEAMS II system, and that officer's Categorical Use of Force history, including a review of the tactics the officer has used in past uses of force.

-24-

65.     The Department shall continue to require officers to report to the LAPD without delay the officer's own use of force (on the use of force form as revised pursuant to paragraph 66).

66.     The LAPD shall modify its current use of force report form to include data fields that require officers to identify with specificity the type of force used for the physical force category, to record the body area impacted by such physical use of force, to identify fractures and dislocations as a type of injury, and to include bean bag shot gun as a type of force category.

67.     The Commission shall continue its practice of reviewing all Categorical Uses of Force including all the reports prepared by the Chief of Police regarding such incidents and related investigation files. These reports shall be provided to the Police Commission at least 60 days before the running of any statute of limitations that would restrict the imposition of discipline related to such Categorical Use of Force. Provided, however, if the investigation file has not been completed by this time, the LAPD shall provide the Commission with a copy of the underlying file, including all evidence gathered, with a status report of the investigation that includes an explanation of why the investigation has not been completed, a description of the investigative steps still to be completed, and a schedule for the completion of the investigation. The Commission shall review whether any administrative investigation was unduly delayed due to a related criminal investigation, and, if so, shall assess the reasons therefor.

68.     The LAPD shall continue to require that all uses of force that are not Categorical Uses of Force ("Non-Categorical Uses of Force") be reported to a supervisor who shall conduct a timely supervisory investigation of the incident, as required under LAPD policy and paragraphs 69 and 81, including collecting and analyzing relevant documents and witness interviews, and completing a use of force report form.

69.     The Department shall continue to have the Use of Force Review Board review all

-25-

Categorical Uses of Force. The LAPD shall continue to have Non-Categorical Uses of Force reviewed by chain-of-command managers at the Division and Bureau level. Non-Categorical Use of Force investigations shall be reviewed by Division management within 14 days of the incident, unless a member of the chain-of-command reviewing the investigation detects a deficiency in the investigation, in which case the review shall be completed within a period of time reasonably necessary to correct such deficiency in the investigation or reports.

B.      *Search and Arrest Procedures*

70.      The Department shall continue to require all booking recommendations be personally reviewed and approved by a watch commander as to appropriateness, legality, and conformance with Department policies. Additionally, the watch commander or designee will personally review and approve supporting arrest reports as to appropriateness, legality and conformance with Department polices in light of the booking recommendation.

a.      Such reviews shall continue to entail a review for completeness of the information that is contained on the applicable forms and an authenticity review to include examining the form for "canned" language, inconsistent information, lack of articulation of the legal basis for the action or other indicia that the information on the forms is not authentic or correct.

b.      Supervisors shall evaluate each incident in which a person is charged with interfering with a police officer (California Penal Code § 148), resisting arrest, or assault on an officer to determine whether it raises any issue or concern regarding training, policy, or tactics.

c.      The quality of these supervisory reviews shall be taken into account in the

-26-

supervisor's annual personnel performance evaluations.

71.     The LAPD shall continue to implement procedures with respect to search warrants and probable cause arrest warrants as defined in the LAPD manual (commonly known as "Ramey" warrants), which require, among other things, that a supervisor shall review each request for a warrant and each affidavit filed by a police officer to support the warrant application.  Such review shall include:

a.     a review for completeness of the information contained therein and an authenticity review to include an examination for "canned" language, inconsistent information, and lack of articulation of the legal basis for the warrant; and

b.     a review of the information on the application and affidavit, where applicable, to determine whether the warrant is appropriate, legal and in conformance with LAPD procedure.

c.     In addition, a supervisor shall review the officer's plan for executing the search warrant and, after execution of the search warrant, review the execution of the search warrant.  A supervisor shall be present for execution of the search warrant.

72.     Each Area and specialized Division of the LAPD shall maintain a log listing each search warrant, the case file where a copy of such warrant is maintained, and the officer who applied for and each supervisor who reviewed the application for such warrant.

73.     All detainees and arrestees brought to an LAPD facility shall be brought before a watch commander for inspection.  The watch commander shall visually inspect each such detainee or arrestee for injuries as required by LAPD procedures and, at a minimum, ask the detainee or arrestee the questions required by current LAPD procedures, which are: 1) "Do you understand why you were

-27-

1   detained/arrested?"; 2) "Are you sick, ill, or injured?"; 3) "Do you have any questions or concerns?".

2   In the rare cases where circumstances preclude such an inspection and interview by a watch

3   commander, the LAPD shall ensure that the person is inspected and interviewed by a supervisor who

4   did not assist or participate in the person's arrest or detention.  In each instance, the watch commander

5   or supervisor, as appropriate, shall sign the related booking documentation, which shall indicate their

6   compliance with these procedures.

7

8   C.      *Initiation of Complaints*

9

10          74.     The Department shall continue to provide for the receipt of complaints as follows:

11

12                  a.      in writing or verbally, in person, by mail, by telephone (or TDD), facsimile

13                          transmission, or by electronic mail;

14

15                  b.      anonymous complaints;

16

17                  c.      at LAPD headquarters, any LAPD station or substation, or the offices of the

18                          Police Commission or the Inspector General;

19

20                  d.      distribution of complaint materials and self-addressed postage-paid envelopes in

21                          easily accessible City locations throughout Los Angeles and in languages utilized by the

22                          City of Los Angeles in municipal election ballot materials;

23

24                  e.      distribution of the materials needed to file a complaint upon request to

25                          community groups, community centers, and public and private service centers;

26

27                                              -28-

28

f.      the assignment of a case number to each complaint; and

g.      continuation of a 24-hour toll-free telephone complaint hotline.  Within six months of the effective date of this Agreement, the Department shall record all calls made on this hotline.

h.      In addition, the Department shall prohibit officers from asking or requiring a potential complainant to sign any form that in any manner limits or waives the ability of a civilian to file a police complaint with the LAPD or any other entity.  The Department shall also prohibit officers, as a condition for filing a misconduct complaint, from asking or requiring a potential complainant to sign a form that limits or waives the ability of a civilian to file a lawsuit in court.

75.     The LAPD shall initiate a Complaint Form 1.28 investigation against (i) any officer who allegedly fails to inform any civilian who indicates a desire to file a complaint of the means by which a complaint may be filed; (ii) any officer who allegedly attempts to dissuade a civilian from filing a complaint; or (iii) any officer who is authorized to accept a complaint who allegedly refuses to do so.

76.     The City shall cause the LAPD to be notified whenever a person serves a civil lawsuit on or files a claim against the City alleging misconduct by an LAPD officer or other employee of the LAPD.

77.     The Department shall continue to require all officers to notify without delay the LAPD whenever the officer is arrested or criminally charged for any conduct, or the officer is named as a party in any civil suit involving his or her conduct while on duty (or otherwise while acting in an official capacity).  In addition, the Department shall require such notification from any officer who is named as a defendant in any civil suit that results in a temporary, preliminary, or final adjudication on the merits in

-29-

favor of a plaintiff complaining of off-duty physical violence, threats of physical violence, or domestic violence by the officer.

78.     The Department shall continue to require officers to report to the LAPD without delay: any conduct by other officers that reasonably appears to constitute (a) an excessive use of force or improper threat of force; (b) a false arrest or filing of false charges; (c) an unlawful search or seizure; (d) invidious discrimination; (e) an intentional failure to complete forms required by LAPD policies and in accordance with procedures; (f) an act of retaliation for complying with any LAPD policy or procedure; or (g) an intentional provision of false information in an administrative investigation or in any official report, log, or electronic transmittal of information.  Officers shall report such alleged misconduct by fellow officers either directly to IAG or to a supervisor who shall complete a Complaint Form 1.28. This requirement applies to all officers, including supervisors and managers who learn of evidence of possible misconduct through their review of an officer's work.  Failure to voluntarily report as described in this paragraph shall be an offense subject to discipline if sustained.

D.     *Conduct of Investigations*

79.     Within 10 days of their receipt by the LAPD, the IAG shall receive and promptly review the "face sheet" of all complaints to determine whether they meet the criteria in paragraphs 93, 94 and 95 for being investigated by IAG, or the OHB Unit, or chain of command supervisors.

80.     In conducting all Categorical Use of Force investigations, and complaint investigations regarding the categories of misconduct allegations and matters identified in paragraphs 93 and 94 (whether conducted by IAG, the OHB Unit, or by chain of command during the transition period specified in paragraph 95), the LAPD shall, subject to and in conformance with applicable state law:

-30-

a.      tape record or videotape interviews of complainants, involved officers, and witnesses;

b.      whenever practicable and appropriate, and not inconsistent with good investigatory practices such as canvassing a scene, interview complainants and witnesses at sites and times convenient for them, including at their residences or places of business;

c.      prohibit group interviews;

d.      notify involved officers and the supervisors of involved officers, except when LAPD deems the complaint to be confidential under the law;

e.      interview all supervisors with respect to their conduct at the scene during the incident;

f.      collect and preserve all appropriate evidence, including canvassing the scene to locate witnesses where appropriate, with the burden for such collection on the LAPD, not the complainant; and

g.      identify and report in writing all inconsistencies in officer and witness interview statements gathered during the investigation.

81.     Chain of command investigations of complaints (other than those covered by paragraph 80), and Non-Categorical Uses of Force shall comply with subsections c, e, and f, of paragraph 80 where applicable.

82.     If during the course of any investigation of a Categorical Use of Force, Non-Categorical Use of Force, or complaint, the investigating officer has reason to believe that misconduct may have

-31-

1   occurred other than that alleged by the complainant, the alleged victim of misconduct, or the triggering

2   item or report, the investigating officer must notify a supervisor, and an additional Complaint Form 1.28

3   investigation of the additional misconduct issue shall be conducted.

4

5        83.    Subject to restrictions on use of information contained in applicable state law, the OHB

6   Unit investigating Categorical Uses of Force as described in paragraph 55 and 93 and IAG investigators

7   conducting investigations as described in paragraphs 93 and 94, shall have access to all information

8   contained in TEAMS II, where such information is relevant and appropriate to such investigations,

9   including training records, Complaint Form 1.28 investigations, and discipline histories, and performance

10   evaluations.

11

12   E.    *Adjudicating Investigations*

13

14        84.    The Department shall continue to employ the following standards when it makes

15   credibility determinations: use of standard California Jury Instructions to evaluate credibility;

16   consideration of the accused officer's history of complaint investigations and disciplinary records

17   concerning that officer, where relevant and appropriate; and consideration of the civilian's criminal

18   history, where appropriate.  There shall be no automatic preference of an officer's statement over the

19   statement of any other witness including a complainant who is also a witness.  There shall be no

20   automatic judgment that there is insufficient information to make a credibility determination when the only

21   or principal information about an incident is contained in conflicting statements made by the involved

22   officer and the complainant.  Absent other indicators of bias or untruthfulness, mere familial or social

23   relationship with a victim or officer shall not render a witness' statement as biased or untruthful; however,

24   the fact of such relationship may be noted.

25

26        85.    The LAPD shall adjudicate all complaints using a preponderance of the evidence

27                        -32-

28

standard.  Wherever supported by evidence collected in the investigation, complaints shall be adjudicated as "sustained," "sustained-no penalty," "not resolved," "unfounded," "exonerated," "duplicate," or "no Department employee."  In no case may a Complaint Form 1.28 investigation be closed without a final adjudication.

86.     Withdrawal of a complaint, unavailability of a complainant to make a statement, or the fact that the complaint was filed anonymously or by a person other than the victim of the misconduct, shall not be a basis for adjudicating a complaint without further attempt at investigation.  The LAPD shall use reasonable efforts to investigate such complaints to determine whether the complaint can be corroborated.

87.     All investigations of complaints shall be completed in a timely manner, taking into account: (a) the investigation's complexity; (b) the availability of evidence; and (c) overriding or extenuating circumstances underlying exceptions or tolling doctrines that may be applied to the disciplinary limitations provisions (i) applicable to LAPD officers and (ii) applicable to many other law enforcement agencies in the State of California.  The parties expect that, even after taking these circumstances into account, most investigations will be completed within five months.

F.     *Discipline & Non-Disciplinary Action*

88.     The Chief of Police, no later than 45 calendar days following the end of each calendar quarter, shall report to the Commission, with a copy to the Inspector General, on the imposition of discipline during such quarter (the "Discipline Report").  The Chief of Police shall provide the first such report to the Police Commission by February 15, 2001, and such report shall provide the information listed below for the period from the effective date of this Agreement until December 31, 2000; thereafter such report will be provided on a calendar quarter basis.  Such report shall contain: (a) a summary of all

-33-