**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

**THE HON. JUDGE GARY ALLEN FEESS, JUDGE PRESIDING**

```
UNITED STATES OF AMERICA,          )
                                   )
                  Plaintiff,       )
                                   )
        vs.                        ) NO. CV-00-11769-GAF
                                   )
CITY OF LOS ANGELES, et al.,       )
                                   )
                  Defendants.      )
_____)
```

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

Los Angeles, California

Monday, June 15, 2009

LISA M. GONZALEZ, CSR 5920 – Official Reporter
Roybal Federal Building
255 East Temple Street – Room 181–C
Los Angeles, CA  90012
(213) 621-7709; csrlisag@aol.com

1   **APPEARANCES:**

2

3   FOR THE UNITED STATES:

4                           DEPARTMENT OF JUSTICE
                            CIVIL RIGHTS DIVISION
5                           BY:  JE YON JUNG
                             *and* SHANETTA Y. CUTLAR
6                           950 Pennsylvania Avenue., NW
                            SPL, 601 D Street
7                           Washington, DC  20530
                            (202) 514-0195
8

9   FOR THE CITY OF LOS ANGELES:

10                          OFFICE OF THE CITY ATTORNEY
                            BY:  CARLOS DE LA GUERRA
11                           *and* JULIE S. RAFFISH
                            800 City Hall East
12                          200 North Main Street
                            Los Angeles, California  90012
13                          (213) 978-8395

14  FOR THE INTERVENOR LOS ANGELES POLICE PROTECTIVE LEAGUE:

15                          SILVER, HADDEN, SILVER, WEXLER & LEVINE
                            BY:  RICHARD A. LEVINE
16                          *and*  ELIZABETH SILVER TOURGEMAN
                            1428 Second Street
17                          Santa Monica, California  90401
                            (310) 393-1486
18
    FOR THE COMMUNITY INTERVENORS:
19
                            AMERICAN CIVIL LIBERTIES UNION
20                          BY:  MARK D. ROSEBAUM
                             *and* PETER BIBRING
21                          1313 West Eighth Street
                            Los Angeles, California  90017
22                          (213) 977-5295

23

24  ALSO PRESENT:       MICHAEL CHERKASKY, MONITOR

25

```
 1   Los Angeles, California, Monday, June 15, 2009
 2                      9:45 a.m.
 3                       -o0o-
 4            THE CLERK:  Case number CV-00-11769-GAF,
 5   United States of America versus City of Los Angeles, et al.
 6            Counsel, please state your appearance.
 7            MR. ROSENBAUM:  Good morning, Your Honor.
 8   Mark Rosenbaum for Intervenors.
 9            MR. BIBRING:  Good morning, Your Honor.
10   Peter Bibring also for Community Intervenor.
11            MS. RAFFISH:  Good morning, Your Honor.  Deputy
12   City Attorney Julie Raffish appearing for all City
13   defendants.
14            MR. DE LA GUERRA:  Good morning.  Carlos De La
15   Guerra, Assistant City Attorney for defendants.
16            MR. LEVINE:  Good morning, Your Honor.
17   Richard Levine for Intervenor Los Angeles Police Protective
18   League.
19            MS. TOURGEMAN:  Good morning, Your Honor.
20   Elizabeth Tourgeman for Intervenor Los Angeles Police
21   Protective League.
22            MS. JUNG:  Good morning, Your Honor.  Je Yon Jung
23   for the United States.
24            MS. CUTLAR:  Good morning, Your Honor.
25   Shanetta Cutlar for the United States.
```

1          MR. GARBER:  Good morning, Your Honor.  My name is

2     Robert Garber, and I'm one of the public, one of the people

3     of Los Angeles.  I would like to talk because there are only

4     organizations here, but no one represents the real people of

5     Los Angeles.  I'm one of them, and I would like to talk,

6     please.

7          THE COURT:  All right.  After I've heard from

8     them, I'll hear from you.

9          MR. GARBER:  Thank you very much.

10          THE COURT:  You're welcome.

11          All right.  The matter is on for motion by the

12    Department of Justice and the City.  It's a document

13    captioned, "A Joint Motion to Approve a Transition Agreement

14    and Terminate the Consent Decree."

15          In preparing for this hearing, I have read the

16    joint motion and -- which consists essentially of the

17    Transition Agreement.

18          I've gotten two documents from the LAPPL.  One a

19    response to the joint motion and a response to the

20    Intervenor's Response to the Motion.

21          The Community Intervenors responded to the motion

22    initially and have subsequently filed an additional reply or

23    supplemental document which was filed, I believe, late last

24    week in which I've only briefly reviewed but have seen.

25          All right -- and I think the parties probably got

5

1   a copy of my Order which extended the Decree for two weeks

2   to allow for further discussion and reflection on the issues

3   that are being raised at this point in time.

4        I have some comments, and then I want to hear from

5   the parties.  And I'll do it in this sequence:  I'll hear

6   from the City and DOJ in whatever order, I don't care,

7   first.  After I've heard from them, I'll hear from counsel

8   for LAPPL, then I'll hear from Mr. Rosenbaum from the

9   Community Intervenors.  And the gentlemen who wishes to

10  speak for the members of the community, although it's

11  somewhat irregular, I will allow him to speak as well at the

12  end of this process.

13       The -- one of the things that I've read and

14  considered as part of this is the Monitor's final report to

15  me, and it's, I think, fairly clear, and I don't think

16  anybody in the courtroom would disagree with the fact that

17  there has been significant and substantial progress made in

18  terms of the improvement of the operations of the Department

19  over the past eight years.

20       Although I don't think I need to say it, I think

21  that most people agree, and it is my view that a great deal

22  of credit goes to the Chief of Police who, I think, has

23  shown extraordinary leadership and has been at the forefront

24  of moving the Department in a direction that we all hope to

25  see the Department moving, and certainly that I think is the

1    objective of the Consent Decree itself.

2              It seems to me that, from the report, there's very

3    little doubt in my mind that the LAPD is a more effective

4    policing agency at this point.  I do think that at the same

5    time that its policing is more effective, it has had its

6    officers conform more closely to the requirements of the

7    Constitution.  As the Harvard Report suggests and the

8    Monitor echos, and I agree, I don't think the objectives are

9    inconsistent.  Constitutional policing, I think, is

10   effective policing.

11             The Monitor's report, however, does indicate that

12   the Department is not in substantial compliance with some of

13   the provisions, and, most notably, the bias policing

14   provisions of the Decree, though, again in that area,

15   there's a recognition that substantial progress has been

16   made.

17             The parties' motion to terminate appears to

18   indicate an understanding that, at the very least, a

19   transition period is appropriate.

20             I take it the City agrees with that?  There's not

21   an argument on that point, is there?

22             MS. RAFFISH:  No, Your Honor, that's correct.

23             THE COURT:  And it makes sense to me.  And the

24   question was put to me whether or not there should be some

25   means of transitioning, and I certainly don't have a problem

1   with that.

2          The principal question in my mind for this hearing

3   and what I want to hear from all of you about, is why we're

4   creating a new agreement at this point.  Why are we

5   undertaking all of the problems that surround questions that

6   arise when a new agreement is attempted to be put in place.

7          I had thought and expected that what would happen

8   would be some sort of a proposal to transition that would

9   replace the Monitor with the Office of Inspector General;

10  that had the Office of the Inspector General undertake the

11  duties of the Monitor, eliminate the expense of having all

12  of the detailed audits that were part of the Consent Decree,

13  and have the OIG focusing on those final areas of

14  substantial compliance that needed to be put into place.

15  And that would be done with Mr. Cherkasky working as pro

16  bono.  He's agreed -- I've asked him, and he's agreed that

17  he could be in a consulting capacity with the Department on

18  a pro bono basis.  And it's just not clear to me why we're

19  attempting to move in a different direction.

20         And part of the problem, I think, is that the

21  motion itself doesn't really address a substantial

22  compliance standard.  I mean the standard is in the

23  document.  The document says "Here's how we're going to

24  decide when we're done."  And the motion really doesn't have

25  Points and Authorities, it doesn't have argument, it just

1   has the agreement.

2          Looking at the agreement, it seems to me that in a

3   number of respects, it's not at all clear as to what the

4   document even is.  It purports to be a settlement of the

5   litigation when, in my view, this is not a settlement

6   document.  The case was settled with the Consent Decree.

7   The Consent Decree says in its recitals that it is the

8   settlement of the litigation.  The Transition Agreement

9   appears to try to substitute itself in place of the Consent

10  Decree, and it certainly wasn't -- that was not what I had

11  contemplated.

12         It appears to me that this agreement would

13  eliminate the participation of the Court unless the

14  Department of Justice brings a motion.  I don't know if I'm

15  reading it right or not, but that's how it looks to me.

16         It does eliminate the role of Mr. Cherkasky except

17  as someone with whom I can consult.  I don't think I need

18  anybody's permission to consult with Mr. Cherkasky if that's

19  what I want to do.  The question is having Mr. Cherkasky

20  have a role and a participation so that he continues to be

21  someone with whom I can consult and understand what's going

22  on with the Department.

23         I don't mean any disrespect to anybody else, but I

24  can tell you this, the one person whom I have complete

25  trust, whose word I trust and would take to the bank is

1    Mr. Cherkasky.  I have great confidence in him.  He has

2    always called it like he saw it with me, and I think I need

3    somebody in a position to continue to do that.

4              The agreement also, as the LAPPL points out, would

5    tend -- well, I mean it eliminates the participation of the

6    Intervenors because there's really no lawsuit anymore.  And

7    in the case of the LAPPL, in particular, that creates legal

8    issues that I think are going to need resolution if the

9    transition is to proceed under the terms of the Transition

10   Agreement.

11             And I also note in the Transition Agreement that

12   it indicates, with respect to the bias policing issue and

13   the placement of cameras in cars, which I personally think

14   is the most effective way -- ACLU doesn't agree with this,

15   but I think the most effective way of ensuring unbiased

16   policing is to have cameras in the cars and have a video

17   record of contacts with members of the public.

18             The Transition Agreement says, "Well, we'll get to

19   that subject to the availability of funding."  And I

20   certainly didn't have in mind that we were going to

21   substitute cameras in cars for something else in the

22   agreement and have it be that that will only happen when the

23   City thinks that financially it can get around to it.

24             So I have a number of questions and concerns about

25   the agreement, and I'm going to ask the parties to address

1    the question of why shouldn't the transition be articulated

2    in terms of a means of continuing the Consent Decree but

3    without the Monitor, without the expense, and with the OIG

4    taking the responsibility of the Monitor and gradually

5    transitioning into that role which ultimately they will

6    play, I think, in the long-term, in the future going forward

7    with the Department.

8            It doesn't matter to me whether it's the City or

9    the Department of Justice that speaks first, but one of you

10   needs to start.

11           All right.  City.

12           MS. RAFFISH:  Thank you, Your Honor.

13           I'd like to try to make some preliminary comments

14   before I address some of the Court's questions and issues if

15   that's all right.

16           For eight years this Court has, through the

17   oversight of its Independent Monitor, both observed and

18   played a integral part in the growth and evolution of Los

19   Angeles Police Department.  This department has embraced the

20   changes triggered by the Consent Decree because those

21   changes represent best policing practices, as this Court

22   recognized, and because they foster an ability by the

23   Department to provide the highest level of service which

24   irrespective of life under a Consent Decree is a goal we're

25   striving to achieve every single day.

```
 1              The Department has learned how to better manage,
 2   lead, communicate, enforce, train, take responsibility and
 3   demand accountability and do all of this in a way which
 4   protects the rights of the community that it serves.  It is
 5   not a perfect police department, but perfection was never
 6   the goal of this Decree.  Its goals were to make the
 7   Department more accessible to the people and to ensure
 8   enforcement was conducted in a constitutionally permissible
 9   manner.  It was to improve the quality and the integrity of
10   complaint and use-of-force investigations and, without
11   question, to institutionalize a system of strong oversight
12   of the Department by the Department, the Police Commission,
13   and the Inspector General.
14              Today the Los Angeles Police Department is a model
15   for electronic early warning systems, auditing, treatment of
16   the mentally ill, investigations of categorical uses of
17   force, and the management of confidential informants.
18              Today the Police Commission exercises its
19   independence and autonomy from what can sometimes be the
20   political pull of the City to serve as a strong civilian
21   head of the police department.
22              It's played an active role in the establishment of
23   department policy, the review of categorical uses of forces,
24   and the review of discipline by the Chief of Police.  And
25   when necessary and appropriate, it has also been a vocal
```

1   critic of the very Department that it heads.

2          The Office of the Inspector General is now a model

3   for other agencies throughout this country.  The audits and

4   reviews performed by the OIG are so comprehensive and honest

5   that the Department of Justice and your Independent Monitor

6   have utilized their analyses and their findings as part of

7   their own oversight responsibilities under this Decree.

8          The parties are united in finding the City in

9   substantial compliance with the purpose and the intent of

10  this Decree.  And, most specifically, Your Honor, your

11  Independent Monitor, the eyes and ears of this court for the

12  past eight years, has reached the same conclusion --

13          THE COURT:  Well, not with respect to bias

14  policing, he hasn't.  You might want to read that portion of

15  the report.

16          MS. RAFFISH:  Your Honor, I believe that the

17  Independent Monitor has concluded that there has been

18  substantial compliance by the police department with the

19  overall intent and purpose of the Consent Decree, while

20  recognizing and acknowledging that there remain three areas

21  where the department just needs to take that final step

22  toward reform, toward completion under the Decree.

23          I believe the Monitor is quoted in his report as

24  saying, "Institutional reform can be, and in Los Angeles,

25  has been achieved."

1            The City, the Department of Justice, and the

2    Independent Monitor all support a termination of the decree

3    and approval of a Transition Agreement which would permit

4    the City to take that final step in its long journey toward

5    reform.

6            THE COURT:  Look, I thought I made myself clear.

7    I don't question that there has been substantial progress on

8    the part of the department.  I don't doubt that the

9    department is a different place than it was eight years ago.

10   That's not the question in my mind.  I'm very happy with

11   much of what has occurred over the eight years, perhaps with

12   most of it.  But the question is:  How are we going to

13   transition?  And that's the question that you're not

14   answering, which is why is the transition structured the way

15   you've structured it as opposed to a transition which says:

16   Look, the Police Commission, through its OIG, is going to

17   undertake this role now, and we're going to bring the

18   department into substantial compliance with all of the terms

19   and conditions of this agreement before the Consent Decree

20   is formally terminated.  That's the question.

21           MS. RAFFISH:  Your Honor, there are a number of

22   reasons why the Transition Agreement presents the most

23   equitable way of resolving --

24           THE COURT:  Is there then a reason why none of

25   that was put in writing?

1          Why all I got from the two parties was just a

2     document for me to say thumbs up or thumbs down?

3          MS. RAFFISH:  Well, Your Honor, under paragraph

4     179 of the Decree, the Decree itself contemplates that

5     unless a motion is brought by the Department of Justice

6     within 45 days prior to the termination of the Decree, that

7     the Decree, in essence, would terminate -- expire on its

8     own, as it were.

9          Although, the City and the Department of Justice

10    have worked diligently at seeking a resolution that best

11    addresses the remaining issues, as well as acknowledging the

12    importance of transitioning that oversight from the

13    Independent Monitor, the federal monitorship over to the

14    Police Commission and the Office of the Inspector General.

15         I won't speak for the plaintiffs, but I believe

16    that we believed at the time that the Transition Agreement

17    adequately represented the joint understanding of the

18    parties as to substantial compliance and as to future steps;

19    so my apologies if it didn't include more --

20         THE COURT:  All right.  Let me hear from the

21    Department of Justice.

22         MS. JUNG:  Good morning, Your Honor.  Je Yon Jung

23    for the United States.

24         I wanted to address a few of the questions that

25    you raised before we started this morning, and that was

1   about the Court's jurisdiction and the continuing authority

2   of the Court, as well as the Court's authority to consult

3   with the Monitor or anyone else, for that matter.

4           And we want to be clear that this Transition

5   Agreement in no way ever intended for the Court to not have

6   continuing jurisdiction, regardless of a motion by the

7   United States or the City, in response to any reviews that

8   we anticipated the OIG to conduct; that the Court would have

9   continuing jurisdiction.  And that was an important piece

10  for both parties to have this case under your leadership.

11          And the Monitor, we put him in a footnote because

12  our -- and again this was with consultation with the Monitor

13  and understanding what his role would be, and what his

14  future role would be in this Transition Agreement.

15          Our efforts, the City and the United States, was

16  to ensure that the focus was where it should be; and that is

17  to make sure that the LAPD and that the Police Commission

18  and the OIG are the ones that review and Monitor the LAPD

19  as, I think, everyone in this room always intended it to be.

20          So the focus was not in any way to disrespect this

21  Court's authority or even the Monitor's role for the last

22  eight years, but it was to recognize, an acknowledgment of

23  what we have done in the last eight years, and where we are

24  today.  And the eight years have been long, and we've done a

25  lot of work, and the LAPD has proven that the almost 200 sub

1    provisions of the original Consent Decree are not necessary

2    to hang over their head, so to speak; that we are at a point

3    where we do need a transition.

4              And I believe this goes to addressing your issue

5    about the Transition Agreement, Your Honor --

6              THE COURT:  But that could be true even under what

7    I had in mind.  It doesn't seem to me, and I agree, after

8    consulting with the Monitor and reading the report, that

9    there are numerous provisions where there's full compliance

10   and where continued audits in my judgment don't make any

11   sense.  It's not an effective use of the Department's time.

12   I agree with that, and I'm not quibbling about that.

13             I'm focused, though, on the fact that there are

14   some important things that remain and the mechanism by which

15   that is accomplished.  You say that the Transition Agreement

16   doesn't change the Court's continuing jurisdiction, but I'm

17   not -- it just seems to me that my jurisdiction exists to

18   resolve any disputes that may arise but not that there's any

19   independent jurisdiction of the Court contemplated by that.

20   Maybe I'm misreading it.  If I am, tell me where to look in

21   the agreement and find that, and I'll look at it and see

22   what I think.

23             But, you know, my concern was, you know we're in a

24   much different situation, even though there are some

25   important things that remain, if we're operating under the

1   Transition Agreement mechanism versus the mechanisms that

2   are in existence already in the Consent Decree.

3           MS. JUNG:  Sure, Your Honor.  On Page 3 of the

4   motion, it specifically says that:  "During this period of

5   transition and subject to this Court's continuing

6   jurisdiction over this Transition Agreement, the OIG shall

7   conduct the detailed reviews," it goes into --

8           And again, there was never any intention on either

9   of the parties' part to exclude or limit this Court's

10  jurisdiction.  In fact, that was a necessary component of

11  any agreement that existed post this Consent Decree was to

12  ensure that the Court would have continuing jurisdiction,

13  including all the rights and options that this Court has to,

14  at any point, bring the parties back in here to ask any

15  questions it wants, to hold a status conference.

16          The fact that the reviews would be submitted to

17  the Court is just an insurance in the Transition Agreement

18  that you would actually have reports by the OIG.

19          THE COURT:  All right.  The problem is I can make

20  an argument that the language that you just quoted doesn't

21  mean what you say it means now, and that's the problem.  The

22  problem is it's now -- there's a new document, a new

23  agreement, an ambiguity as to what that even means in the

24  first instance, whereas if we proceed under the existing

25  agreement which has been in operation for a number of years,

1    those questions don't need to be asked, you know, it's

2    understood how the procedural mechanisms operate under the

3    terms of the Consent Decree.

4             So I have -- I'm just concerned about what it

5    means to the enforcement of this agreement, and what the

6    Court's role would be absent any motion on the part of any

7    parties.

8             Plus, we need to address the question, and I would

9    like you to address the question of the Intervenors and what

10   happens to them.  Where -- where are they now under the

11   Transition Agreement?  Are they in?  Are they out?  Is this

12   still part of -- is case number 0011769, is it still open or

13   is it closed?  What's the status of the case?  I mean is it

14   on the docket, is it not on the docket?

15             MS. JUNG:  Because this Court would have

16   continuing jurisdiction, it is our position that it remains

17   open.  The case remains open, including all the rights and

18   responsibilities that the Intervenors had originally after

19   the Ninth Circuit opinion.

20             So this Transition Agreement was an agreement

21   between the City defendants and the United States to look at

22   where we were at the end of eight years, to see where we can

23   go from there with the three areas, but it was not in any

24   way to limit the rights of the PPL.  And that they have the

25   right to come before you, as they did here, to file their

```
1    motions and to have their positions heard before this Court

2    as to what they think about that Transition Agreement.  And

3    we have not affected that by entering into our Transition

4    Agreement.

5           Now, as far as the three areas that we've

6    addressed, my understanding from the PPL, in particular, the

7    issue is with the financial disclosure program.  And they

8    believe that their rights are being affected --

9           THE COURT:  That case is ongoing.

10          MS. JUNG:  Exactly.  And to be very clear that

11   we -- in the portion of the Transition Agreement that

12   addresses that, we simply look at the status quo.  We simply

13   look at the fact that this program is being implemented by

14   the LAPD and because this Consent Decree is up for

15   termination that we needed to address that.

16          However, because that case is before this Court,

17   if there is any change in that program ordered by this

18   Court, of course, we will revisit that issue, and we will

19   revisit what we have to do under this Transition Agreement.

20   So there is nothing that limits what their separate lawsuit

21   is attempting to do in that cause of action.

22          And again, we were careful in how we drafted that

23   to make sure that what we are simply doing is looking at the

24   program as currently status quo, implemented and adopted by

25   the Police Commission and the LAPD.
```

```
1              THE COURT:  All right.

2              Do you have any response to any of the other

3    issues that I've raised?

4              What about the bias policing issue and how that's

5    going to be dealt with, and the fact that the Monitor in

6    that portion of the report says that substantial progress

7    has been made but substantial compliance hasn't been?

8              MS. JUNG:  And we absolutely agree.  That is why

9    it is a key component of the Transition Agreement.  We

10   believe that there are things to be done with the bias

11   policing portions of the agreement, and we also want to

12   acknowledge that the Police Commission and the OIG have done

13   an incredible amount of work, oftentimes behind the scenes,

14   oftentimes in the public, that deals with how they are

15   addressing the bias policing issues.  And that's something

16   that we wanted to acknowledge in this Transition Agreement;

17   that we do have faith in the OIG and the Commission to take

18   that baton and to continue doing the work that they're

19   doing.

20             We understand and hear the Court, as well as the

21   Monitor, about the in-car videos, and we do believe --

22   in-car cameras, and we do believe that that is an important

23   aspect for any policing department's quiver that they can

24   use to not only address bias policing but addressing issues

25   for allegations against officers.
```

```
 1              However, we don't believe that's the panacea to
 2    bias policing, and that's why the Transition Agreement
 3    includes that as action that the City has voluntarily made
 4    to take; but we also think that the important issues are the
 5    substantive reviews and investigations of bias policing
 6    complaints, and that's where we see the OIG focusing his
 7    reviews during this Transition Agreement.
 8              THE COURT:  All right.  Anything else?
 9              MS. JUNG:  I believe that's it for now,
10    Your Honor.
11              THE COURT:  All right.  Let me, then, hear from
12    counsel for the LAPPL.
13              If you have anything you want to add.
14              MR. LEVINE:  Good morning, Your Honor.
15    Richard Levine.  Just a few points, Your Honor.
16              I just want to make it clear, the League has no
17    objection to some sort of a transition process from that
18    contemplated currently in the Consent Decree, whether that
19    form takes a new document or a supplement to the Consent
20    Decree.  The problem with the proposed Transition Agreement
21    is, number 1, there's no consultation by the Department of
22    Justice or the City in terms of the League's position on the
23    matter.  And number 2, it does run afoul -- it impairs, we
24    believe, the interest of the LAPPL, in terms of certain
25    elements, certain components of the Transition Agreement.
```

```
 1              As we pointed out in our submission to the Court,

 2    a couple of those problems are, number 1, the exclusion of

 3    standing of the League in terms of challenging the process

 4    of the Transition Agreement with respect to actions or

 5    recommendations by the Office of Inspector General or the

 6    Police Commission.

 7              It also has problems, and we believe adverse

 8    impacts, into the ongoing financial disclosure lawsuit which

 9    Your Honor is aware of.

10              THE COURT:  Let me go back to the prior point.

11              MR. LEVINE:  Yes.

12              THE COURT:  Assuming that the Transition

13    Agreement -- you say -- you don't like the way the

14    Transition Agreement impacts upon your ability to deal with

15    actions of the OIG and the Police Commission.

16              Outside the Transition Agreement, how would those

17    ordinarily be handled?

18              MR. LEVINE:  Those would be handled by probably a

19    motion before this court.

20              THE COURT:  Okay.  But if -- at some point in time

21    there's not going to be a Consent Decree.  Whether it's

22    June 30th, or ten months, 12 months, 18 months, whatever, at

23    some point there won't be; and outside the scope of the

24    Consent Decree, how would those issues be dealt with?

25              Is it just part of the Collective Bargaining
```

1   Agreement?

2          MR. LEVINE:  Well, it would be by way of any

3   collective bargaining remedies administratively, and if that

4   was ineffective, to resort to the appropriate court, whether

5   that be federal court or state court if they deal with state

6   law issues.

7          THE COURT:  All right.  Anything else you want to

8   add?

9          MR. LEVINE:  Just lastly, Your Honor, in terms

10  of -- some of the problems in terms of the Proposed

11  Transition Agreement would be in terms of the access of

12  records by the Department of Justice.

13         As we indicated, there's no limitations at all in

14  terms of the duration, the purpose, or even the maintenance

15  of sensitive or non-public information in terms of the

16  Department of Justice receiving certain information under

17  the Transition Agreement.  And that goes back to the Court's

18  concern is that the Transition Agreement, as a separate

19  document, would have to reiterate all those paragraphs of

20  the Consent Decree that address the retention of

21  confidential information.

22         Thank you, Your Honor.

23         THE COURT:  All right.  Thank you.

24         Counsel for the community.  Community Intervenors.

25         MR. BIBRING:  Good morning, Your Honor.  Peter

1   Bibring for the ACLU for Community Intervenors.

2            At the outset, I would like to echo Your Honor's

3   comment at the beginning.  There's absolutely agreement in

4   the room that the LAPD has made great progress under the

5   Decree over the last eight years and the credit is due for

6   that, Chief Bratton, the department, the OIG, the Police

7   Commission; but there is also explicit agreement that

8   there's much work left to be done and that there's

9   non-compliance in a variety of areas.

10           In addition to the three areas addressed by the

11  Transition Agreement:  Financial disclosures, TEAMS II

12  System, and non-discrimination.  There is also the

13  management and supervision of gang units, supervision of

14  categorical use of force, warrant application, and review of

15  PC148 charges with interfering or assaulting an officer.

16           All in all, by our count, it's 25 provisions of

17  the Consent Decree, about 10 percent of the existing

18  provisions.  And the City's not contesting the

19  non-compliance.

20           So I think it would helpful to, first of all,

21  address the standard of review for termination of the Decree

22  before talking about the non-compliance and the potential

23  remedy.  The standard is set forward in paragraph 179 which

24  provides that:  "The burden shall be on the City to

25  demonstrate that it has substantially complied with each of

1    the provisions of the agreement and maintained substantial

2    compliance for at least two years."

3         Now, as Your Honor noted, none of the parties in

4    their filing, other than the Community Intervenors, cited

5    this standard.  They don't attempt to show that they're in

6    substantial compliance because they -- with each provision

7    because they cannot.  The Monitor's report unquestionably

8    says that they are out of compliance in those seven areas.

9    Nor do they explain how the law allows them to modify the

10   Consent Decree or lift it with the remaining areas of

11   non-compliance.

12        To lift the decree on the facts set forth in the

13   Monitor's final report would require rewriting the Decree.

14   That would require a motion to adjust the relief under Rufo,

15   which is a motion which has not been made presumably because

16   the parties believe that the standard can't be met.

17        It's also worth noting that the areas of

18   non-compliance are not superfluous, technical.  They're

19   fundamental.  Obviously, the non-discrimination provisions

20   in paragraphs 102 to 105; but also the management and

21   supervision of gang units in paragraphs 106, 107, and the

22   auditing requirements of 131.

23        At Page 77 of the Monitor's final report, the

24   Monitor indicates they are not yet in compliance with many

25   aspects of the Gang Unit Mandate and more work needs to be

1   done governing limitations on tenure, selection process,

2   oversight by the bureau in area gang coordinators.  And as

3   of the previous audit, the arrest, booking, and charge

4   sheets for gang officers.

5         Also, supervisory review of categorical

6   use-of-force incidents, in paragraphs 62 and 63, some

7   subsections of those.  On Pages 26 and 28 of the final

8   report, the Monitor indicates they're not in compliance.

9         Supervisory review of warrant applications.  These

10  are fundamental issues.  At Page 35 of the Monitor's final

11  report.  The issues of completeness of the information on

12  warrant applications, inconsistent information, conformance

13  with LAPD policies and procedures, supervisory oversight and

14  post-incident review, the Monitor's finding the department

15  non-compliant.

16        That's in addition to review of interference with

17  assaulting an officer charges under 70b where they remain

18  non-compliant.

19        In that instance, on Page 37 of the Monitor's

20  report, the Monitor notes that the Department's close to

21  compliance.  And the previous audit for the quarter-ending

22  December 2008, the Monitor noted that they were 88 percent

23  in compliance.  But this isn't a provision that requires

24  building an elaborate, technical system, like TEAMS II.

25  This is simply getting managers, supervisors to look over

1    these charges and review them for accuracy because they are

2    a warning flag for potential abuse.

3            And if on the eve of the extension those managers

4    are not doing that, they're 88 percent in compliance, it

5    bodes ill for compliance after the Decree is lifted.

6            With respect to the non-discrimination provisions

7    which --

8            THE COURT:  But let's test that for a second.  I

9    mean, on the other side of the coin is we've got a much more

10   active Police Commission, a Police Commission playing a role

11   that it really hadn't played -- was supposed to play but

12   didn't play for a number of years.

13           The Office of Inspector General has been beefed

14   up.  There have been substantial changes within the

15   Department in terms of that sort of oversight.

16           Are you suggesting that the Police Commission and

17   the OIG can't manage that change and -- outside the scope of

18   the Decree?  And isn't that an argument to extend the Decree

19   in perpetuity?

20           MR. BIBRING:  No, we're not arguing that the

21   Commission and Inspector General can't handle oversight.

22   And, in fact, as I'll get to down the road, that's one of

23   the reasons that we argued in our papers that primary

24   responsibility for monitoring oversight should, in fact, be

25   shifted to the Inspector General.

1          All we're arguing is that the Decree's terms

2    should be complied with.  That the provisions for lifting

3    the Decree require substantial compliance with each term for

4    a period of two years, and that in order to lift the Decree

5    those -- that compliance must be found.  And it does not yet

6    exist.  In particular, with respect to the

7    non-discrimination provisions which the Community

8    Intervenors believe are at the heart of the Decree, as the

9    Court and the Monitor previously noted.

10          Paragraph 103 provides a robust protection against

11   discrimination, providing that LAPD officers may not use

12   race, color, ethnicity, or national origin in conducting

13   stops or detention or activities after -- following stops or

14   detentions.

15          Now, this Court is familiar with the report of

16   Professor Ian Ayres filed last fall and prepared for the

17   ACLU which found that African Americans and Latinos are

18   over-stopped, over-searched, over-arrested.

19          And, importantly, this analysis employed

20   sophisticated multi-varied techniques to exclude legitimate

21   law enforcement rationale, like local crime variation,

22   suspect, age, gender, or other factors that would provide

23   some legitimate explanation for these variations and found

24   that African Americans are still, after accounting for those

25   legitimate law enforcement considerations, three times more

```
 1   likely to be stopped.

 2          3,500 additional stops per year per 10,000

 3   residents.  They're 166 percent more likely to be ordered

 4   out of the car.  127 percent more likely to be frisked,

 5   although of those frisks, those frisks are 42 percent less

 6   likely to discover weapons.

 7          They're 76 percent more likely to be asked to

 8   submit to a consensual search, although those consensual

 9   searches yield weapons 37 percent less often than searches

10   of whites and Asians, 23 percent less often --

11          THE COURT:  You do know, of course, that his

12   methodology is not accepted by everyone; that there were

13   some materials that were submitted to me suggesting that

14   there were errors in that analysis.  And I thought some of

15   the challenges to his analysis were somewhat persuasive.

16          MR. BIBRING:  Your Honor, Professor Ayres answered

17   the critiques of his analysis in his declaration, although I

18   would like to point out that in no filing with the court has

19   the City ever challenged these numbers and given an

20   opportunity to address those.

21          Moreover, Professor Ayres has offered to analyze

22   newer data, to put together a panel of experts that would

23   come to some consensus on methodology, but the department

24   has refused.  Chief Bratton has publicly said that the

25   analysis was of no value.
```

1          It's also worth noting that while the Department

2    has said this analysis is old because the data comes from

3    2003-2004, that the raw field data posted on the

4    Department's Web site indicates that the raw disparities, at

5    least, have increased in -- for African Americans and

6    Latinos both, the rates at which -- the disparities in rates

7    at which they are stopped, ordered out of cars, frisked,

8    asked for consensual searches, or searched have all

9    increased between 2002 and 2007.

10          And, indeed, the Harvard Report that the

11   Department cites corroborates these findings, at least to

12   the extent that it acknowledges that uses of force are more

13   common against African Americans, and to a lesser extent

14   Hispanics, out of proportion to their share of

15   involuntary --

16          THE COURT:  All right.  But what's your bottom

17   line?

18          I mean -- I've got the reports.  I've been

19   inundated with data.  I understand the point that you're

20   making in the sense that it's something that you think

21   should continue to be a matter for oversight.  So do the

22   parties.  I mean, there's nobody in the courtroom at this

23   point who says, "Let's stop looking at this."

24          So the question is:  How do we do that?  What's

25   the mechanism?

```
 1            So I take it that your idea is that it should
 2     continue under the Decree.  But if so, how?  What do you
 3     suggest?  What's your bottom line?
 4            MR. BIBRING:  With respect to a remedy, we've
 5     proposed in our filings a solution similar to what the Court
 6     has articulated; that the Inspector General -- that the
 7     Decree be extended, but the Inspector General take over as
 8     the primary reviewer.
 9            And not only does this, as the Court acknowledged,
10     shift expense away from the Monitor and exhibit a show of
11     confidence in the leadership of Chief Bratton and the
12     Department and the Police Commission to police itself, it
13     also builds the Inspector General's office as a primary
14     institution for review.  A role that it's going to have to
15     play when the Decree is lifted.
16            And it also -- continuing the Decree as opposed to
17     the Transition Agreement ensures that the Court will be
18     there to ensure the requirements are met.  The review areas
19     under an extended Consent Decree could be limited to areas
20     of non-compliance.  That's exactly what the Monitor has been
21     doing for the entire period of the extension agreement,
22     simply auditing those areas where the Department remains in
23     non-compliance.  That gives the Department credit for the
24     numerous areas where it is in compliance.
25            So long as the Inspector General has an assurance
```

1    that they have sufficient resources to conduct these

2    investigations that, I think, is the primary remedy for a

3    Transition Agreement.

4              In our papers, we suggested a three-year agreement

5    on the theory that because the Department remains in

6    non-compliance now, the department will need at least a

7    two-year period to show sustained compliance for two years,

8    but that can be flexible.  This Court can hold hearings

9    after 12 or 18 months to see if the department is in

10   compliance.

11             Another important point is if the Court were to go

12   with a Transition Agreement, the -- although -- especially

13   with respect to non discrimination, although that area is

14   addressed, it's addressed in a substantially scaled back

15   form.  Paragraph 103, as I said, has robust protections

16   against biased policing.  The Transition Agreement simply

17   acknowledges the Department's intent to put in-car cameras

18   in place and calls for two audits of the racial profiling

19   investigations.

20             Respectfully, the Community Intervenors believe

21   that in-car cameras are good policy, they're important,

22   they're going to catch and deter instances of overt abuse,

23   use of force, racial remarks, but they are not going to

24   capture the more insidious discrimination of different

25   standards applied to people of different races and that's

33

1    the thrust of Professor Ayres' findings with respect to the

2    "hit rate" analyses.  Those are analyses that have gone

3    largely unchallenged.  Is that simply different standards

4    are being used.

5            The Department has made great progress and

6    deserves commendation, but under the terms of the Decree, it

7    simply cannot make the showing required to lift the Decree.

8            If the Court has no further questions.

9            THE COURT:  No, I don't have any questions.

10           Let me ask the City again.  I want to ask the City

11   the question -- I just I don't understand, and I need you to

12   explain why it is that if the OIG takes over the

13   responsibility for the monitoring -- excuse me, the Police

14   Commission, using the OIG as its investigative arm, why a

15   transition can't be effectuated that saves the City money,

16   eliminates the costs and perhaps intrusiveness of the

17   Monitor's staff, folks, but allows the matter to be focused

18   more on a few areas and go forward and get those resolved?

19           Why isn't it a simpler transition using that

20   mechanism then trying to create a new document, a new

21   agreement, with the issues that we're hearing under

22   discussion today?

23           MS. RAFFISH:  Because, Your Honor, the Transition

24   Agreement that's been proposed represent a narrowing down of

25   the issues that remain.  All of the parties agree that there

1   has been substantial compliance with the intent and the

2   purpose underlying the Consent Decree, which was the reform

3   of the Los Angeles Police Department.

4          THE COURT:  But what if there was an order of the

5   Court -- what if there was an order of the Court that said,

6   you know:  "The Consent Decree is extended but with the

7   following limitations.  The role of the Monitor is taken

8   over by the Office of Inspector General and the Police

9   Commission and the focus of effort going forward should be

10  in these three areas, in these three provisions"?

11         Why is that not a simpler method for dealing with

12  the problem then trying to come up with a document which

13  purports to relate back to the Consent Decree, but which may

14  or may not.  I'm not entirely sure that the language of the

15  document says what it means, but --

16         MS. RAFFISH:  Because such a Court order, Your

17  Honor, would, in essence, be a re-drafting of the Consent

18  Decree which is, in essence, what the parties thought to do

19  by submitting a Transition Agreement.  The Transition

20  Agreement covers very specifically three areas.  Not three

21  areas that the Department has fallen down on, not three

22  areas for which they're has been no compliance.  In fact,

23  pursuant to the Monitor's report, there has been a great

24  deal of compliance in all three areas.

25         There is a small sub paragraph of paragraph 46

1   concerning TEAMS II that requires an additional period of

2   review to ensure that the system is operating as designed

3   with respect to supervisors' use of systems-generated action

4   item.  A very small component.

5           In the financial disclosure arena, as this Court

6   is well aware, the police department has implemented the

7   Financial Disclosure Program.  So now there just needs to be

8   an opportunity to observe that it's working properly, a very

9   narrow type of observation made by the Inspector General at

10  the request and at the pleasure of the Police Commission.

11  They are the entities with civilian oversight of the police

12  department by charter, Your Honor.  This Transition

13  Agreement more properly reflects the transition back to

14  those entities, as opposed to just modifying the original

15  Consent Decree to a point where it looks an awful lot like

16  the original Consent Decree --

17          THE COURT:  It should.  Because that's what it

18  would be.

19          MS. RAFFISH:  Well, but it would be the City's

20  position, Your Honor, that there has been substantial

21  compliance made with the intent of this Consent Decree, and

22  that this Court sits in equity in determining what remedies

23  are appropriate.  And we believe that the Transition

24  Agreement, as reflected in the filing with the Court, is the

25  most equitable resolution in this matter.

1           There has been no affirmative implicit, explicit

2    representations by the police department that they don't

3    understand there is a final step to take.

4           However, in a lot of ways, those steps are related

5    to time.  Time to observe.  Who should that observation be

6    made by?  It should be made by the Police Commission and the

7    Office of the Inspector General.

8           In the case of bias policing, the police

9    department never stopped collecting the data under

10   paragraphs 104 and 105.  When we had these competing reports

11   of statisticians, we could have invited ten more

12   statisticians to the table and it probably would have

13   yielded ten additional and different conclusions and

14   findings, but what's important is that when we had these

15   competing reports, the Department didn't throw up its hands

16   and say "We're done.  All we had to do was collect the data,

17   and we're finished."  Instead they said, "What can we do?"

18   "What other measures can we undertake to prevent bias-based

19   policing?"

20          And, as reflected in the Monitor's report, the

21   Department has gone above and beyond in terms of trying to

22   incorporate its beliefs against bias policing into every

23   aspect of Department operations and training, and I won't go

24   over that here.

25          THE COURT:  No, I think it's well set out in the

```
 1   Monitor's report, and I don't disagree with you on that.
 2         MS. RAFFISH:  Especially with respect to the
 3   continued reviews conducted by the Office of the Inspector
 4   General.  The Office of the Inspector General has
 5   consistently reviewed the Department's compliance with those
 6   paragraphs and consistently reviewed the Department's
 7   compliance with TEAMS II.  It hasn't yet had an opportunity
 8   to review financial disclosure because it is a recent
 9   implementation.
10         However, there's nothing to suggest that a
11   Transition Agreement which flows from the original Consent
12   Decree would not provide the narrow type of oversight and
13   responsibilities that are contemplated upon a finding of
14   substantial compliance.
15         Additionally and finally, Your Honor, we agree
16   with the United States that we have always understood and
17   expected that this Court would have jurisdiction over the
18   enforcement of the Transition Agreement, as it would have
19   over any agreement that is entered as an order of the court.
20   The Court has the inherent authority and the inherent
21   jurisdiction over such an agreement, and its terms, and its
22   compliance, and its enforcement.  So to the extent that it
23   wasn't explicitly put into the Transition Agreement that
24   could certainly be changed, but I think it was implicitly
25   understood all along.
```

1          The same with respect to the Intervenors.  It's

2     been the City's position all along, as well as the

3     United States, that the Intervenors would retain their

4     status as Intervenors to the action under this Transition

5     Agreement.  There is nothing about that status, there is

6     nothing about that identity that changes pursuant to the

7     Transition Agreement.  They have the right to present

8     evidence before the Court.  They have a right to make their

9     objections heard before the Court.  They have a right to do

10    exactly what they have done for the last eight years and

11    what they're doing today.  And nothing changes.  That would

12    be the City's position.

13          THE COURT:  All right.  Thank you.

14          Does the Department have anything they would want

15    to add?

16          MS. JUNG:  I have a few comments for Your Honor.

17    I want to unequivocally address the Court's question about

18    why the Transition Agreement versus the Consent Decree, and

19    I want to be nothing but forthright with this Court and to

20    be very clear that when we entered into this agreement, we

21    had eight years to look back on this Consent Decree.  We had

22    200 provisions and sub provisions in the Consent Decree and

23    the overwhelming majority the LAPD has done.  And we felt

24    that it was in our interest, the Court's interest, the

25    City's interest, everyone to be able to acknowledge what has

```
 1    happened in the last eight years.

 2            The Monitor's role --

 3            THE COURT:  Look, I don't disagree with that

 4    objective -- there's -- I don't know how many times I have

 5    to say it, and nobody is contesting it, that there has been

 6    significant progress.  It's not the same department that it

 7    was eight years ago, in my view.  I think that's true.

 8            MS. JUNG:  What I'm trying to say, then, I guess,

 9    is that extension of the Consent Decree in its entirety for

10    another three years would not be an acknowledgment of that.

11    And I think that effectively is what everybody --

12            THE COURT:  No matter what I say?

13            MS. JUNG:  No, I'm saying that --

14            THE COURT:  Regardless of any view expressed by

15    anyone, it is -- if the Consent Decree exists, it is

16    considered to be a slap at the LAPD; is that what you're

17    saying?  Is that the point?

18            MS. JUNG:  The point is, Your Honor, that we

19    wanted to acknowledge the progress that has been made and to

20    do that by saying that a Consent Decree, with 200 paragraphs

21    and provisions, have been met, the majority have been met.

22            And the role of the Consent Decree, Your Honor,

23    eight years ago was to ensure that a significant amount of

24    reform was to be done; that the Monitor was chosen by

25    Your Honor to make sure that that happens.  And to extend
```

1    the Consent Decree, that very same document that was entered

2    into eight years ago, it's different today.  And for the OIG

3    taking that role is to ensure that they are a permanent

4    piece of the LAPD, but it's not to ensure reform in

5    accordance with the document, but it's to ensure reform as a

6    fundamental, permanent piece of the LAPD.  And that's what

7    we want to see, and that's why we thought a Transition

8    Agreement was a better way to deal with that.

9            We understand that Your Honor may have difficulty

10   with that and will reverse us on that, however, we want the

11   Court to understand that if I could --

12

13           THE COURT:  I'm just trying to understand what the

14   parties are seeking to accomplish through this device,

15   that's -- what you're trying to accomplish that couldn't

16   have been more easily and more clearly and more effectively

17   accomplished through a simpler understanding that would

18   leave the Consent Decree in place.  That's what I'm trying

19   to understand.  And I think you've -- I think you've

20   actually articulated more clearly than anyone had up to this

21   point one of the principal reasons.

22           MS. JUNG:  Okay.  And if I could close with just

23   borrowing a phrase from actually the Inspector General, when

24   we were talking back and forth about all of this, the fact

25   that for eight years we said, "You need these training

```
 1    wheels.  You need this Monitor.  You need all of these
 2    things to happen."
 3              We are now saying, effectively by coming before
 4    this Court, that we want to give the OIG and the LAPD a
 5    chance to prove that they can do it on their own.  And
 6    that's what our intent as the United States was and ever is
 7    to go into a jurisdiction and to come into a Consent Decree
 8    with the police department.  And that's what we hope.  And
 9    we have the faith that it can happen, and that's -- perhaps
10    it's a leap of faith for everyone, but it's something that
11    we believe we have a good-faith belief to do at this point.
12              THE COURT:  All right.  Thank you.
13              MR. ROSENBAUM:  Can we respond very briefly?
14              THE COURT:  Hold on one second.
15              Does LAPPL have anything else it wants to say?
16              MR. LEVINE:  Just one point, lastly, Your Honor.
17    If it's the Court's decision to utilize some sort of a new
18    Transition Agreement, we would respectfully request that the
19    Transition Agreement be revised to be consistent with the
20    rights of the League.  Thank you.
21              THE COURT:  All right.  Mr. Rosenbaum briefly,
22    please.
23              MR. ROSENBAUM:  Thank you, Your Honor.
24              Good morning, Your Honor.  I'll be very brief.  I
25    heard the Court ask counsel for both the Department of
```

1   Justice and the City on at least four occasions, in effect,

2   what's the difference here between the Consent Decree and

3   the Transition Agreement; and why do we need a Transition

4   Agreement.  Your Honor, we still have not received a full

5   answer to that question.  I heard the City Attorney say that

6   the Transition Agreement was, quote, "Much like the Consent

7   Decree."  Another time she said, "It flows from the Consent

8   Decree."

9          I heard the Department of Justice attorney say

10  that the overwhelming majority of the provisions have, in

11  fact, been complied with.  But here's what we know.  We know

12  that paragraph 179 of the Consent Decree specifically says,

13  specifically says, that all, all terms of the agreement must

14  be complied with and, in fact, must be complied with for a

15  period of two years.

16         No one disputes the fact that there are seven

17  areas, as Mr. Bibring said, roughly 10 percent of this

18  Decree which have not been complied with.

19         Secondly, we know already that there are

20  differences.  The last thing that this community needs, and

21  Your Honor has indicated it twice in Your Honor's comments,

22  is ambiguity, lack of clarity, lack of certainty of what it

23  means.  I even heard in the course of this morning different

24  answers as to who was in and who was out and what provisions

25  were what.

```
1          The so-called Transition Agreement takes seven

2    areas of non-compliance, reduces them to three, and then

3    even with respect to those three does not state with

4    certainty what the actual obligations of the department are

5    to be.

6          Your Honor, if it looks like, if it is to feel

7    like, if it is to be like the Decree, then why in God's name

8    isn't it the Decree itself?  The Consent Decree is not

9    broke.  There is no need to fix it.

10          The adjustments that the Court has been talking

11   about shifting to the Commission and the Inspector General

12   makes sense.  They save resources, they focus on the areas

13   that are required, but the core of the Decree itself, those

14   areas where the department is not in compliance, there

15   should be no doubt about what the content of those

16   obligations are or the standards for adherence.

17          The last thing I want to say, Your Honor, is with

18   respect to a point that Mr. Bibring alluded to.  Your Honor

19   asked Mr. Bibring if there was or asked about the question

20   of the capacity of the Commission and the Inspector General

21   to carry on the duties of the Monitor, and I want to make

22   two points with respect to that.

23          First, with respect to Your Honor's statement

24   about who has been the party who has helped drive this

25   process.  There's no question that the Monitor has done
```

44

1    that, and that's why the Monitor's designations of those

2    seven areas of non-compliance should be taken with such

3    weight and such gravity; but there is even a larger point

4    and that is the Monitor has had the resources, in fact, to

5    test all the areas of compliance and non-compliance in order

6    to make his findings.  We need certainty, Your Honor.  We

7    need certainty that the Office of Inspector General will

8    have all the resources it needs in order to carry out the

9    duties in the same professional manner that the Monitor has

10   done that.

11          Now, this is not a hypothetical.  Mr. Bibring and

12   I have spoken with that office and we are, frankly,

13   concerned as to whether or not there would be adequate

14   resources.  So I believe that where we started this morning

15   is where we should end this morning and that is the Consent

16   Decree should be extended.

17          Does it need to be extended three years?  Of

18   course not.  It needs to be extended until there is

19   certainty, until there is a record that for each and every

20   area there is, in fact, compliance.  And we need as part of

21   that, if the principal enforcement responsibilities are to

22   be turned over, an assurance that they will have the

23   cooperation of the Department, which I imagine is no

24   problem, but that they will have the resources to do it in

25   an independent and professional manner.

1          That's all, Your Honor.  Thank you very much.

2          THE COURT:  All right.  Thank you.

3          I neglected to mention, Mr. Cherkasky is here.

4          Mr. Cherkasky, is there anything you think you

5    need to add or would like to add for the record at this

6    proceeding?

7          MR. CHERKASKY:  Thank you, Your Honor.

8          I think that overwhelmingly I've said it in the

9    report.  The only thing I would add, Your Honor, is that it

10   is very clear to us having done this for the last eight

11   years about the symbolic nature of the Consent Decree versus

12   this Transition Agreement.  I think that what we have here

13   is we have a group of individuals in LA who, in fact, have

14   attempted to, with all that they know and all of their

15   being, do the right thing; and they have -- they've

16   attempted to do -- comply with a very, very, detailed and

17   granular document.  And in large percent, not totally,

18   they've done that.

19         I think the key point is that we believe when

20   we've submitted to Your Honor that there is substantial

21   compliance of the material elements of this Consent Decree

22   with the exceptions of the ones that have been noted, those

23   three, and they're key exceptions, but I think that the

24   symbolic nature of having a Consent Decree continue, versus

25   a Transition Agreement, is a very, very important point that

```
 1   I know Your Honor takes seriously.  But that's what I think

 2   I'm hearing.  I'm hearing that giving credit to LA and

 3   allowing LA to move on and proclaim that, in fact, they've

 4   done it right substantially is such an important

 5   psychological for this department, for it's 80 or 9- or

 6   10,000 men and women, and that's really where I think that

 7   the rub is.

 8           One of the things that I have to say is that I

 9   have throughout taken enormous comfort in the fact of this

10   Court's oversight.  Maybe the other parties haven't, but I

11   think that the recognition of the role of a federal judge

12   and a federal court in maintaining an equilibrium in the

13   political winds of LA and other communities is incredibly

14   important, but we all understand, as you said, articulated,

15   at some point it must end.  And now it's really the

16   psychological break point.

17           The one thing I would also tell you is that I

18   understand that there are some ambiguities.  One would, in

19   fact, hope that maybe you could, we could, the parties

20   could, handle some of those ambiguities and, in fact, fill

21   them so that it would not be such a difficult decision for

22   you.  But I think that's where we are.  It's really that

23   psychological break point that I think that the City and the

24   United States Government are recognizing as being -- that

25   psychological point, while not law, is a very, very
```

1   significant issue, one that we live by and feel every day.

2   So I really have nothing to add except that, Your Honor.

3             THE COURT:  All right.  Thank you.

4             All right.  If there's nothing else from any of

5   the counsel, there was a member of the public.  It's

6   somewhat unusual, and there's really no -- it's not

7   consistent with procedure, but I'm willing to let the

8   gentleman speak if he would like to.

9             MR. GARBER:  Good morning, Your Honor.

10            THE COURT:  Would you stand in front of the

11  lectern, so we can hear you better.

12            Right there.  Perfect.

13            MR. GARBER:  Good morning Your Honor.

14            THE COURT:  Would you say your name again.

15            MR. GARBER:  My name is Robert Garber, and I would

16  like to represent a class of people that is not represented

17  here today.  I'm a person that represents the people of

18  Los Angeles.  I'm not an attorney.  I'm not coming from any

19  organization.  I'm just one simple citizen, but what I'm

20  going to say is going to resonate here because I have been a

21  victim of the LAPD and the City Attorney for many years.

22            Back in another country I have been a journalist

23  but now and because, mostly, of the LAPD and the City

24  Attorney, I'm homeless and living on a trailer in the

25  streets.

```
 1            When many people here speak about the abuses that
 2   for many years the LAPD have been done, about searches and
 3   arrests without probable cause, the use of violence, the
 4   rapes, the drug dealings committed by the LAPD officers, the
 5   home invasions that one of them you yourself prosecuted.
 6   It's a very long litany of crimes that the LAPD have been
 7   done.  That's why we are here today because no one could
 8   rein in the LAPD.  Only the Consent Decree has done that.
 9   And you are the one who has enforcing the Consent Decree.
10   We owe you a lot.  We are all the time listening to your
11   voice in the paper.  You are our hero.  And this person
12   here, Mr. Bratton, is our enemy.
13            THE COURT:  If you're going to personalize this
14   matter, I am going to stop you from talking.  If you want to
15   make Mr. Bratton your enemy, you're not going to be very
16   persuasive with me, I can tell you that.
17            MR. GARBER:  It's hard to be civil when I have
18   been, for so many years, been the victim of the LAPD and the
19   City Attorney.  I suffering from major depression from one
20   of the arrests, unfounded, of the LAPD.
21            In 2006 I got a heart attack in another unlawful
22   arrest also involving the LAPD.
23            Now, there aren't many things here that I don't
24   understand.  The people of Los Angeles have been complaining
25   for many years, and the people who were supposed to
```

```
 1   represent us are talking about some statistic, about some

 2   other things.

 3           I came here today because I don't believe that any

 4   one of the people here have been arrested, have been

 5   incarcerated, has been abused by violence by the LAPD like

 6   me.  I am the poster victim of the LAPD and the City

 7   Attorney.  I am the one that should be heard.

 8           I send here in May 21 an amicus curiae and the

 9   secretary, your secretary said that it had been sent to

10   Mr. Cherkasky, the Monitor.  This morning I talk with him,

11   and he said that he didn't receive it.  I gave him another

12   copy, and I'm going to give another copy to Mr. De La

13   Guerra, Assistant City Attorney.

14           MS. RAFFISH:  Your Honor, with respect --

15           THE COURT:  I'm sorry?

16           MS. RAFFISH:  I'm sorry, Your Honor, with all

17   respect to the speaker, we would object at this point to any

18   continued comments relative to --

19           MR. GARBER:  Recently the LAPD, it has been about

20   many abuses.  There have been crimes.  A crime against one

21   of us, the people, is a crime against the whole society.  No

22   one can say that because a homeless people or a person whose

23   named is Margaret Mitchell, because is a homeless woman, can

24   be killed by the LAPD.  And it was, like the LAPD has been

25   saying for many years, in policy.  It was in policy.  It was
```

1   on policy.  It was the policy of LAPD to abuse people, to

2   kill unarmed people, to do all kind of abuses.

3           THE COURT:  All right.  Sir, let me explain

4   something.  You're not here -- I thought you were going to

5   speak in a more general way.  You obviously have your

6   personal grievances.  You're going to have to deal with

7   those grievances in your own personal lawsuit if that's what

8   you want to do, but I am not going to allow this proceeding

9   which has a citywide impact and which is of critical

10  importance to every single person be turned into a forum for

11  you to give us a litany of your personal grievances and

12  personal views.

13          Now I'm going to ask you to go sit down in the

14  back where you started and let me finish this hearing.

15          MR. GARBER:  Okay.  There is here right now

16  talking about discrimination, and it is true there is

17  discrimination.  There is still abuse of force by the LAPD.

18  It has -- the Burbank department for nearly 100 years --

19          THE COURT:  We're not talking about Burbank, we're

20  talking about Los Angeles.

21          And you've got two choices.  You can go

22  voluntarily and sit down or I will ask that you be escorted

23  from the courtroom.

24          MR. GARBER:  Mr. Bratton said that the Consent

25  Decree has been a success --

```
 1              THE COURT:  You're going to have to leave the
 2   courtroom, please.
 3              MR. GARBER:  Okay.
 4              Don't use force.  Don't use force.  You tell me --
 5   the judge tell me, and I go.  You don't have to push --
 6              THE COURT:  Listen to me.  Leave the courtroom
 7   now, sir.
 8              MR. GARBER:  Don't push me.  Don't push me.  Don't
 9   push me.
10              You understand?  I'm a human being.  You
11   understand?
12              I have dignity.  You understand?  You don't push
13   me.  I'm going alone.  I know the exit.  You understand?
14              Are you the police?
15              THE COURT:  I don't think I've seen more effective
16   impeachment of a witness in my life and done by himself.
17              All right.  Well, getting back to the focus of
18   what we have to deal with here.  I think what I would like
19   the City and the Department to do is to address in writing
20   the questions and the issues that Mr. Rosenbaum raised
21   because Mr. Rosenbaum raises the point that the Decree
22   defines and describes the procedure that must be followed
23   before it can be terminated.  And I think I need the
24   position of the City and the Department in that regard.
25              Mr. Rosenbaum, I don't need to hear from you again
```

```
1   after that because you've made your point very clear and

2   you've articulated, I think, what the questions are.

3           I need to find out from the City and the

4   Department why they think that standard has been met, and

5   once I receive their materials, I will let the remaining

6   parties know whether I want further briefing from any of the

7   Intervenors.

8           In that submission, which you are going to have to

9   present in short order because there's not a lot of time

10  left.  I need it by a week from today.  I want to know not

11  just how it is that you contend that the paragraph of the

12  Decree has been complied with, but to address the questions

13  I've raised with respect to the operation of this Transition

14  Agreement and, specifically, why it is that you say I

15  should, for example, just assume that the Intervenors have a

16  role; why it is that I should assume that the jurisdiction

17  that you say that I have under the terms of the agreement is

18  jurisdiction similar to what I would have under the Consent

19  Decree; and why it is that the footnote that you've put in

20  the agreement regarding -- footnotes regarding Mr. Cherkasky

21  and the standard, why it is that I can somehow look to the

22  Decree and make a determination on compliance on the basis

23  of the Decree.  The Decree is terminated.

24          And how you would more fully articulate the role

25  of Mr. Cherkasky under this document.  And I need to know
```

1    the answers to those questions because I do think that the

2    point that Mr. Rosenbaum made when he stood up and talked is

3    correct.  I've asked a question which I don't think has been

4    answered, and I need that answer.

5            I also do have in mind what Mr. Cherkasky and the

6    Department of Justice has said -- the City hasn't said

7    this -- but I think that Mr. Cherkasky and the Department

8    are right.  My impression is that this is a psychological

9    issue or a perception issue, something about, you know, what

10   it means to the Department to have the Consent Decree in

11   effect as opposed to the Transition Agreement.

12           And I think -- I don't know -- I mean I don't know

13   that there's anything anybody can say about that.  I just

14   take that as part of the background information, but I am

15   going to need a submission from the parties answering the

16   questions that I've indicated.

17           Now, any final comments -- each side, I'll give

18   you a minute or two to say anything if you want to.

19           Does the City have anything it wants to say?

20           MS. RAFFISH:  One moment, Your Honor.

21           We thank the Court for it attention to this

22   matter, and we will certainly brief the matter as identified

23   by the Court further.

24           However, we would just like to say that the

25   entirety of paragraph 179 speaks to materiality, and it

```
 1    simply doesn't provide for two years of substantial

 2    compliance, but it goes on to define what substantial

 3    compliance is.

 4              THE COURT:  Don't argue now.  I understand.  I

 5    want to know what you have to say about it, and I want to

 6    know in a thorough description which, I presume, you'll set

 7    forth in a written document.

 8              MS. RAFFISH:  We would be happy to provide that,

 9    Your Honor.

10              THE COURT:  Okay.  That's what I need.

11              DOJ have anything it wants to add?  You can say

12    no.  That's one possibility.

13              MR. BUTLER:  That's true, and I'll be very brief.

14    Just in closing about the United States enforcement

15    authority throughout the country and the importance, the

16    psychological issue that Mr. Cherkasky raised, but also the

17    larger role that obviously is key for the United States

18    here, that we have five Consent Decrees throughout the

19    country.  And LAPD is obviously a very prominent one and one

20    that's very important that people look to.  And we have a

21    desire and an intent when we go into a jurisdiction to say

22    that when you're not doing it right that we want you to fix

23    it, and we have a desire that at the end that we say -- we

24    leave, and we have full trust that our reforms will stick.

25    And that's what we have to do because we do that throughout
```

```
 1    the country.  So that's just an important note that we just
 2    wanted to close with here.
 3            THE COURT:  All right.  LAPPL, anything to add?
 4            MR. LEVINE:  Just procedurally, Your Honor, I
 5    understand that the League will await the Court's
 6    instruction as to whether or not further briefing is
 7    necessary.
 8            THE COURT:  I'll let you know.
 9            Mr. Rosenbaum.
10            MR. ROSENBAUM:  Your Honor, thank you for the
11    Court's clarification and directive.  We would appreciate if
12    the Court would also ask the Department of Justice and the
13    City of Los Angeles to provide any case authority that
14    either party has that would permit the -- a Consent Decree
15    to be terminated before, in fact, the terms of that Consent
16    Decree were complied with absent, say, a Rufo motion.  We,
17    Mr. Bibring and I, have researched that issue.  We're not
18    aware of any such case law.
19            As the Court stated in opening this morning, there
20    was not a formal motion filed in any respect with that
21    matter, but if there is any pertinent case authority that
22    stands for that proposition, we'd appreciate that being
23    brought to our attention and to the Court's attention.
24            THE COURT:  When I said papers, I did mean to
25    include, if there is legal authority that you want to cite
```

1    to the Court, cite it.  That's fine.

2              MS. RAFFISH:  Thank you, Your Honor.

3              THE COURT:  All right.  The matter is under

4    submission.  We'll be in recess.

5              MR. ROSENBAUM:  Thank you, Your Honor.

6      *(At 11:07 a.m., proceedings were adjourned.)*

7

8                          -oOo-

9

10                        *CERTIFICATE*

11

12         *I hereby certify that pursuant to Section 753,*

13   *Title 28, United States Code, the foregoing is a true and*

14   *correct transcript of the stenographically reported*

15   *proceedings held in the above-entitled matter and that the*

16   *transcript format is in conformance with the regulations of*

17   *the Judicial Conference of the United States.*

18

19   *Date:  June 18, 2009*

20

21

22                    _____

23                    *LISA M. GONZALEZ, U.S. COURT REPORTER*
                       *CSR NO. 5920*

24

25